IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

LESLIE J. LEFF and RONNIE H. LEFF,

            Plaintiffs,

    v.

DEUTSCHE BANK AG, and DEUTSCHE BANK
SECURITIES, INC., D/B/A DEUTSCHE BANK
ALEX. BROWN, a DIVISION OF DEUTSCHE
BANK SECURITIES, INC.,

            Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Case No. 08C 0733 (RMD) (AK)

**DEUTSCHE BANK AG AND DEUTSCHE BANK SECURITIES INC.'S
MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS
PLAINTIFFS' COMPLAINT**

Erin L. Ziaja (ID # 6278775)
DEWEY & LeBOEUF LLP
Two Prudential Plaza, Suite 3700
180 North Stetson Avenue
Chicago, Illinois 60601
Telephone: (312) 794-8000
Facsimile: (312) 794-8100

Seth C. Farber (admitted *pro hac vice*)
DEWEY & LeBOEUF LLP
1301 Avenue of the Americas
New York, New York 10019-6092
Telephone: (212) 259-8000
Facsimile: (212) 259-6333

*Attorneys for Defendants Deutsche Bank AG and Deutsche Bank Securities Inc.*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................... iii

PRELIMINARY STATEMENT ..........................................................................................1

STATEMENT OF FACTS ...................................................................................................2

ARGUMENT .......................................................................................................................5

I.      EACH OF PLAINTIFFS' CLAIMS FAILS AS A MATTER OF LAW ...........................5

        A.      New York Law Governs Plaintiffs' Claims.............................................................5

        B.      Plaintiffs' Claims For Breach Of Fiduciary Duty, Negligent
                Misrepresentation And Negligence Fail Because The Complaint Does
                Not Adequately Allege The Requisite Fiduciary Duty Or Special
                Relationship ...............................................................................................................7

                1.      No Fiduciary Relationship Existed Between Plaintiffs And
                        Deutsche Bank To Support A Claim For Breach Of Fiduciary
                        Duty.......................................................................................................7

                2.      Plaintiffs' Fail To State Claims For Negligent
                        Misrepresentation And Negligence Because Plaintiffs Cannot
                        Establish Any Special Relationship With Or Duty Owed By
                        Deutsche Bank .........................................................................................11

        C.      Plaintiffs' Fraud And Negligent Misrepresentation Claims Fail
                Because Plaintiffs Cannot Establish Reasonable Reliance.....................................12

        D.      The Complaint Fails To State A Claim For Conspiracy To Defraud ...................14

        E.      Plaintiffs' Claims For Aiding And Abetting Breach Of Fiduciary Duty
                And Fraud Should Be Dismissed...........................................................................15

        F.      The Complaint Fails To State A Claim For Violations Of The Illinois
                Consumer Fraud And Deceptive Business Practices Act .......................................17

        G.      The Complaint Fails To State A Claim For Breach Of Contract...........................19

        H.      Plaintiffs' PICO-Based Negligence, Negligent Misrepresentation And
                Breach of Contract Claims Are Also Barred By Exculpatory Clauses.................22

II.     THE MAJORITY OF PLAINTIFFS' CLAIMS ARE TIME-BARRED ..........................24

III.    PLAINTIFFS' FRAUD-BASED CLAIMS DO NOT SATISFY RULE 9(b) OF THE FEDERAL RULES OF CIVIL PROCEDURE ..................................................29

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*AAMCO Transmissions, Inc. v. Harris*,
    759 F. Supp. 1141 (E.D. Pa. 1991) ...................................................................................... 25

*Adams v. Intralinks, Inc*,
    No. 03 Civ. 5384 SAS, 2004 WL 1627313 (S.D.N.Y. July 20, 2004) ................................. 14

*Amakua Dev. LLC v. Warner*,
    411 F. Supp. 2d 941 (N.D. Ill. 2006) ................................................................................. 6, 7

*Atkins Nutritionals, Inc. v. Ernst & Young, LLP*,
    754 N.Y.S.2d 320 (N.Y. App. Div. 2003) ............................................................................ 12

*BFS Morgan Investors, LLC v. Deutsche Bank AG*,
    Court File No. 27CV05-11478, slip op. (Minn. Dist. Ct. Aug. 16, 2006) ............ 9, 12, 15, 21

*Banco Espirito Santo de Investimento, S.A. v. Citibank, N.A.*,
    No. 03 Civ. 1537 (MBM), 2003 WL 23018888 (S.D.N.Y. Dec. 22, 2003) ................... 22, 23

*Bausch v. Philatelic Leasing Ltd.*,
    728 F. Supp. 1201 (D. Md. 1989) ........................................................................................ 28

*Bell Atlantic Corp. v. Twombly*,
    127 S. Ct. 1955 (2007) ........................................................................................................... 8

*Bishnu C. Borah, M.D., P.C. v. Monumental Life Ins. Co.*,
    No. 04-3617, 2007 WL 1030477 (E.D. Pa. Apr. 7, 2007) .................................................... 26

*Brasseur v. Speranza*,
    800 N.Y.S.2d 669 (N.Y. App. Div. 2005) ............................................................................ 16

*Broeg v. Pivovar*,
    No. 9022 Civil 2005, 2006 WL 3924482 (Pa. Com. Pl. Feb. 22, 2006) ............................... 11

*Calcutti v. SBU, Inc.*,
    223 F. Supp. 2d 517 (S.D.N.Y. 2002) ............................................................................. 11-12

*Christopher v. First Mut. Corp.*,
    Nos. 05-0115, 05-1149, 2007 WL 2972561 (E.D. Pa. Oct. 9, 2007) .................................... 25

*Citibank, N.A. v. K-H Corp.*,
    968 F.2d 1489 (2d Cir. 1992) ................................................................................................ 15

*Colaizzi v. Beck*,
    895 A.2d 36 (Pa. Super. Ct. 2006) ................................................................. 13

*Commerce Bank/Pennsylvania v. First Union Nat'l Bank*,
    911 A.2d 133 (Pa. Super. 2006) ................................................................... 11

*Compania Sud-Americana de Vapores, S.A. v. IBJ Schroder Bank & Trust Co.*,
    785 F. Supp. 411 (S.D.N.Y. 1992) ................................................................. 7

*Conwill v. Arthur Andersen LLP*,
    820 N.Y.S.2d 842, 2006 WL 1703621(N.Y. Sup. Ct. June 21, 2006) .............. 8, 9, 14, 20-21

*Dalrymple v. Brown*,
    701 A.2d 164 (Pa. 1997) ............................................................................ 25-26

*de Kwiatkowski v. Bear, Stearns & Co.*,
    306 F.3d 1293 (2d Cir. 2002) ..................................................................... 10-11

*DeStefano & Assocs., Inc. v. Cohen*,
    No. 2775 June Term 2000, 2002 WL 1472340 (Pa. Com. Pl. May 23, 2002) ....................... 7

*Didomenico v. Long Beach Plaza Corp.*,
    No. 3020/03, 2003 WL 22762712 (N.Y. Sup. Ct. Oct. 28, 2003) ........................................ 12

*DiLeo v. Ernst & Young*,
    901 F.2d 624 (7th Cir. 1990) ...................................................................... 29

*Duggal v. St. Regis Hotel*,
    695 N.Y.S.2d 602 (N.Y. App. Div. 1999) ..................................................... 17

*DynCorp v. GTE Corp*,
    215 F. Supp. 2d 308 (S.D.N.Y. 2002) ........................................................ 22, 23, 24

*Elghanian v. Harvey*,
    671 N.Y.S.2d 266 (N.Y. App. Div. 1998) ..................................................... 14

*In re Estate of Albergo*,
    275 Ill. App. 3d 439 (Ill. App. Ct. 1995) ...................................................... 18

*eToll, Inc. v. Elias/Savion Advertising, Inc.*,
    811 A.2d 10 (Pa. Super. Ct. 2002) ............................................................. 8

*Fleet Nat'l Bank v. Boyle*,
    04CV1277LDD, 2005 WL 2455673 (E.D. Pa. Sept. 12, 2005) ........................................ 15

*Giraldo v. Rossberg*,
    747 N.Y.S.2d 78 (N.Y. App. Div. 2002) ....................................................... 17

iv

*Goodman Mfg. Co. v. Raytheon Co.*,
No. 98 Civ. 2774 (LAP), 1999 WL 681382 (S.D.N.Y. Aug. 31, 1999) ............................... 11

*Grumman Allied Indus. Inc. v. Rohr Indus., Inc.*,
748 F.2d 729 (2d Cir. 1984) ............................................................................................. 13

*High Rd. Holdings, LLC v. Ritchie Bros. Auctioneers (Am.)*,
No. 1:07-cv-4590, 2008 WL 450470 (N.D. Ill. Feb. 15, 2008) ........................................... 29

*Hockenberry v. Diversified Ventures, Inc.*,
No. 4:04CV1062, 2005 WL 1458768 (M.D. Pa. Jun. 20, 2005) ......................................... 25

*Hutton v. Deutsche Bank AG*,
No. 07-2041-JTM, 2008 WL 795746 (D. Kan. Mar. 24, 2008) ...................................... 27-28

*Indep. Order of Foresters v. Donald, Lufkin & Jenrette, Inc.*,
157 F.3d 933 (2d Cir. 1998) ............................................................................................. 10

*King v. Deutsche Bank AG*,
No. 04-1029-HU, slip op. (D. Or. Sept. 12, 2005)
(Findings & Recommendation),
*adopted in King v. Deutsche Bank AG*, No. 04-1029,
slip op. (D. Or. Feb. 1, 2006) .................................................................................. 9, 14, 22

*Klamath Strategic Inv. Fund v. United States*,
440 F. Supp. 2d 608 (E.D. Tex. 2006) .............................................................................. 28

*Kolbeck v. LIT Am., Inc.*,
939 F. Supp. 240 (S.D.N.Y. 1996), *aff'd*, 152 F.3d 918 (2d Cir. 1998) ........................ 15, 16

*Laikin v. Vaid*,
No. 604996/00, 2001 WL 1682873 (N.Y. Sup. Ct. Oct. 10, 2001) ....................................... 7

*Lewis v. Rosenfeld*,
138 F. Supp. 2d 466 (S.D.N.Y. 2001),
*amended on other grounds on reconsideration*,
145 F. Supp. 2d 341 (S.D.N.Y. 2001) ........................................................................... 14-15

*Lichtman v. Taufer*,
2004 WL 1632574 (Pa. Com. Pl. July 13, 2004) ............................................................... 15

*M. Block & Sons, Inc. v. Int'l Bus. Machs. Corp.*,
No. 04 C 340, 2004 WL 1557631 (N.D. Ill. July 8, 2004) .............................................. 17-18

*McCready v. eBay, Inc.*,
453 F.3d 882 (7th Cir. 2006) ............................................................................................. 6

*Muehlbauer v. Gen. Motors*,
    431 F. Supp. 2d 847 (N.D. Ill. 2006) ................................................................. 30

*Nigerian Nat'l Petroleum Corp. v. Citibank, N.A.*,
    No. 98 Civ. 4960 (MBM), 1999 WL 558141 (S.D.N.Y. July 30, 1999) ......................... 15-16

*Oei v. Citibank, N.A.*,
    957 F. Supp. 492 (S.D.N.Y. 1997) ........................................................................ 14

*Official Comm. of Unsecured Creditors v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
    No. 00 Civ. 8688 (WHP), 2002 WL 362794 (S.D.N.Y. Mar. 6, 2002) ..................... 22, 23-24

*Old Republic Nat'l Title Ins. Co. v. Cardinal Abstract Corp.*,
    790 N.Y.S.2d 143 (N.Y. App. Div. 2005) ............................................................. 12

*Oursler v. Women's Interart Ctr., Inc.*,
    566 N.Y.S.2d 295 (N.Y. App. Div. 1991) ............................................................. 8

*Peregrine Emerging CTA Fund, LLC v. Tradersource, Inc.*,
    No. 07C5528, 2008 WL 474369 (N.D. Ill. Feb. 19, 2008) ...................................... 6, 7

*Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc.*,
    468 A.2d 468 (Pa. 1983) ................................................................................... 25

*Reda v. Eastman Kodak Co.*,
    649 N.Y.S.2d 555 (N.Y. App. Div. 1996) ............................................................. 22

*Rich v. Maidstone Fin., Inc.*,
    No. 98 Civ. 2569 (DAB), 2001 WL 286757 (S.D.N.Y. Mar. 23, 2001) ...................... 13

*Rockford Mem'l Hosp. v. Havrilesko*,
    368 Ill. App. 3d 115 (Ill. App. Ct. 2006) ............................................................. 18

*Sears v. Likens*,
    912 F.2d 889 (7th Cir. 1990) ............................................................................. 30

*Seippel v. Sidley Austin Brown & Wood LLP*,
    399 F. Supp. 2d 283 (S.D.N.Y. 2005) .................................................................. 28

*Seippel v. Jenkens & Gilchrist, P.C.*,
    341 F. Supp. 2d 363 (S.D.N.Y. 2004),
    *amended on other grounds on reconsideration*,
    No. 03 Civ. 6942 (SAS), 2004 WL 2403911 (S.D.N.Y. Oct. 26, 2004) ...................... 9

*Sharp Int'l Corp. v. State St. Bank & Trust Co.*,
    403 F.3d 43 (2d Cir. 2005) ............................................................................. 16, 17

*Sohaey v. Van Cura,*
    240 Ill. App. 3d 266 (Ill. App. Ct. 1992) ............................................................. 18

*Solomon by Solomon v. City of New York,*
    499 N.Y.S.2d 392 (N.Y. 1985) ............................................................................ 11

*Sovereign Bus. Forms, Inc. v. Stenrite Indus., Inc.,*
    No. 00 Civ. 3867 (BDP), 2000 WL 1772599 (S.D.N.Y. Nov. 28, 2000) ............................ 15

*State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada,*
    374 F.3d 158 (2d Cir. 2004) ............................................................................... 22

*Sterbenz v. Attina,*
    205 F. Supp. 2d 65 (E.D.N.Y. 2002) .............................................................. 21-22

*Stutts v. De Dietrich Group,*
    No. 03-CV-4058 (ILG), 2006 WL 1867060 (S.D.N.Y. June 30, 2006) ............................ 16

*Sutton Assocs. v. Lexis-Nexis,*
    761 N.Y.S.2d 800 (N.Y. Sup. Ct. 2003) ........................................................ 20, 21

*In re TMI,*
    89 F.3d 1106 (3d Cir. 1996)................................................................................ 25

*Telular Corp. v. Mentor Graphics Corp.,*
    282 F. Supp. 2d 869 (N.D. Ill. 2003) .............................................................. 7, 18

*Tesoriero v. Metlife,*
    800 N.Y.S.2d 357 (Table), 2004 WL 3086862 (N.Y. Sup. Ct. May 13, 2004) .................... 8

*U.S. Textiles, Inc. v. Anheuser-Busch Cos., Inc.,*
    911 F.2d 1261 (7th Cir. 1990) ........................................................................... 24

*United Safety of Am., Inc. v. Consol. Edison Co. of New York, Inc.,*
    623 N.Y.S.2d 591 (N.Y. App. Div. 1995) ............................................................ 11

*In re VMS Ltd. P'ship Secs. Litig.,*
    No. 90 C 844, 1992 WL 249594 (N.D. Ill. Sept. 25, 1992)....................................... 24

*Veal v. First Am. Savs. Bank v. Sec. Savs. & Loan Ass'n,*
    914 F.2d 909 (7th Cir. 1990) ............................................................................. 29

*Vicom, Inc. v. Harbridge Merchant Servs., Inc.,*
    20 F.3d 771 (7th Cir. 1994) .............................................................................. 29

*Viguers v. Phillip Morris USA,*
    837 A.2d 534 (Pa. Super. Ct. 2003)................................................................... 15

*Willard v. Ingersoll-Rand Co.*,
    No. 03 C 4665, 2003 WL 22175582 (N.D. Ill. Sept. 19, 2003)........................................... 24

*Wolff v. Rare Medium, Inc.*,
    210 F. Supp. 2d. 490 (S.D.N.Y. 2002)..................................................................... 19

## Statutes and Rules

26 C.F.R. § 601.601 ....................................................................................................... 27

42 Pa. Cons. Stat. Ann. § 5524 ..................................................................................... 25

735 Ill. Comp. Stat. Ann. 5/13-205................................................................................ 25

735 Ill. Comp. Stat. Ann. 5/13-210................................................................................ 24

Fed. R. Civ. P. 9............................................................................................... 1, 29, 30

Fed. R. Civ. P. 12................................................................................................... 1

Defendants Deutsche Bank AG and Deutsche Bank Securities Inc. (collectively, "Deutsche Bank") hereby move to dismiss Plaintiffs' Complaint (the "Complaint" or "Compl.") pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Plaintiffs Leslie and Ronnie Leff are sophisticated businessmen who repeatedly sought to avoid tax liability over the course of several years by engaging in a series of tax strategies. Plaintiffs knew full well that these strategies might ultimately fail (the tax opinions that they received from prominent law firms claimed only that they were "more likely than not" to succeed) but they gambled on them anyway, in part because the Leffs calculated that there was a low risk of audit by the Internal Revenue Service ("IRS"). Plaintiffs initially realized substantial tax savings from these strategies, but, now that these tax savings have been challenged by the IRS, Plaintiffs claim that they were misled not only by their attorneys and other advisors who introduced them to and advised them regarding the tax strategies, but also by Deutsche Bank – a claim that is ludicrous on its face because the Leffs expressly acknowledged at the time of the transactions that they were not relying on Deutsche Bank for advice. Nonetheless, in their Complaint, Plaintiffs now assert claims for (i) breach of fiduciary duty and aiding and abetting breach of fiduciary duty; (ii) negligent misrepresentation; (iii) violations of the Illinois Consumer Fraud and Deceptive Business Practices Act; (iv) fraud, aiding and abetting fraud and conspiracy to defraud; (v) breach of contract and (vi) negligence. Not only are these claims meritless, they are time-barred because the Leffs were on notice of them long ago but failed to file this action until at least three years after the statute of limitations expired. Accordingly, the Complaint must be dismissed.

## STATEMENT OF FACTS[1]

In an effort to avoid liability for taxes on their considerable wealth, Plaintiffs engaged in a series of strategies over the course of several years. As alleged in the Complaint, after being approached by a financial advisor in Atlanta, Plaintiffs first entered into a series of transactions that resulted in claimed tax losses for the 1998 tax year. *See* Compl. ¶ 98; *see also id*. ¶ 27. The following year, Plaintiffs were approached by the law firm of Jenkens & Gilchrist regarding another tax strategy involving foreign currency digital options (the "Digital Options Strategy"). Pursuant to the Digital Options Strategy, Plaintiffs opened accounts with Deutsche Bank and formed various entities to purchase and transfer the digital options. *See id*. ¶¶ 108-16.

The terms of the digital options were set forth in agreements with Deutsche Bank (the "Confirmations"). *See, e.g., id*. ¶¶ 110, 114.[2] In these Confirmations, Plaintiffs represented to Deutsche Bank that they were entering into the transactions with Deutsche Bank based upon Plaintiffs' own independent decision, were not relying upon any communication by Deutsche Bank as advice or a recommendation to enter into the transaction, and that Deutsche Bank was not acting as an advisor or fiduciary to Plaintiffs. Specifically, Plaintiffs represented that:

> Non-Reliance. [Plaintiffs are] acting for [their] own account, and [they] ha[ve] made [their] own independent decisions to enter into this Transaction and as to whether the Transaction is appropriate or proper for [them] based upon [their] own judgment and upon advice from such advisers as [they] ha[ve] deemed necessary. [They are] not relying on any communication (written or oral) of [Deutsche Bank] including any affiliate or subsidiary thereof as investment advice or as a recommendation to enter into this Transaction, it being understood that information and explanations related to the terms and conditions of this Transaction shall not be considered to be investment advice or a recommendation

---

[1]    The factual allegations in the Complaint are accepted as true for purposes of this motion only. Deutsche Bank reserves the right to dispute Plaintiffs' allegations.

[2]    The Confirmations were entered into between Deutsche Bank AG and LJL Catherine Investments LLC (executed by Plaintiff Leslie Leff) and RHL Chapel Investments LLC (executed by Plaintiff Ronnie Leff). *See* Confirmations, attached hereto as Exhibits 1-2.

to enter into the Transaction.  No communication (written or oral) received from the other party shall be deemed to be an assurance or guarantee as to the expected results of this Transaction.

Assessment and Understanding.  [Plaintiffs are] capable of assessing the merits of and understanding (on [their] own behalf or through independent professional advice), and understand[] and accept[] the terms and conditions and risks of this Transaction.  [Plaintiffs are] also capable of assuming, and assume[], the risks of this Transaction.

Status of Parties.  [Deutsche Bank] is not acting as a fiduciary for or adviser to [Plaintiffs] in respect of this Transaction.

Confirmations ¶ 3, Exs. 1-2.

After implementing the Digital Options Strategy, Plaintiffs allegedly received opinion letters from Jenkens & Gilchrist confirming the propriety of claiming losses resulting from the Digital Options Strategy.  *See* Compl. ¶¶ 119-20.  In addition, Plaintiffs were allegedly advised by Jenkens & Gilchrist that, although the chance of an audit was "minimal," there were certain "safeguards" against liability, including the fact that "it was highly unlikely that an IRS auditor would see through the complexity of the tax shelter" and that the opinion letters would "prevent the imposition of accuracy-related penalties by the IRS."  *Id*. ¶ 87.  Plaintiffs subsequently filed their tax returns for the 1999 tax year claiming losses generated from engaging in the Digital Options Strategy.  *See id*. ¶¶ 113, 117.

In 2000, Plaintiffs once again sought means to reduce or eliminate their tax obligations and allegedly "looked into working" with another entity, Bricolage Capital LLC.  *See id*. ¶ 124.  Plaintiffs were subsequently introduced by Bricolage to the "Personal Investment Corporation" strategy (the "PICO Strategy").  *See id*. ¶¶ 59, 126.  The Complaint alleges that, as was the case with the Digital Options Strategy, "Deutsche Bank's responsibility was to execute trades and maintain accounts" as part of the PICO Strategy.  *Id*. ¶ 76.  Pursuant to the PICO Strategy, Plaintiffs, along with a Bricolage-affiliated entity, created an S Corporation to engage

3

in foreign currency straddles. *See id*. ¶¶ 63-65, 131-32. Plaintiffs also executed various consulting and management agreements with Bricolage-related entities to allow the entities to manage and trade the forward contracts. *See id*. ¶¶ 66, 131-32, 136. Plaintiffs later redeemed the Bricolage entity's interest in the S Corporation and terminated the various agreements. *See id*. ¶¶ 67, 134, 138.

In connection with the PICO Strategy, Plaintiffs executed letter agreements with Deutsche Bank (the "Representation Letters") in which they represented that:

1.  Deutsche Bank has had no involvement in, and accepts no responsibility for, the establishment or promotion of the Strategies;

2.  Deutsche Bank makes no guarantee or representation whatsoever as to the expected performance or results of the Strategies or any Transaction (including the financial, regulatory, accounting or tax consequences thereof), and you have not engaged in the Strategies or entered into the Transactions in reliance upon any such guarantee or representation;

3.  You have been independently advised by your own legal counsel and will comply with all applicable laws of the United States related to the Transactions.

Representation Letters, attached hereto as Exhibits 5-6. In these Representation Letters, Plaintiffs further agreed that:

> except as expressly provided in the documentation evidencing the Transactions, Deutsche Bank shall not be liable to you for any losses, liabilities, costs, expenses, or other amounts relating to the Strategies or the Transactions, including any losses, liabilities, costs, expenses, or other amounts arising out of the failure of the Strategies or any Transaction to achieve your legal, regulatory, business, investments, financial, accounting, tax or other objectives.

*Id*. Plaintiffs again made similar representations in the custody account agreements executed with Deutsche Bank as part of the PICO Strategy (the "Custody Account Agreements"). For example, in these agreements Plaintiffs' represented that:

> [Plaintiffs] acknowledge that [Deutsche Bank is] not being engaged to render any advice with respect to any securities or other investments. [Plaintiffs] agree that any purchase or sale of securities or other investments hereunder shall not be made in reliance upon advice by [Deutsche Bank]. . . . [Plaintiffs] acknowledge

> that [they] are engaging [Deutsche Bank] to perform only the custody and execution services described herein.

and that:

> [Deutsche Bank and its] nominees shall not be responsible for, and [Plaintiffs] shall hold [Deutsche Bank and its] nominees harmless and indemnify [Deutsche Bank and its] nominees against, against any Liabilities . . . in relation to or stemming from . . . causes other than [Deutsche Bank's] gross negligence or willful misconduct or breach of an undertaking of [Deutsche Bank's] expressly stated herein.

> In no event shall [Deutsche Bank] be liable for consequential, special or punitive damages.

Custody Account Agreements at 2, 8-9, Exs. 5-6.  After executing the PICO Strategy, Plaintiffs received opinion letters from the law firm Proskauer Rose LLP confirming the propriety of the transactions.  *See* Compl. ¶ 142.  These opinion letters advised Plaintiffs that it was only "more likely than not" that the losses generated from the PICO Strategy were deductible, and thus Plaintiffs were made aware that the PICO Strategy might ultimately fail.  *See id.* ¶ 144.

At an unspecified date thereafter, Plaintiffs were audited by the IRS and allegedly assessed taxes, interest and penalties resulting from the losses claimed related to the Digital Options and PICO Strategies (collectively, the "Tax Strategies" or "Strategies").  *See id.* ¶ 9, 170.  Plaintiffs purportedly reached a settlement with the IRS in the fall of 2004.  *See id.* ¶ 9.

## ARGUMENT

I.  **EACH OF PLAINTIFFS' CLAIMS FAILS AS A MATTER OF LAW**

A.  **New York Law Governs Plaintiffs' Claims**

New York law governs Plaintiffs' claims because various documents executed as part of the Tax Strategies – including account and custody agreements Plaintiffs entered into with Deutsche Bank (the "Account Agreements," with respect to the Digital Options Strategy, and Custody Account Agreements, with respect to the PICO Strategy) and the digital options

Confirmations[3] – contain New York choice of law clauses.[4]  Illinois courts generally give effect to contractual choice of law provisions.  *See, e.g., Peregrine Emerging CTA Fund, LLC v. Tradersource, Inc.*, No. 07C5528, 2008 WL 474369, at *3 (N.D. Ill. Feb. 19, 2008) ("Under Illinois choice of law, when the intent of the parties is expressed in a governing law provision of the contract, that state's substantive law would apply as intended by the parties.").

These provisions apply not only to contract claims but also to Plaintiffs' tort claims.  Under Illinois law, "regardless of the breadth of the choice of law provision, tort claims that are dependent upon the contract are subject to a contract's choice of law provisions." *Amakua Dev. LLC v. Warner*, 411 F. Supp. 2d 941, 955 (N.D. Ill. 2006).  In deciding whether a tort claim is dependent upon a contract, courts examine whether: "(1) the claim alleges a wrong based on the construction and interpretation of the contract; (2) the tort claim is closely related to the parties' contractual relationship; or (3) the tort claim could not exist without the contract." *Id.*

Here, these requirements are met.  For example, Plaintiffs' fraud and negligent misrepresentation claims refer to the digital option trades reflected in the Confirmations, which in turn were held in the accounts opened pursuant to the Account Agreements.  *See, e.g.*, Compl. ¶¶ 193, 214; *see also id.* ¶¶ 110, 114.  Moreover, because Plaintiffs' relationship with Deutsche Bank stems from the Account Agreements, Custody Account Agreements and Confirmations, their tort claims would not exist had these contracts – containing the New York law provisions –

---

[3]    The Court may consider these documents on this motion to dismiss without converting the motion to one for summary judgment because they are referred to in the Complaint, *see, e.g.*, Compl. ¶¶ 76, 108, 110, 114 (alleging that Deutsche Bank's role in the Strategies was to execute trades and maintain accounts and specifying the terms of the digital options transactions), and central to Plaintiffs' claims.  *See McCready v. eBay, Inc.*, 453 F.3d 882, 891 (7th Cir. 2006).

[4]    *See* Account Agreements ¶ 18, Exs. 7-8; Custody Account Agreements at 10, Exs. 5-6; Confirmations ¶ 4, Exs. 1-2.

not been executed.  Accordingly, New York law applies to all of the claims asserted.[5]

**B.    Plaintiffs' Claims For Breach Of Fiduciary Duty, Negligent Misrepresentation And Negligence Fail Because The Complaint Does Not Adequately Allege The Requisite Fiduciary Duty Or Special Relationship**

**1.    No Fiduciary Relationship Existed Between Plaintiffs And Deutsche Bank To Support A Claim For Breach Of Fiduciary Duty**

Plaintiffs' breach of fiduciary duty claim (Count I) fails because Plaintiffs and Deutsche Bank did not have a fiduciary relationship.  *See Laikin v. Vaid*, No. 604996/00, 2001 WL 1682873, at *1 (N.Y. Sup. Ct. Oct. 10, 2001) (fiduciary relationship essential to breach of fiduciary duty claim).[6]  Under New York law, a fiduciary relationship is one where "trust or confidence [is] reposed by one person in the integrity and fidelity of another."  *Compania Sud-Americana de Vapores, S.A. v. IBJ Schroder Bank & Trust Co.*, 785 F. Supp. 411, 425 (S.D.N.Y. 1992) (citation omitted).  Courts applying New York law are loath to find fiduciary relationships where, as here, parties "deal at arms length in a commercial transaction," and instead will find

---

[5]    *See, e.g., Peregrine*, 2008 WL 474369, at *4 (applying Delaware law to negligence claim after finding that "by specifically asserting that Delaware law should apply to the contract, the parties were centering their contractual relationship in the state of Delaware.  Therefore, Delaware would have the greatest interest in the contractual relationship between [the plaintiff] and Defendants and Delaware substantive law should be applied . . . ."); *Amakua*, 411 F. Supp. 2d at 956 (applying California law chosen by the parties where the plaintiff's fraud claim was dependent on the parties' agreement).

In any event, as noted below, dismissal is warranted under either New York or Pennsylvania law, the law that would apply in the absence of the choice of law provisions.  Illinois courts apply the "most significant relationship" analysis in determining choice of law issues.  Here, that analysis would lead to the application of Pennsylvania law, where Plaintiffs resided at the time of the transactions and where they relied on the allegedly fraudulent advice.  *See* Compl. ¶¶ 14-15, 125; *Telular Corp. v. Mentor Graphics Corp.*, 282 F. Supp. 2d 869, 873 (N.D. Ill. 2003) (noting that the place where the plaintiff acted in reliance upon the defendants' representations was the most important factor in the most significant relationship analysis).

[6]    The existence of a fiduciary relationship is also essential to a breach of fiduciary duty claim under Pennsylvania law.  *See, e.g., DeStefano & Assocs., Inc. v. Cohen*, No. 2775 June Term 2000, 2002 WL 1472340, at *3 (Pa. Com. Pl. May 23, 2002).

such a relationship only in "extraordinary circumstances." *Id*. at 426 (citations omitted).[7]

Plaintiffs allege no such extraordinary circumstances. Although Plaintiffs base their fiduciary duty claim on the conclusory allegation[8] that "Defendants, as the Leffs' financial advisors, were the Leffs' fiduciaries," Compl. ¶ 185, "an arm's length transaction with a large financial institution acting as the counterparty to an option transaction, will not generally give rise to a fiduciary duty unless one is created by agreement, and the mere assertion of a fiduciary duty in the complaint does not create one without a factual basis from which to infer its existence." *Conwill v. Arthur Andersen LLP*, 820 N.Y.S.2d 842 (Table), 2006 WL 1703621, at *11 (N.Y. Sup. Ct. June 21, 2006) (internal citations omitted). Here, the circumstances that would give rise to a fiduciary relationship between Plaintiffs and Deutsche Bank are lacking.

As an initial matter, Plaintiffs expressly represented in documents executed in connection with their implementation of the Digital Options and PICO Strategies that no fiduciary relationship existed. Specifically, the Confirmations Plaintiffs signed as part of the Digital Options Strategy state that Deutsche Bank was "not acting as a fiduciary for or advisor to [Plaintiffs] in respect of this Transaction." Confirmations, Exs. 1-2. Similarly, in the Custody Account Agreements executed in connection with the PICO Strategy, Plaintiffs represented that Deutsche Bank was not being engaged to render any advice, but rather was simply to perform certain specified custody and execution services. *See* Custody Account Agreements at 2

---

[7]    *See also eToll, Inc. v. Elias/Savion Adver., Inc.*, 811 A.2d 10, 23 (Pa. Super. Ct. 2002) (finding no fiduciary or "special relationship" between parties to an arms length business contract and noting that "[p]laintiff cites no case in which . . . a special relationship was found to exist between parties to an arms length business contract").

[8]    Conclusory allegations of a fiduciary duty are insufficient to establish such a relationship. *See, e.g.*, *Tesoriero v. Metlife*, 800 N.Y.S.2d 357 (Table), 2004 WL 3086862, at *3 (N.Y. Sup. Ct. May 13, 2004); *Oursler v. Women's Interart Ctr., Inc.*, 566 N.Y.S.2d 295, 297 (N.Y. App. Div. 1991); *see generally Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007).

("[Plaintiffs] acknowledge that [Deutsche Bank] is not being engaged to render any advice with respect to any securities or other investments. . . . [Plaintiffs] acknowledge that [they] are engaging [Deutsche Bank] to perform only the custody and execution services described herein."), Exs. 5-6. "Because contractual disclaimers of fiduciary duty are effective in New York, no fiduciary duty can arise from the relationship between [Plaintiffs] and Deutsche Bank." *Seippel v. Jenkens & Gilchrist, P.C.*, 341 F. Supp. 2d 363, 381-82 (S.D.N.Y. 2004) (construing foreign exchange digital option contracts entered into by the plaintiffs and Deutsche Bank that contained identical representations to those contained in the Confirmations Plaintiffs signed here), *amended on other grounds on reconsideration*, No. 03 Civ. 6942 (SAS), 2004 WL 2403911 (S.D.N.Y. Oct. 26, 2004). For this reason, other courts evaluating similar claims arising from the implementation of various tax strategies have dismissed breach of fiduciary duty claims.[9]

Moreover, even absent the contractual representations, Plaintiffs fail to allege the extraordinary circumstances that would transform the parties' arms-length relationship into a

_____

[9]    *See, e.g., BFS Morgan Investors, LLC v. Deutsche Bank AG*, Court File No. 27CV05-11478, slip op. at 7-8 (Minn. Dist. Ct. Aug. 16, 2006) ("In [the plaintiff's] complaint there are numerous assertions that Defendant[] Deutsche Bank acted as Plaintiff's investment advisor. However, these assertions are conclusory, unsupported by underlying facts, and directly contradict the signed representations [which are identical to those made by the Leffs in the Confirmations] made by Plaintiff . . . . The transactions between Plaintiff . . . and Defendant[] Deutsche Bank were sophisticated, intricate, lucrative business dealings. . . . [T]his court concludes these FX contracts exemplify the arms-length business negotiations that do not give rise to a fiduciary relationship."), Ex. 9; *Conwill*, 2006 WL 1703621, at *11 (dismissing, *inter alia*, breach of fiduciary duty claim in case involving a tax strategy and stating that "[w]here no fiduciary duty is implied by law, contractual disclaimers may be given effect, and enforced in accordance with their terms"); *see also King v. Deutsche Bank AG*, No. 04-1029-HU, slip op. at 21 (D. Or. Sept. 12, 2005) (Findings & Recommendation) (holding, in applying Oregon law, that foreign exchange digital option contracts entered into by the plaintiffs who implemented the Digital Options Strategy and Deutsche Bank that contain the same representations as those in the Confirmations the Leffs executed required dismissal of breach of fiduciary duty claim), *adopted in King v. Deutsche Bank AG,* slip op. (D. Or. Feb. 1, 2006), Ex. 10.

fiduciary one.  In connection with the Tax Strategies, Plaintiffs opened nondiscretionary accounts with Deutsche Bank.  Such accounts do not ordinarily give rise to a fiduciary relationship.[10]  Nor does the Complaint allege any of the hallmarks of a fiduciary relationship. For example, there are no allegations that Plaintiffs had a long-standing relationship with Deutsche Bank before the Tax Strategies or that Deutsche Bank was deeply and extensively involved in Plaintiffs' finances.  Rather, the Complaint alleges that Plaintiffs were initially approached by Mark Klopfenstein in 1998 regarding a tax strategy and, after implementing that strategy, were again approached in 1999 by Klopfenstein and representatives of Jenkens & Gilchrist regarding the Digital Options Strategy.  *See* Compl. ¶¶ 98, 100-02.  Only thereafter are Plaintiffs alleged to have "opened accounts with DB Alex. Brown to effectuate the purchase and sale of digital options."  *Id.* ¶ 108.  Similarly, Plaintiffs were introduced to the PICO Strategy in 2000 after allegedly "look[ing] into working with Bricolage."  *Id.* ¶ 124.  A representative of Bricolage explained that Deutsche Bank was also involved in executing the PICO Strategy, *see id.* ¶ 126, and, as in the Digital Options Strategy, "Deutsche Bank's responsibility was to execute trades and maintain accounts," *id.* ¶ 76.  Accordingly, Plaintiffs' relationship with Deutsche Bank was governed by the non-discretionary accounts opened in connection with the Tax Strategies, and, as discussed above, those accounts do not create general fiduciary duties.[11]

---

[10]    *See, e.g., de Kwiatkowski v. Bear, Stearns & Co.,* 306 F.3d 1293, 1302 (2d Cir. 2002); *Indep. Order of Foresters v. Donald, Lufkin & Jenrette, Inc.*, 157 F.3d 933, 940 (2d Cir. 1998) ("Under New York law, as generally, there is no general fiduciary duty inherent in an ordinary broker/customer relationship.").

[11]    Although a broker does owe a client some duties with respect to nondiscretionary accounts, those duties are narrowly circumscribed and entail only a duty of diligence and competence in executing a client's orders.  *See, e.g., de Kwiatkowski,* 306 F.3d at 1302.  There is, however, no ongoing, general fiduciary duties inherent in such accounts.  *See id.* ("It is uncontested that a broker ordinarily has no duty to monitor a nondiscretionary account, or to give advice to such a customer on an ongoing basis.  The broker's duties ordinarily end after each

2.     **Plaintiffs' Fail To State Claims For Negligent Misrepresentation And Negligence Because Plaintiffs Cannot Establish Any Special Relationship With Or Duty Owed By Deutsche Bank**

To state a claim for negligent misrepresentation (Count II) under New York law, a plaintiff must allege that the parties stood in a special relationship such that the defendant had a duty of care to render accurate information, the defendant negligently provided incorrect information and the plaintiff reasonably relied on the incorrect information. *See Goodman Mfg. Co. v. Raytheon Co.*, No. 98 Civ. 2774 (LAP), 1999 WL 681382, at *14 (S.D.N.Y. Aug. 31, 1999); *see also United Safety of Am., Inc. v. Consol. Edison Co. of New York, Inc.*, 623 N.Y.S.2d 591, 593 (N.Y. App. Div. 1995) ("[a] claim for negligent misrepresentation can only stand in the presence of a special relationship of trust or confidence, which creates a duty").[12]

To state a claim for negligence (Count VI), "a plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom." *Solomon by Solomon v. City of New York*, 499 N.Y.S.2d 392, 392 (N.Y. 1985).[13] Moreover, "[w]hen a negligence claim grows out of a contract claim, an independent duty that springs from circumstances outside the contract must exist to sustain the negligence

_____

transaction is done, and thus do not include a duty to offer unsolicited information, advice or warnings concerning the customer's investments.").

[12]     Under Pennsylvania law, the elements of a negligent misrepresentation claim are: "(1) a misrepresentation of a material fact; (2) the representor must either know of the misrepresentation, must make the misrepresentation without knowledge as to its truth or falsity or must make the representation under the circumstances in which he ought to have known of its falsity; (3) the representor must intend the representation to induce another to act on it; and (4) injury must result to the party acting in justifiable reliance on the misrepresentation." *Broeg v. Pivovar*, No. 9022 Civil 2005, 2006 WL 3924482 (Pa. Com. Pl. Feb. 22, 2006) (quotation omitted). Although Pennsylvania may not require a "special relationship" among the parties, Plaintiffs' negligent misrepresentation claim would still fail under Pennsylvania law because, as discussed in Section I.C., *infra*, Plaintiffs cannot establish the element of justifiable reliance.

[13]     The elements of a negligence claim are similar under Pennsylvania law. *See, e.g., Commerce Bank/Pennsylvania v. First Union Nat'l Bank*, 911 A.2d 133, 137 (Pa. Super. 2006).

claim." *Calcutti v. SBU, Inc.*, 223 F. Supp. 2d 517, 522 (S.D.N.Y. 2002). In the absence of an independent duty, a negligence claim merges into the breach of contract claim. *See id.*

Plaintiffs' negligent misrepresentation and negligence claims fail for the same reason that Plaintiffs' breach of fiduciary duty claim fails – Deutsche Bank did not have a "special relationship" with or owe a duty to Plaintiffs. As with Plaintiffs' breach of fiduciary duty claim, a conventional business relationship such as the one alleged between Plaintiffs and Deutsche Bank is insufficient to give rise to a "special relationship" that would impose a duty upon Deutsche Bank.[14] As discussed in connection with Plaintiffs' breach of fiduciary duty claim, Plaintiffs expressly disclaimed any fiduciary or special relationship in contracts executed upon entering into the Tax Strategies, and the Complaint alleges no relationship between Plaintiffs and Deutsche Bank that goes beyond the arms-length contractual services described in the various brokerage account agreements and documents associated with the Tax Strategies.[15] As a result, Plaintiffs' negligent misrepresentation and negligence claims fail as a matter of law.

### C.   Plaintiffs' Fraud And Negligent Misrepresentation Claims Fail Because Plaintiffs Cannot Establish Reasonable Reliance

A necessary element of Plaintiffs' fraud[16] (Count IV) and negligent

---

[14]    *See Didomenico v. Long Beach Plaza Corp.*, No. 3020/03, 2003 WL 22762712, at *2 (N.Y. Sup. Ct. Oct. 28, 2003) (dismissing negligence claim for lack of an "extra-contractual duty" given "arms-length business relationship"); *Atkins Nutritionals, Inc. v. Ernst & Young, LLP*, 754 N.Y.S.2d 320, 322 (N.Y. App. Div. 2003) (dismissing negligent misrepresentation claim due to "lack of a special relationship distinct from and independent of the contract" in an "arms-length business relationship").

[15]    *See BFS Morgan*, slip op. at 9 (dismissing negligence and negligent misrepresentation claims asserted against Deutsche Bank in a case involving the COBRA tax strategy after finding that Deutsche Bank owed no duty to the plaintiff and no special relationship existed), Ex. 9; *see also Old Republic Nat'l Title Ins. Co. v. Cardinal Abstract Corp.*, 790 N.Y.S.2d 143, 145 (N.Y. App. Div. 2005) (dismissing negligence claim because complaint failed to allege breach of a duty independent of any purported contractual obligation).

[16]    To state a claim for fraud under New York law, a plaintiff must allege (1) a

misrepresentation (Count II) claims is reasonable reliance on an alleged misrepresentation or omission or on negligently provided incorrect information.  Because Plaintiffs cannot establish, among other things, the element of reasonable reliance, their claims for fraud and negligent misrepresentation fail as a matter of law.

Even if the Complaint alleged with the requisite particularity a material misrepresentation or omission by Deutsche Bank – which, as discussed in Section III, *infra*, it does not – any alleged reliance by Plaintiffs would have been unreasonable as a matter of law in light of representations Plaintiffs made upon entering into the Digital Options and PICO Strategies.[17]  To execute their digital options transactions, Plaintiffs executed Confirmations in which they represented that:

> [Plaintiffs are] not relying on any communication (written or oral) of [Deutsche Bank] [including any affiliate or subsidiary thereof] as investment advice or as a recommendation to enter into [the] Transaction, it being understood that information and explanations related to the terms and conditions of [the] Transaction shall not be considered to be investment advice or a recommendation to enter into the Transaction.

Confirmations, Exs. 1-2.  Similarly, in implementing the PICO Strategy, Plaintiffs again expressly agreed that that they were not relying on any guarantee or representation of Deutsche Bank when entering into the Strategy.  Specifically, Plaintiffs represented that:

> Deutsche Bank makes no guarantee or representation whatsoever as to the expected performance or results of the Strategies or any Transaction (including

---

misrepresentation or omission of a material fact, (2) the defendant's intent to deceive, (3) justifiable reliance, and (4) injury caused to the plaintiff by the defendant's misrepresentation or omission.  *See Rich v. Maidstone Fin., Inc.*, No. 98 Civ. 2569 (DAB), 2001 WL 286757, at *11 (S.D.N.Y. Mar. 23, 2001).  Pennsylvania law is similar.  *See Colaizzi v. Beck*, 895 A.2d 36, 39 (Pa. Super. Ct. 2006).

[17]     Under New York law, "where a party specifically disclaims reliance upon a representation in a contract, that party cannot, in a subsequent action for fraud, assert it was fraudulently induced to enter into the contract by the very representation it has disclaimed."  *Grumman Allied Indus. Inc. v. Rohr Indus., Inc.*, 748 F.2d 729, 734 (2d Cir. 1984).

the financial, regulatory, accounting or *tax consequences* thereof), and [Plaintiffs] have not engaged in the Strategies or entered into the Transactions in reliance upon any such guarantee or representation.

Representation Letters ¶ 2 (emphasis added), Exs. 3-4.[18]  In light of these specific affirmative representations, Plaintiffs cannot establish justifiable reliance on any alleged misrepresentation or omission[19] – whether made intentionally or negligently – and they therefore cannot, as a matter of law, recover on their fraud and negligent misrepresentation claims.[20]

### D.     The Complaint Fails To State A Claim For Conspiracy To Defraud

There is no substantive tort of civil conspiracy (Count IV) under New York law. Rather, to state a claim for civil conspiracy, a complaint must allege an independent actionable tort and four additional elements:  (1) a corrupt agreement; (2) an overt act in furtherance of the agreement; (3) a party's intentional participation in the furtherance of a plan; and (4) resulting damage.  *See Lewis v. Rosenfeld*, 138 F. Supp. 2d 466, 479 (S.D.N.Y. 2001), *amended on other*

---

[18]     *See also* Custody Account Agreements at 2 ("[Plaintiffs] agree that any purchase or sale of securities or other investments hereunder shall not be made in reliance upon any such advice by [Deutsche Bank]."), Exs. 5-6.

[19]     To the extent Plaintiffs' fraud and negligent misrepresentation claims are predicated on alleged omissions, *see, e.g.*, Compl. ¶¶ 193, 195-97, 199, 212, 217-20, the claims are similarly deficient.  A defendant is not liable for an omission unless it has a duty to speak.  *See Oei v. Citibank, N.A.*, 957 F. Supp. 492, 519 (S.D.N.Y. 1997); *Elghanian v. Harvey*, 671 N.Y.S.2d 266, 266 (N.Y. App. Div. 1998).  Because, as set forth above in Section I.B., no fiduciary duty or special relationship existed between Plaintiffs and Deutsche Bank, and Deutsche Bank therefore owed no such duty to speak, Plaintiffs cannot state claims for fraud and negligent misrepresentation based upon alleged omissions.

[20]     *See Conwill*, 2006 WL 1703621, at *11 (holding, in dismissing claims stemming from the implementation of another tax strategy, that similar representation language contained in contracts plaintiffs executed with an investment bank "provide[s] a complete defense to any claims that require a finding of representations, reliance or fiduciary duty"); *King*, slip op. at 5-7 (dismissing, under Oregon law, fraud claim where confirmations containing identical representation language to that in Plaintiffs' Confirmations "directly contradict the . . . plaintiffs' allegations of reliance on statements or advice made by the Deutsche defendants"), Ex. 10; *see also Adams v. Intralinks, Inc.*, No. 03 Civ. 5384 SAS, 2004 WL 1627313, at *7 (S.D.N.Y. July 20, 2004) (no reasonable reliance where alleged oral misrepresentations were contradicted by the terms of a written agreement between the parties).

14

*grounds*, 145 F. Supp. 2d 341 (S.D.N.Y. 2001). Even if the Complaint adequately alleged these four elements – which it does not – Plaintiffs have not alleged a viable fraud claim against Deutsche Bank or any other party. Accordingly, this claim should also be dismissed. *See BFS Morgan*, slip op. at 10 (dismissing conspiracy claim against Deutsche Bank where plaintiff failed to sufficiently plead an independent tort).[21]

**E.    Plaintiffs' Claims For Aiding And Abetting Breach Of Fiduciary Duty And Fraud Should Be Dismissed**

Plaintiffs also allege that Deutsche Bank aided and abetted breaches of fiduciary duty (Count I) and fraud (Count IV) committed by other participants in the Digital Options and PICO Strategies. In order to state a claim for aiding and abetting breach of fiduciary duty or fraud, a plaintiff must allege (1) a breach by a fiduciary of obligations to another or fraud, (2) knowing participation by the defendant in the breach or fraud, and (3) damages to the plaintiff.[22]

As an initial matter, even if the other elements of these claims were adequately pled, Plaintiffs' aiding and abetting claims fail due to the absence of a properly alleged underlying breach of duty or fraud.[23] Moreover, to state aiding and abetting claims against Deutsche Bank, Plaintiffs must allege that Deutsche Bank "knowingly participated" in another's

---

[21]    The result is the same under Pennsylvania law. *See, e.g., Viguers v. Phillip Morris USA*, 837 A.2d 534, 540 (Pa. Super. Ct. 2003) (finding that claim for conspiracy to commit fraud failed where the plaintiff failed to plead all elements of the underlying fraud claim).

[22]    *See Kolbeck v. LIT Am., Inc.*, 939 F. Supp. 240, 245 (S.D.N.Y. 1996), *aff'd*, 152 F.3d 918 (2d Cir. 1998); *Nigerian Nat'l Petroleum Corp. v. Citibank, N.A.*, No. 98 Civ. 4960 (MBM), 1999 WL 558141, at *8 (S.D.N.Y. July 30, 1999).

Although the elements of an aiding and abetting breach of fiduciary duty claim are similar under Pennsylvania law, *see Lichtman v. Taufer*, 2004 WL 1632574, at *8 (Pa. Com. Pl. July 13, 2004), Pennsylvania courts may not recognize a claim for aiding and abetting fraud, *see Fleet Nat'l Bank v. Boyle*, 04CV1277LDD, 2005 WL 2455673, at *13 (E.D. Pa. Sept. 12, 2005).

[23]    *See Sovereign Bus. Forms, Inc. v. Stenrite Indus., Inc.*, No. 00 Civ. 3867 (BDP), 2000 WL 1772599, at *12 (S.D.N.Y. Nov. 28, 2000); *Citibank, N.A. v. K-H Corp.*, 968 F.2d 1489, 1497 (2d Cir. 1992).

fraud or detrimental breach of its fiduciary duty, which requires allegations of both actual knowledge and substantial assistance.[24]  The Complaint here properly alleges neither.

First, to the extent Plaintiffs' aiding and abetting claims are based upon allegations that Deutsche Bank "knew or should have known" that the Tax Strategies were allegedly improper and not allowable for tax purposes,[25] such allegations are insufficient to allege actual knowledge to support aiding and abetting claims.[26]

Second, the Complaint does not adequately allege that Deutsche Bank provided "substantial assistance" to any other party in breaching a duty owed to or inflicting a fraud upon Plaintiffs.  The Complaint alleges that Deutsche Bank's role in implementing Plaintiffs' PICO and Digital Options Strategies was "to execute trades and maintain accounts."  Compl. ¶ 76; *see also id*. ¶¶ 108, 110, 114.  However, simply providing banking facilities does not rise to the level of substantial assistance.[27]

In addition, substantial assistance requires a defendant's participation to be the proximate cause of a plaintiff's injury.  *See Kolbeck*, 939 F. Supp. at 249.  To satisfy the proximate cause element, a plaintiff must establish that his injury was "a direct or reasonably foreseeable result of the complained-of conduct."  *Id*. (quotation omitted).  Here, Plaintiffs' alleged injuries cannot have been "a direct or reasonably foreseeable result of" the alleged

---

[24]    *See Sharp Int'l Corp. v. State Street Bank & Trust Co.*, 403 F.3d 43, 49-50 (2d Cir. 2005); *Nigerian Nat'l Petroleum Corp*, 1999 WL 558141, at *8.

[25]    *See, e.g.*, Compl. ¶¶ 28, 79, 97, 150, 156, 171, 186-87, 216.

[26]    *See Stutts v. De Dietrich Group*, No. 03-CV-4058 (ILG), 2006 WL 1867060, at *13 (S.D.N.Y. June 30, 2006); *Brasseur v. Speranza*, 800 N.Y.S.2d 669, 671 (N.Y. App. Div. 2005).

[27]    *See Nigerian Nat'l Petroleum Corp.*, 1999 WL 558141, at *8 ("The mere fact that participants in a fraudulent scheme use accounts at [a bank] to perpetrate it, without more, does not rise to the level of substantial assistance necessary to state a claim for aiding and abetting liability.") (internal quotations omitted).

conduct upon which Plaintiffs' aiding and abetting claims are based – various purported misrepresentations and omissions[28] by Deutsche Bank, *see, e.g.*, Compl. ¶¶ 188, 212-14 – because, as discussed above, *see supra* Section I.C., Plaintiffs expressly disclaimed reliance on any representations by Deutsche Bank upon entering into the Tax Strategies.  Given these specific representations, reliance on any alleged representations by Deutsche Bank simply was not foreseeable.  Moreover, proximate causation cannot be found where an intervening cause was responsible for a plaintiff's loss.  *See Giraldo v. Rossberg*, 747 N.Y.S.2d 78, 79 (N.Y. App. Div. 2002); *Duggal v. St. Regis Hotel*, 695 N.Y.S.2d 602, 603 (N.Y. App. Div. 1999).  Here, the alleged misrepresentations by Plaintiffs' tax and legal advisors in soliciting and advising Plaintiffs regarding the Digital Options and PICO Strategies and issuing legal opinions regarding the Strategies[29] would be intervening events that would defeat any allegation of proximate causation.  As a result, Plaintiffs' aiding and abetting claims fail for this reason, as well.

F.    **The Complaint Fails To State A Claim For Violations Of The Illinois Consumer Fraud And Deceptive Business Practices Act**

Plaintiffs also assert a claim for alleged violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (the "ICFA") (Count III).  As an initial matter, this claim fails for the simple reason that, as demonstrated above, New York law applies, pursuant to the New York choice of law provisions contained in the operative contracts.  *See supra* Section I.A.  When parties contractually agree that the law of a state other than Illinois governs a dispute, a plaintiff is precluded from asserting a claim under the ICFA.  *See M. Block & Sons, Inc. v. Int'l*

---

[28]    Alleged omissions or failures to act constitute substantial assistance "only if the defendant owes a fiduciary duty directly to the plaintiff."  *Sharp Int'l*, 403 F.3d at 50 (internal quotations omitted).  As Deutsche Bank was not Plaintiffs' fiduciary, *see supra* Section I.B.1., Plaintiffs cannot base their aiding and abetting claims on purported omissions.

[29]    *See, e.g.*, Compl. ¶¶ 100-02, 108, 120, 124, 131, 136, 143.

*Bus. Machs. Corp.*, No. 04 C 340, 2004 WL 1557631, at *7 (N.D. Ill. July 8, 2004) ("Because

New York law controls [pursuant to the contract's New York choice of law provision], Plaintiff

cannot bring an Illinois statutory claim against Defendant."); *Telular*, 282 F. Supp. 2d at 871

(noting that the court previously dismissed the ICFA claim after "finding that an Oregon choice

of law provision in the contract precluded application of the Illinois act.").

Even if this Court finds that the New York choice of law provisions do not

prohibit Plaintiffs from asserting an ICFA claim, the claim should still be dismissed because

Plaintiffs fail to properly allege a cause of action under the act.  In order to state an ICFA claim,

a plaintiff must allege (1) a deceptive act or practice; (2) the defendant's intent that the plaintiff

rely on the deception; (3) that the deception occurred in the course of conduct involving trade or

commerce; and (4) that the plaintiff's injury was proximately caused by the alleged fraud.  *See*

*Rockford Mem'l Hosp. v. Havrilesko*, 368 Ill. App. 3d 115, 122 (Ill. App. Ct. 2006).  However,

an expression of opinion or the promise of future behavior generally will not support an ICFA

claim.  *See In re Estate of Albergo*, 275 Ill. App. 3d 439, 451 (Ill. App. Ct. 1995); *Sohaey v. Van*

*Cura*, 240 Ill. App. 3d 266, 291 (Ill. App. Ct. 1992).

Here, as discussed in connection with Plaintiffs' aiding and abetting claims,

Plaintiffs cannot establish the element of proximate causation.  *See supra* Section I.E.   In

addition, Plaintiffs' ICFA claim fails because the alleged misstatements are not actionable under

Illinois law.  Many of the statements alleged in the Complaint were future promises to perform

under a contract.  For example, although Plaintiffs assert that Defendants stated that they would

continue to provide "the same world-class financial service" Plaintiffs had come to expect,

Compl. ¶ 128, future promises cannot form the basis of an ICFA claim.  *See, e.g., Sohaey*, 240

Ill. App. 3d at 291.  Similarly, the remainder of the alleged misstatements regarding Deutsche

Bank's expertise, capabilities and the likely success of the Tax Strategies are statements of opinions, rather than fact, which are also not actionable. Because Plaintiffs' ICFA claim is predicated upon alleged opinions regarding the tax savings Plaintiffs could receive through their participation in the Strategies, the ICFA claim fails for this reason, as well.

### G.    The Complaint Fails To State A Claim For Breach Of Contract

To state a breach of contract claim (Count V), a plaintiff must allege the provision of the contract that was purportedly breached. *See Wolff v. Rare Medium, Inc.*, 210 F. Supp. 2d. 490, 494 (S.D.N.Y. 2002). Here, however, although Plaintiffs and Deutsche Bank entered into various contracts as part of the Strategies, Plaintiffs do not identify a single provision of a specific contract that they claim was breached. Instead, Plaintiffs refer to unspecified contracts "whereby Defendants agreed to deliver legitimate financial services, including tax benefits, to the Leffs" and where "Defendants promised to deliver certain benefits to Plaintiffs," and then allege that Deutsche Bank breached these unidentified contracts and the duty of good faith and fair dealing by failing to disclose certain information. Compl. ¶¶ 226, 228-29. Such allegations do not support a claim for breach of contract or the duty of good faith and fair dealing.

First, although Plaintiffs allege that they entered into contracts in which Deutsche Bank promised to deliver "tax benefits," *id.* ¶ 226, an examination of the contracts entered into with Deutsche Bank reveals that this is simply not the case. For example, rather than guarantee any particular outcome, in the digital options Confirmations Plaintiffs represented that "[n]o communication (written or oral) received from [Deutsche Bank] shall be deemed to be an assurance or guarantee as to the expected results of this Transaction." Confirmations, Exs. 1-2. Similarly, in connection with the PICO Strategy, Plaintiffs represented that:

> Deutsche Bank makes no guarantee or representation whatsoever as to the expected performance or results of the Strategies or any Transaction (*including* the financial, regulatory, accounting or *tax consequences* thereof), and [Plaintiffs]

19

have not engaged in the Strategies or entered into the Transactions in reliance upon any such guarantee or representation.

Representation Letters ¶ 2 (emphasis added), Exs. 3-4. In addition, although Plaintiffs allege that Deutsche Bank "promised to deliver certain benefits to Plaintiffs," Compl. ¶ 228, they fail to identify what benefits were promised. The only benefits promised by Deutsche Bank in connection with the Tax Strategies are those expressly identified in the operative contracts – namely, to maintain accounts used in the Strategies, execute trades requested by Plaintiffs or Plaintiffs' representatives and make payments under the circumstances specified in the Confirmations. As such, these contracts could only be breached if Deutsche Bank failed to properly maintain Plaintiffs' accounts or make a payment when Plaintiffs were entitled to receive one. However, the Complaint is devoid of any such allegations.

Second, unable to identify a particular contractual provision that they claim was breached, Plaintiffs attempt to state a claim for breach of the duty of good faith and fair dealing by claiming that Deutsche Bank failed to disclose certain information about the Digital Options and PICO Strategies, including information about the alleged likely results of the transactions and the discretion vested in Deutsche Bank in the digital option trades. *See* Compl. ¶ 229. However, as courts have routinely held, "[a]lthough a duty of good faith and fair dealing is implicit in every contract, the duty cannot be used to create independent obligations beyond those agreed upon and stated in the express language of the contract." *Sutton Assocs. v. Lexis-Nexis*, 761 N.Y.S.2d 800, 804 (N.Y. Sup. Ct. 2003) (internal citations omitted). This principle was reaffirmed in *Conwill v. Arthur Andersen LLP*, 820 N.Y.S.2d 842 (Table), 2006 WL 1703621 (N.Y. Sup. Ct. June 21, 2006), where, in dismissing a substantially similar breach of the duty of good faith and fair dealing claim in a case involving another tax strategy, the court held that "[a]side from the factually unsupported nature of these claims [of alleged failures to disclose

information regarding foreign exchange digital option contracts], in the absence of a fiduciary relationship, Sumitomo Bank cannot be imputed with a duty to make such disclosures, and the implied covenant of good faith and fair dealing applies only to the performance of existing contracts. It does not operate to create new contractual rights." *Id.* at *12 (citations omitted).

Although Plaintiffs point to various alleged failures to disclose, Plaintiffs fail to explain how any such purported omissions breached a specific term of a contract entered into with Deutsche Bank. As such, Plaintiffs' breach of contract claim is essentially nothing more than a restatement of their deficient fraud claim.[30] Because Plaintiffs do not – and cannot – allege that Deutsche Bank in any way breached any of the parties' contracts or deprived Plaintiffs of any rights to which they were entitled under the various contracts, Plaintiffs' claim for breach of the duty of good faith and fair dealing fails.[31]

Moreover, to the extent that Plaintiffs' breach of the duty of good faith and fair dealing claim is based upon an alleged "[f]ail[ure] to disclose that Defendants retained virtually unlimited discretion to determine whether the COBRA and PICO transactions would result in a gain," Compl. ¶ 229, the claim also fails. Deutsche Bank's discretion to select the spot rates is explicitly disclosed in the contracts themselves, *see* Confirmations, Exs. 1-2, and "a party that has acted in compliance with the rights expressly provided in the governing contract cannot be

---

[30]    *See Sutton Assocs.*, 761 N.Y.S.2d at 804 (dismissing breach of implied covenant of good faith claim where plaintiff alleged that defendants fraudulently induced plaintiff into entering a contract to pay "exorbitant subscription rates" but failed to identify any specific contractual provision breached by defendants and thus the claim was "duplicative of and merely recasts [the plaintiff's] unavailing fraud theory as a purportedly independent 'implied duty' claim").

[31]    *See BFS Morgan*, slip op. at 6 ("Because Plaintiffs have not alleged facts showing that Defendant[] Deutsche Bank impaired performance of the contract – that is, they did not execute the options transactions as provided under the agreements, or that any of Plaintiff[s'] enumerated rights under the FX contracts were impaired by defendants, their claims for breach of the implied covenants of good faith and fair dealing must fail."), Ex. 9; *see also Conwill*, 2006 WL 1703621, at *12; *Sterbenz v. Attina*, 205 F. Supp. 2d 65, 70 (E.D.N.Y. 2002).

held liable for breaching an implied covenant of good faith." *Sterbenz*, 205 F. Supp. 2d at 70.

Although "[w]here the contract contemplates the exercise of discretion, this pledge includes a

promise not to act arbitrarily or irrationally in exercising that discretion," *State St. Bank & Trust*

*Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 169 (2d Cir. 2004) (internal citation

omitted), Plaintiffs do not allege that Deutsche Bank acted arbitrarily or irrationally in selecting

the spot rates or that alternative spot rates should have been chosen.  Accordingly, Plaintiffs'

breach of the duty of good faith and fair dealing claim should also be dismissed for this reason.[32]

### H.    Plaintiffs' PICO-Based Negligence, Negligent Misrepresentation And Breach of Contract Claims Are Also Barred By Exculpatory Clauses

Because Plaintiffs represented in various documents executed in connection with

the PICO Strategy that Deutsche Bank would not be liable for losses, damages and other

liabilities arising from implementation of the PICO Strategy, Plaintiffs cannot assert claims for

negligence, negligent misrepresentation and breach of contract.

Contractual limitations of liability and damages are valid under New York law.[33]

In connection with the PICO Strategy, Plaintiffs executed agreements in which they expressly

---

[32]    *See King*, slip op. at 19 (applying New York law in case involving the Digital Options Strategy and finding, under substantially similar circumstances, that absent allegation that discretion was exercised in "an arbitrary or irrational manner, plaintiffs have not stated a claim for breach of the implied covenant of good faith and fair dealing"), Ex. 10; *Reda v. Eastman Kodak Co.*, 649 N.Y.S.2d 555, 558 (N.Y. App. Div. 1996) (no breach of the covenant of good faith and fair dealing because contract gave the defendants "complete discretion," and thus the defendants "did not act in bad faith by exercising [that discretion]").

[33]    *See, e.g., Banco Espirito Santo de Investimento, S.A. v. Citibank, N.A.*, No. 03 Civ. 1537 (MBM), 2003 WL 23018888, at *11 (S.D.N.Y. Dec. 22, 2003); *Official Comm. of Unsecured Creditors v. Donaldson, Lufkin & Jenrette Sec. Corp.*, No. 00 Civ. 8688 (WHP), 2002 WL 362794, at *15 (S.D.N.Y. Mar. 6, 2002); *see also DynCorp v. GTE Corp.*, 215 F. Supp. 2d 308, 317 (S.D.N.Y. 2002) ("'[a] limitation of liability provision in a contract represents the parties' agreement on the allocation of the risk of economic loss in the event that the contemplated transaction is not fully executed, which the courts should honor' if the limitation is not the result of unconscionable conduct or unequal bargaining power between the parties") (citation omitted).

agreed that Deutsche Bank would not be liable for any losses, liabilities, costs, expenses, or other amounts associated with their implementation of the PICO Strategy and that they would hold Deutsche Bank harmless from any liability arising out of or relating to the Strategy, but for those liabilities created by the gross negligence or willful misconduct by Deutsche Bank. Specifically, in their Representation Letters, Plaintiffs represented that:

> except as expressly provided in the documentation evidencing the Transactions, Deutsche Bank shall not be liable to you for any losses, liabilities, costs, expenses, or other amounts relating to the Strategies or the Transactions, including any losses, liabilities, costs, expenses, or other amounts arising out of the failure of the Strategies or any Transaction to achieve your legal, regulatory, business, investments, financial, accounting, tax or other objectives.

Representation Letters, Exs. 3-4. Plaintiffs further represented in the Custody Account Agreements that:

> [Deutsche Bank and its] nominees shall not be responsible for, and [Plaintiffs] shall hold [Deutsche Bank and its] nominees harmless and indemnify [Deutsche Bank and its] nominees against, against any Liabilities . . . in relation to or stemming from . . . causes other than [Deutsche Bank's] gross negligence or willful misconduct or breach of an undertaking of [Deutsche Bank's] expressly stated herein.
>
> In no event shall [Deutsche Bank] be liable for consequential, special or punitive damages.

Custody Account Agreements, Exs. 5-6. As a result of these express provisions, Plaintiffs' PICO-based negligence, negligent misrepresentation and breach of contract claims are barred by the exculpatory and hold harmless clauses and should therefore be dismissed.[34] *See Official*

---

[34] Plaintiffs' conclusory allegations regarding alleged willful or intentional misconduct, *see, e.g.*, Compl. ¶¶ 189, 193, 195, 230, are insufficient to defeat the exculpatory clauses. *See, e.g., Banco Espirito Santo*, 2003 WL 23018888, at *12 (dismissing claim, in part, because "[plaintiff's] sole conclusory allegation [of bad faith and reckless disregard] is insufficient as a matter of law" "to overcome the limited liability clause"); *see also Dyncorp*, 215 F. Supp. 2d at 317-18 (holding that even "an allegation that a breach of contract was willful rather than involuntary does not allow a court to disregard" exculpatory clause) (citation omitted).

*Comm. of Unsecured Creditors*, 2002 WL 362794, at *16; *DynCorp*, 215 F. Supp. 2d at 317-18.

## II.    THE MAJORITY OF PLAINTIFFS' CLAIMS ARE TIME-BARRED

In addition to the defects identified above, Plaintiffs' fraud, aiding and abetting fraud, conspiracy to defraud, negligent misrepresentation, breach of fiduciary duty, aiding and abetting breach of fiduciary duty and negligence claims are time-barred. Pursuant to the Illinois Borrowing Act,[35] where a cause of action arises in a jurisdiction outside of Illinois and both parties are non-residents of Illinois, a court must apply the limitations period of the jurisdiction in which the cause of action arose or that of Illinois, whichever is shorter. *See* 735 Ill. Comp. Stat. Ann. 5/13-210; *see also Willard v. Ingersoll-Rand Co.*, No. 03 C 4665, 2003 WL 22175582, at *5 (N.D. Ill. Sept. 19, 2003). In determining where the action arose, Illinois employs the "significant interest" test. *See Willard*, 2003 WL 22175582, at *5. This test considers where the injury occurred, where the conduct creating the injury occurred, where the parties are domiciled or have their place of business, and where the parties' relationship is centered. *See id.* Here, Plaintiffs' claims arose in Pennsylvania, where the Complaint alleges Plaintiffs resided at the time of the transactions, relied upon the advice related to the Strategies and suffered the alleged injuries from the Strategies. *See* Compl. ¶¶ 14-17, 107, 128; *In re VMS Ltd. P'ship Secs. Litig.*, No. 90 C 844, 1992 WL 249594, at *17 n.16 (N.D. Ill. Sept. 25, 1992) (noting that "[i]f the limitations period of the non-resident plaintiff's home state is shorter than Illinois', then the shorter limitations period controls"). Because Deutsche Bank is not a resident

---

[35]    As a general rule, a federal court exercising diversity jurisdiction applies the statute of limitations of the forum state, even when the action is brought under the law of another state. *See, e.g., U.S. Textiles, Inc. v. Anheuser-Busch Cos., Inc.*, 911 F.2d 1261, 1269 (7th Cir. 1990). Therefore, although New York substantive law governs Plaintiffs' common law claims, *see supra* Section I.A., the Court must look to Illinois law – including the Illinois Borrowing Act – for the choice of the applicable statute of limitations.

of Illinois, the Court must apply the shorter limitations period between Pennsylvania and Illinois.

Plaintiffs allege seven common law tort claims – breach of fiduciary duty, aiding and abetting breach of fiduciary duty, negligent misrepresentation, fraud, aiding and abetting fraud, conspiracy to defraud, and negligence – all of which are subject to a two year limitations period under Pennsylvania law.[36]  Because, under Illinois law, the statute of limitations for these claims is five years, *see* 735 Ill. Comp. Stat. Ann. 5/13-205, the shorter limitations period provided by Pennsylvania law applies, pursuant to the Illinois Borrowing Act.

Under Pennsylvania law, the statute of limitations begins to run "from the moment the right to bring an action arises, regardless of lack of knowledge, mistake or misunderstanding." *Hockenberry*, 2005 WL 1458768, at *4.[37]  The statute of limitations may be tolled under the "discovery rule," pursuant to which the statute of limitations does not begin to run until the injured party "discovers or *reasonably should discover* that he has been injured and his injury has been caused by another party's conduct." *Id.* (emphasis added; quotation omitted). However, "[e]very plaintiff has a duty to exercise 'reasonable diligence' in ascertaining the existence of an injury and its cause," *In re TMI*, 89 F.3d 1106, 1116 (3d Cir. 1996), and courts have explained that the discovery rule "cannot be applied so loosely as to nullify the purpose for which a statute of limitations exists," *Dalrymple v. Brown*, 701 A.2d 164, 167 (Pa. 1997)

---

[36]    *See* 42 Pa. Cons. Stat. Ann. § 5524(7); *see also Christopher v. First Mut. Corp.*, Nos. 05-0115, 05-1149, 2007 WL 2972561, at *6 (E.D. Pa. Oct. 9, 2007) (fraud and breach of fiduciary duty); *Hockenberry v. Diversified Ventures, Inc.*, No. 4:04CV1062, 2005 WL 1458768, at * 4 (M.D. Pa. Jun. 20, 2005) (fraud, breach of fiduciary duty and conspiracy); *AAMCO Transmissions, Inc. v. Harris*, 759 F. Supp. 1141, 1144 (E.D. Pa. 1991) (fraud and negligence).

[37]    *See also Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc.*, 468 A.2d 468, 471 (Pa. 1983) ("[T]he statute of limitations begins to run as soon as the right to institute and maintain a suit arises; lack of knowledge, mistake or misunderstanding do not toll the running of the statute of limitations; even though a person may not discover his injury until it is too late to take advantage of the appropriate remedy, this is incident to a law arbitrarily making legal remedies contingent on mere lapse of time.") (internal citations omitted).

(quotation omitted). As such, a plaintiff seeking to invoke the discovery rule bears the burden of establishing the inability to know of the injury despite the exercise of reasonable diligence. *See id*. Moreover, in making this determination, a court must invoke an objective standard: "The standard of reasonable diligence is objective, not subjective. It is not a standard of reasonable diligence unique to a particular plaintiff, but instead, a standard of reasonable diligence as applied to a 'reasonable person.'" *Id*. Here, accepting the allegations of the Complaint as true, the exercise of reasonable diligence would have led a reasonable person to discover his potential claims arising from the Digital Options Strategy by August 11, 2000 (at the latest) and from the PICO Strategy by September 25, 2002 (at the latest). Because Plaintiffs did not file the Complaint until February 4, 2008 – well over seven years after a reasonable person would have discovered the Digital Options claims and over five years after the PICO claims were discoverable – Plaintiffs' fraud, conspiracy, breach of fiduciary duty, aiding and abetting fraud and breach of fiduciary duty, negligent misrepresentation, and negligence claims are time-barred.

Plaintiffs' claims against Deutsche Bank are all predicated upon the basic allegation that Deutsche Bank, in concert with other alleged coconspirators, entered into a scheme to market to Plaintiffs the Tax Strategies, which in reality were allegedly "nothing more than illegitimate tax shelters." Compl. ¶¶ 1-12. Although the Complaint fails to state the exact date upon which Plaintiffs discovered the alleged conspiracy, Plaintiffs are charged with discovering information that should have been discovered through the exercise of reasonable diligence. *See Bishnu C. Borah, M.D., P.C. v. Monumental Life Ins. Co.*, No. 04-3617, 2007 WL 1030477, at *3, 7 (E.D. Pa. Apr. 7, 2007) (holding that the limitations period on plaintiffs' fraud-based claims began running as early as the date the IRS published a publicly available notice). Here, the exercise of reasonable diligence by Plaintiffs would have led them to discover a series

of IRS notices that the Complaint alleges made perfectly clear that the IRS believed that the Tax

Strategies Plaintiffs pursued were illegitimate. For example, on December 27, 1999, the IRS

issued Notice 1999-59, in which Plaintiffs allege the IRS "made it clear that tax shelters that

lacked economic substance – such as COBRA and PICO – were not properly allowable for

federal income tax purposes and would be challenged." Compl. ¶ 148. Eight months later, on

August 11, 2000, the IRS issued Notice 2000-44, which Plaintiffs allege "clearly established that

the IRS believed that the COBRA transaction was an illegal tax shelter." *Id*. ¶ 57.[38] In addition,

the exercise of reasonable diligence would have led Plaintiffs to discover a September 25, 2002

IRS announcement in which Plaintiffs allege the IRS "made perfectly clear and known that it

would challenge any tax return based on a PICO tax strategy." *Id*. ¶ 162; *see also id*. ¶ 161.[39]

IRS notices are precisely the sort of public documents that would permit a

reasonable person to discover the injury with the use of reasonable diligence and, hence, trigger

the running of the statute of limitations. *See Hutton v. Deutsche Bank AG*, No. 07-2041-JTM,

---

[38]     Plaintiffs also allege that "Notice 2000-44 described the transaction marketed by Defendants to the Leffs" and that Notice 2000-44 informed "accountants and tax attorneys" that, "based on long-established precedents, tax shelters, such as COBRA and PICO, were illegal." Compl. ¶¶ 151-52. As demonstrated below, *Plaintiffs* – as well as "accountants and tax attorneys" – are also charged with discovering this IRS Notice. Publication of the IRS notices in the Internal Revenue Bulletin – which is the primary mechanism used by the IRS to communicate revenue rulings and procedures to the public – is sufficient to charge Plaintiffs with notice of their contents. *See* 26 C.F.R. § 601.601(d)(2)(iii) (stating that "[t]he purpose of publishing revenue rulings and revenue procedures in the Internal Revenue Bulletin is to promote correct and uniform application of the tax laws . . . and *to assist taxpayers in attaining maximum voluntary compliance by informing Service personnel and the public of National Office interpretations of the internal revenue laws*, related statutes, treaties, regulations, and statements of Service procedures affecting the rights and duties of taxpayers") (emphasis added).

[39]     In fact, elsewhere in the Complaint Plaintiffs make clear that they were aware from the outset that the Strategies could be challenged by the IRS and that there were certain alleged "safeguards" against liability. *See, e.g.*, Compl. ¶ 87 (alleging that Jenkens & Gilchrist advised Plaintiffs that these "safeguards" included the fact that "it was highly unlikely that an IRS auditor would see through the complexity of the tax shelter" and that the opinion letters they received would prevent the imposition of penalties by the IRS).

2008 WL 795746, at *4 (D. Kan. Mar. 24, 2008) (dismissing claims as time-barred after finding that the statute of limitations began to run when the IRS published a disclosure initiative); *Klamath Strategic Inv. Fund v. United States*, 440 F. Supp. 2d 608, 625 (E.D. Tex. 2006) (stating that "taxpayers who engaged in conduct similar to Plaintiffs after August 2000 [the date IRS Notice 2000-44 was issued] were on notice of the Service's issue with these transactions"); *Bausch v. Philatelic Leasing Ltd.*, 728 F. Supp. 1201, 1208 (D. Md. 1989) (IRS notices stating that tax shelters were invalid were "sufficient to put the ordinary person on notice that an investigation into the possibility of fraud is necessary").[40]  Public announcements that Plaintiffs allege "made clear that the tax shelters that Defendants sold to the Leffs were not legitimate" and thus would be challenged by the IRS, Compl. ¶¶ 154, 162, are certainly sufficient to place a reasonable person exercising reasonable diligence on notice of a potential injury.  Therefore, even using the later of the two IRS notices that Plaintiffs allege address the Digital Options Strategy (Notice 2000-44), the purported wrongdoing and Plaintiffs' alleged injuries were reasonably ascertainable with the exercise of reasonable diligence such that the statute of limitations began to run on August 11, 2000, at the latest, for Plaintiffs' Digital Options tort claims and on September 25, 2002, at the latest, for Plaintiffs' PICO tort claims.  The statute of limitations for Plaintiffs' fraud, aiding and abetting fraud, conspiracy to defraud, negligent misrepresentation, breach of fiduciary duty, aiding and abetting breach of fiduciary duty and negligence claims therefore expired as of August 11, 2002 (for Plaintiffs' Digital Options claims)

---

[40]    In *Seippel v. Sidley Austin Brown & Wood LLP*, 399 F. Supp. 2d 283, 292 (S.D.N.Y. 2005), the Court held that Notice 1999-59 was not sufficient to put the plaintiffs in that case on notice to commence the limitations periods running.  However, in doing so, the court emphasized that the plaintiffs were reassured by the defendants that the Notice did not apply to their tax strategy.  *See id.* at 291.  Here, Plaintiffs make no such allegations of false assurances.  To the contrary, they allege that the Notice "clear[ly]" identified their tax strategy as flawed.  *See, e.g.*, Compl. ¶¶ 148, 154.

and September 25, 2004 (for Plaintiffs' PICO claims) – more than five years and three years,

respectively, before the Complaint was filed. Plaintiffs' common law tort claims are therefore

time-barred and should be dismissed for this reason, as well.

## III.    PLAINTIFFS' FRAUD-BASED CLAIMS DO NOT SATISFY RULE 9(b) OF THE FEDERAL RULES OF CIVIL PROCEDURE

Plaintiffs' fraud, aiding and abetting fraud, conspiracy to defraud, ICFA,

negligence and breach of fiduciary duty claims are all premised upon alleged fraudulent conduct.

As such, these claims are subject to the heightened pleading requirements of Rule 9(b) of the

Federal Rules of Civil Procedure.[41]  In order to satisfy this more rigorous pleading requirement,

the Seventh Circuit has held that a plaintiff must plead the "who, what, when, where, and how"

of the circumstances constituting the alleged fraud. *DiLeo v. Ernst & Young*, 901 F.2d 624, 627

(7th Cir. 1990). More specifically, "the rule requires the plaintiff to state the identity of the

person who made the misrepresentation, the time, place and content of the misrepresentation, and

the method by which the misrepresentation was communicated to the plaintiff." *Vicom, Inc. v.

Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994) (internal quotations omitted).

Here, the Complaint fails to allege with particularity that Deutsche Bank made

any misrepresentations concerning the Tax Strategies or otherwise participated in the allegedly

fraudulent conduct set forth in the Complaint. Instead, the Complaint is replete with conclusory

allegations (most on information and belief) regarding allegedly fraudulent conduct engaged in

by Deutsche Bank and its "cohorts" or "co-conspirators." *See, e.g.*, Compl. ¶¶ 3, 89, 207, 214.

For example, Plaintiffs' fraud-based claims rest on assertions that "Defendants and their co-

---

[41]    Rule 9(b) applies to all fraud-based state law claims. *See, e.g., Veal v. First Am. Savs. Bank v. Sec. Savs. & Loan Ass'n*, 914 F.2d 909, 913 (7th Cir. 1990) (breach of fiduciary duty and negligence); *High Rd. Holdings, LLC v. Ritchie Bros. Auctioneers (Am.)*, No. 1:07-cv-4590, 2008 WL 450470, at *3 (N.D. Ill. Feb. 15, 2008) (ICFA).

conspirators failed to disclose to the Leffs that . . . the IRS would deem [losses related to the PICO Strategy] as illegitimate tax shelter losses," *id*. ¶ 71, and that "Daugerdas and Defendants . . . failed to mention that . . . the [Digital Options Strategy] lacked economic substance entirely," *id*. ¶ 103.  These allegations do not identify a Deutsche Bank speaker or the time and place of the alleged fraudulent statement.  In addition, conclusory allegations such as these that lump defendants together (or, in this case, lump defendants together with non-parties) into the alleged fraud fail to satisfy Rule 9(b).  *See Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990).

At its most specific, the Complaint alleges that the advice provided included "specific, tax-related representations by Kevin Lynch and other employees of DB Alex. Brown's Chicago office during telephone conversations in or around November 1999."  Compl. ¶ 107.  Despite this attempt at particularity, this allegation still fails to satisfy the requirements of Rule 9(b).  "When a plaintiff complains of a false or misleading statement, he or she must identify the statement and set forth why it is false."  *Muehlbauer v. Gen. Motors Corp.*, 431 F. Supp. 2d 847, 860 (N.D. Ill. 2006).  Although Plaintiffs allege that Mr. Lynch made "tax-related representations," they fail to identify a specific statement or explain why any such statement was misleading.  Accordingly, Plaintiffs' fraud-based claims should also be dismissed for this reason.

Dated:  April 28, 2008
DEWEY & LeBOEUF LLP

By:___s/ Erin L. Ziaja_____
   Erin L. Ziaja                    Seth C. Farber (admitted *pro hac vice*)
Two Prudential Plaza, Suite 3700      DEWEY & LeBOEUF LLP
180 North Stetson Avenue           1301 Avenue of the Americas
Chicago, Illinois 60601             New York, New York 10019-6092
Telephone:  (312) 794-8000         Telephone:  (212) 259-8000
Facsimile:  (312) 794-8100          Facsimile:  (212) 259-6333

*Attorneys for Defendants Deutsche Bank AG and Deutsche Bank Securities Inc.*