UNITED STATES DISTRICT COURT
NORTHDERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LESLIE J. LEFF and RONNIE H. LEFF,<br><br>Plaintiffs,<br><br>-against-<br><br>DEUTSCHE BANK AG, and DEUTSCHE BANK SECURITIES, INC., D/B/A DEUTSCHE BANK ALEX. BROWN, a DIVISION of DEUTSCHE BANK SECURITIES, INC.;<br><br>Defendants. | Case No. 08C 0733 (RMD) (AK) |

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEUTSCHE BANK'S MOTION TO DISMISS THE COMPLAINT

David S. Pegno (*pro hac vice*)
Wendy Reisman (*pro hac vice*)
Dewey Pegno & Kramarsky LLP
220 East 42nd Street
New York, NY 10017

Patrick J. O'Brien
O'Brien & O'Brien, P.C.
55 W. Wacker Drive, Suite 900
Chicago, Illinois 60601
ARDC # 2081946

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES ................................................................................ iv

Preliminary Statement ...................................................................................... 1

Background ...................................................................................................... 3

      A.     COBRA ................................................................................. 3

            1.     The Development of COBRA ................................. 3

            2.     The Leffs Participate in COBRA ........................... 4

      B.     PICO ..................................................................................... 5

            1.     The Development of PICO .................................... 5

            2.     The Leffs Participate in PICO ............................... 6

      C.     IRS Notices Regarding Tax Shelters ..................................... 7

      D.     J&G's Admission of Fraudulent Conduct ............................... 7

Argument .......................................................................................................... 8

I.     DOCUMENTS ATTACHED AS EXHIBITS TO DEFENDANTS' MOTION SHOULD NOT BE CONSIDERED HERE ............................................... 8

      A.     The Documents Are Not Mentioned in the Complaint and Are Irrelevant to Plaintiffs' Claims ............................................... 9

      B.     The Leffs Are Not Parties to Many of the Agreements ......... 10

II.     ILLINOIS LAW GOVERNS PLAINTIFFS' CLAIMS ....................... 10

      A.     The Choice of Law Provisions Do Not Apply to Plaintiffs' Tort Claims ............................................................................... 10

      B.     Under Applicable Choice of Law Principles, Illinois Law Applies ..................... 12

III.     THE EXCULPATORY CLAUSES ARE INAPPLICABLE TO PLAINTIFFS' CLAIMS ............................................................... 13

*Page*

A.   The Form Documents Do Not Apply to the Leffs' Claims for Aiding
     and Abetting and Conspiracy .......................................................................13

B.   Exculpatory Clauses are Unenforceable Due to Defendants'
     Willful and Wanton Misconduct..................................................................13

C.   The Terms of the Exculpatory Clauses Do Not Apply to the Leffs'
     Claims ...........................................................................................................16

     1.   The Exculpatory Clauses are Limited to Specific Transactions ..............17

          a.   The Confirmation Forms.............................................................17

          b.   Custody Account Agreements .....................................................18

          c.   The PICO Form Letters ..............................................................19

D.   The Exculpatory Clauses are Void Because their Execution was Based
     on Misinformation ........................................................................................20

E.   The Limit of Liability Provisions Do Not Apply to the Specific Claims
     Alleged in the Complaint ..............................................................................21

IV.  PLAINTIFFS' CLAIMS ARE TIMELY ....................................................................22

A.   Illinois Statute of Limitations Law Governs Plaintiffs' Claims .............................22

B.   Deutsche Bank Uses the Wrong Accrual Date for the Statute of
     Limitations ....................................................................................................24

C.   Plaintiffs' Are Entitled To Further Tolling............................................................26

V.   PLAINTIFFS' CLAIMS ARE PROPERLY PLEADED ..............................................27

A.   The Standard to Be Applied on This Motion........................................................27

     1.   Rule 8(a)...................................................................................................27

     2.   Rule 9(b) ..................................................................................................28

B.   The Complaint States a Valid Claim for Breach of Fiduciary Duty.....................29

     1.   The Complaint Sets Forth a Claim for Aiding and Abetting
          Breach of Fiduciary Duty.........................................................................32

          a.   The Complaint alleges a breach of fiduciary duty ........................32

*Page*

          b.      The Complaint alleges Deutsche Bank's knowing
participation in the breach of fiduciary duty ................................... 33

C.      The Fraud Allegations in the Complaint Comply with Rule 9(b) ....................... 35

      1.      The Detailed Fraud Allegations in the Complaint .................................... 35

      2.      The Detailed Fraud Allegations in the Complaint, the Great
Majority of Which Deutsche Bank Ignores, Comply with Rule
9(b) ................................................................................................. 37

      3.      The Complaint States a Valid Claim for Conspiracy to Defraud ............. 39

      4.      The Complaint Sets Forth Valid Claims for Aiding and
Abetting Fraud .......................................................................... 40

D.      The Complaint States a Valid Claim for Negligent Misrepresentation
and Negligence ........................................................................................ 41

E.      The Complaint States a Valid Claim for the Illinois Consumer Fraud
Act ........................................................................................................... 42

F.      The Complaint States a Valid Claim for Breach of Contract .......................... 44

VI.      IN THE ALTERNATIVE, LEAVE TO REPLEAD SHOULD BE GRANTED ............. 45

Conclusion ............................................................................................................ 45

## **TABLE OF AUTHORITIES**

*Cases*                                                                                                   *Page(s)*

*ABF Capital Corp. v. McLauchlan*,
    167 F. Supp. 2d 1011 (N.D. Ill. 2001) ...............................................................................23

*Adams v. Intralinks, Inc.*,
    No. 03 Civ. 5384, 2004 WL 1627313 (S.D.N.Y. July 20, 2004) ......................................21

*Adcock v. Brakegate, Ltd.*,
    247 Ill. App. 3d 824 (Ill. App. Ct. 1993) ..........................................................................39

*Am. Heavy Trading, Inc.  v. Gen. Elec.  Co.,*
    No. 93 C 3609, 1996 WL 556742 (N.D. Ill. Sept. 27, 1996)............................................23

*Amakua Dev. LLC v. Warner*,
    411 F. Supp. 2d 941 (N.D. Ill. 2006) .................................................................................11

*American Pipe & Constr. Co. v. Utah*,
    414 U.S. 538 (1973)...........................................................................................................26

*In re Ameriquest Mortgage Co. Mortgage Lending Practices Litig.*,
    MDL No. 1715, No. 05-7097, 2008 WL 630883 (N.D. Ill. Mar. 5, 2008)...............8, 9, 10

*Appleton Elec. Co. v. Graves Truck Line, Inc.*,
    635 F.2d 603 (7th Cir. 1980) .............................................................................................26

*Atkins Nutritionals, Inc. v. Ernst & Young LLP*,
    754 N.Y.S.2d 320 (N.Y. App. Div. 2003) ........................................................................41

*Banc of Am. Sec. LLC v. Solow Bld. Co. II, L.L.C.*,
    847 N.Y.S.2d 49 (N.Y. App. Div. 2007) ..........................................................................15

*Banco Espirito Santo de Investimento, S.A. v. Citibank, N.A.*,
    No. 03 Civ. 1537, 2003 WL 23018888 (S.D.N.Y. Dec. 22, 2003),
    *aff'd*, 110 Fed. App. 191 (2d Cir. 2004) ..........................................................................15

*Bashton v. Ritko*,
    164 Ill. App. 3d 37 (Ill. App. Ct. 1987) ............................................................................24

*Bausch v. Philatelic Leasing, Ltd.*,
    728 F. Supp. 1201 (D. Md. 1989) ......................................................................................25

*Cases*                                                                                    *Page(s)*

*Bell Atlantic Corp. v. Twombly,*
    127 S. Ct. 1955 (2007)................................................................................28

*BFS Morgan Investors, LLC  v. Deutsche Bank, AG,*
    Court File No. 27CV05-11478, slip op. (D. Minn. Aug. 16, 2006)................................20

*Birnberg v. Milk Street Residential Assocs. Ltd. P'ship,*
    No. 02 C 0978, 2003 WL 151929 (N.D. Ill. Jan. 21, 2003) .................................10, 11, 43

*Blue Chip Emerald LLC v. Allied Partners Inc.,*
    750 N.Y.S.2d 291 (N.Y. App. Div. 2002) .......................................................20

*Borcherding v. Anderson Remodeling Co.,*
    253 Ill. App. 3d 655 (Ill. App. Ct. 1993) ........................................................43

*Brandow Chrysler Jeep Co. v. DataScan Techs.,*
    511 F. Supp. 2d 529 (E.D. Pa. 2007) ..............................................................31

*Bridge Prods., Inc. v. Quantum Chem. Corp.,*
    No. 88 C 10734, 1990 WL 19968 (N.D. Ill. Feb. 28, 1990).....................................23

*Brooks v. Lehman Bros., Inc.,*
    No. 5:05CV160, slip op. (E.D. Tex. Sept. 20, 2006)......................................17, 18

*Brown v. County of Will,*
    No. 02 C 3165, 2005 WL 1138642 (N.D. Ill. May 9, 2005) ..............................24

*Burdett v. Miller,*
    957 F.2d 1375 (7th Cir. 1992) ....................................................................31

*Carl v. Galuska,*
    785 F. Supp. 1283 (N.D. Ill. 1992) ..............................................................42

*Carter v. Signode Indus., Inc.,*
    694 F. Supp. 493 (N.D. Ill. 1988) ..............................................................28

*Cerabio LLC v. Wright Med. Tech., Inc.,*
    410 F.3d 981 (7th Cir. 2005) ....................................................................10

*Chaikin v. Fid. and Guar. Life Ins. Co.,*
    No. 02 C 6596, 2003 WL 21003715 (N.D. Ill. May 1, 2003) ............................41

*Chicago Printing Co. v. Heidelberg USA, Inc.,*
    No. 01 C 3251, 2001 WL 1134862 (N.D. Ill. Sept. 25, 2001).............................11

*Cases*                                                                                               *Page(s)*

*Citicorp Sav. of Ill. v. Rucker*,
  295 Ill. App. 3d 801 (Ill. App. Ct. 1998) .......................................................................45

*Cleft of the Rock Found. v. Wilson*,
  992 F. Supp. 574 (E.D.N.Y. 1998) ................................................................................39

*Colovos Co. v. Northwestern Mut. Life Ins. Co.*,
  No. 96 C 464, 1997 WL 399613 (N.D. Ill. July 14, 1997) ..............................................24

*Compania Sud-Americana de Vapores, S.A. v. IBJ Schroder Bank & Trust Co.*,
  785 F. Supp. 411 (S.D.N.Y. 1992)..................................................................................29

*Conwill v. Arthur Andersen LLP*,
  No. 602023/05, 2006 WL 1703621 (N.Y. Sup. Ct. June 21, 2006)...................................19

*Covington v. Mitsubishi Motor Mfg. of Am., Inc.*,
  154 Fed. Appx. 523 (7th Cir. 2005)................................................................................24

*De Kwiatkowksi v. Bear, Stearns & Co.*,
  306 F.3d 1293 (2d Cir. 2002)........................................................................................30

*Derdiarian v. Felix Contracting Corp.*,
  51 N.Y.2d 308 (1980) ...................................................................................................34

*DiLeo v, Ernst & Young*,
  901 F.2d 624 (7th Cir. 1990) ...................................................................................28, 35

*DIMON Inc. v. Folium, Inc.*,
  48 F. Supp. 2d 359 (S.D.N.Y. 1999)...............................................................................20

*Dugan v. Petty*,
  No. 92, 4486, 1993 WL 317260 (N.D. Ill. Aug. 8, 1993)................................................10

*Duggal v. St. Regis Hotel*,
  695 N.Y.S.2d 602 (N.Y. App. Div. 1999) ......................................................................34

*Dykema v. Skoumal*,
  No. 98 C 5309, 1999 WL 417360 (N.D. Ill. Jan. 10, 1999) ..............................................9

*DynCorp  v. GTE Corp.*,
  215 F. Supp. 2d 308 (S.D.N.Y. 2002).............................................................................16

*E & J Gallo Winery v. Morand Bros. Beverage Co.*,
  247 F. Supp. 2d 979 (N.D. Ill. 2003).........................................................................29, 33

*Cases*                                                                     *Page(s)*

*EEOC v. Concentra Health Servs., Inc.*,
    496 F.3d 773 (7th Cir. 2007) .................................................................8

*EEOC v. Mitsubishi Motor Mfg. of Am., Inc.*,
    990 F. Supp. 1059 (C.D. Ill.1998) .......................................................45

*Energy Servs. Air Conditioning & Heating Co., Inc. v. Nicor, Inc.*,
    No. 97 C 373, 1997 WL 790725 (N.D. Ill. Dec. 22, 1997) ...............38

*Extra Equipamentos E. Exportacao Ltda. v. Case Corp.*,
    No. 01C8591, 2005 WL 843297 (N.D. Ill. Jan. 20, 2005) ................12

*Extra Equipamentos E. Exportacao Ltda. v. Case Corp.*,
    No. 01 C 8591, 2005 WL 1651738 (N.D. Ill. July 1, 2005) ...............11

*Falkner v. Hinckley Parachute Ctr., Inc.*,
    178 Ill. App. 3d 597 (Ill. App. Ct. 1989) ..................................14, 22

*First Nat'l Bank of Boston v. Heuer*,
    702 F. Supp. 173 (N.D. Ill. 1988) .........................................................12

*Fischer Indus. Inc. v. Medivance Instruments, Ltd.*,
    No. 89 C 9082, 1992 WL 686866 (N.D. Ill. Aug. 31, 1992)...............38

*Gavin v. AT&T Corp.*,
    543 F. Supp. 2d 885 (N.D. Ill. 2008) ...................................................44

*Gehrett v. Chrysler Corp.*,
    379 Ill. App. 3d 162 (Ill. App. Ct. 2008) ............................................35

*Gelco Corp. v. Duval Motor Co.*,
    No. 02 C 5613, 2002 WL 31875537 (N.D. Ill. Dec. 26, 2002) ....38, 39

*Giraldo v. Rossberg*,
    747 N.Y.S.2d 78 (N.Y. App. Div. 2002) ..............................................34

*Golden v. Guar. Acceptance Capital Corp.*,
    807 F. Supp. 1161 (S.D.N.Y 1992)......................................................19

*Great N. Assocs., Inc. v. Cont'l Cas. Co.*,
    596 N.Y.S.2d 938 (N.Y. App. Div. 1993) ...........................................14

*Gross v. Sweet*,
    49 N.Y.2d 102 (1979) .............................................................. 15, 21

*Cases* | *Page(s)*

*Grumman Allied Indus., Inc. v. Rohr Indus., Inc.*,
748 F.2d 729 (2d Cir. 1984) ............................................................. 20-21

*Guar. Residential Lending, Inc. v. Int'l Mortgage Ctr., Inc.*,
305 F. Supp. 2d 846 (N.D. Ill. 2004) ....................................................28, 38

*Hefferman v. Bass*,
467 F.3d 596 (7th Cir. 2006) ......................................................27, 29, 32, 33

*Heller Bros. Bedding, Inc. v. Leggett & Platt, Inc.*,
No. 01 C 3409, 2001 WL 740514 (N.D. Ill. June 28, 2001) .....................................43, 44

*Hollinger Int'l, Inc. v. Hollinger Inc.*,
No. 04 C 0698, 2005 WL 589000 (N.D. Ill. Mar. 11, 2005) ............................................23

*Hot Wax, Inc. v. Grace-Lee Prods., Inc.*,
No. 97 C 6882, 1998 WL 664945 (N.D. Ill. Sept. 15, 1998)................................28, 37, 38

*Hughes v. BCI Int'l Holdings, Inc.*,
452 F. Supp. 2d 290 (S.D.N.Y. 2006)................................................................42

*Indep. Order of Foresters v. Donald, Lufkin & Jenrette, Inc.*,
157 F.3d 933 (2d Cir. 1998)................................................................31

*Interlease Aviation Investors II v. Vanguard Airlines, Inc.*,
254 F. Supp. 2d 1028 (N.D. Ill. 2003) ..............................................................41

*Ivanhoe Fin., Inc. v. Highland Banc Corp.*,
No. 03 C 7336, 2004 WL 546934 (N.D. Ill. Feb. 26, 2004)......................................12, 13

*Jairett v. First Montauk Sec. Corp.*,
153 F. Supp. 2d 562 (E.D. Pa. 2001) ............................................................42

*Johnson v. Bryco Arms*,
304 F. Supp. 2d 383 (E.D.N.Y. 2004) ............................................................34

*JP Morgan Chase Bank v. Winnick*,
406 F. Supp. 2d 247 (S.D.N.Y. 2005)............................................................34

*Kalisch-Jarcho, Inc. v. City of New York*,
58 N.Y.2d 377 (1983) ........................................................................13, 16

*Kaufman v. Cohen*,
760 N.Y.S.2d 157 (N.Y. App. Div. 2003) ................................................................23, 35

_Cases_                                                                                          _Page(s)_

*King v. Deutsche Bank AG*,
    No. 04-1029-HU, slip op. (D. Or. Sept. 12, 2005) ..........................................................20

*Kolbeck v. LIT Am., Inc.*,
    939 F. Supp. 240 (S.D.N.Y. 1996)................................................................................34

*Krasner v. New York State Elec. & Gas Corp.*,
    457 N.Y.S.2d 927 (N.Y. App. Div. 1982) ........................................................18

*Levenstein v. Salafsky*,
    164 F.3d 345 (7th Cir. 1998) ........................................................................8, 9

*M-101, LLC v. iN Demand LLC*,
    No. 06 Civ. 12938, 2007 WL 4258191 (S.D.N.Y. Dec. 3, 2007)....................................45

*Macek v. Schooner's Inc.*,
    224 Ill. App. 3d 103 (Ill. App. Ct. 1991) ............................................................16, 18, 22

*Merix Pharm.Corp. v. GlaxoSmithKline Consumer Healthcare, L.P.*,
    No. 5 C 1403, 2006 WL 1843370 (N.D. Ill. June 28, 2006) ....................................28, 37

*Mescall v. Burrus*,
    603 F.2d 1266 (7th Cir. 1979) ............................................................................8

*Midland Mgmt. Corp. v. Computer Consoles, Inc.*,
    No. 87 C 0971, 1992 WL 281354 (N.D. Ill. Oct. 8, 1992)................................11

*Miron v. BDO Seidman*,
    No. 04-968, slip op. (E.D. Pa. Aug. 14, 2006)........................................................17, 18

*Newman & Schwartz v. Asplundh Tree Expert Co.*,
    102 F.3d 660 (2d Cir. 1996)................................................................................8

*Nigerian Nat'l Petroleum Corp. v. Citibank, N.A.*,
    No. 98 Civ. 4960, 1999 WL 558141 (S.D.N.Y July 30, 1999) ........................................33

*Ninth Ave. Remedial Group v. Allis Chalmers Corp.*,
    974 F. Supp. 684 (N.D. Ind. 1997) ............................................................................9

*Novak & Co., Inc. v. N.Y. City Hous. Auth.*,
    480 N.Y.S.2d 403 (N.Y. Sup. Ct. 1984) ........................................................15

*In re Ocwen Loan Servicing, LLC Mortgage Servicing Litig.*,
    491 F.3d 638 (7th Cir. 2007) ........................................................................28

*Cases*                                                                          *Page(s)*

*Official Comm. of Unsecured Creditors v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
    No. 00 Civ. 8688, 2002 WL 362794 (S.D.N.Y. Mar. 6, 2002) .........................................31

*Olshansky v. Sutton*,
    No. 00 Civ. 3539, 2001 WL 99857 (S.D.N.Y. Feb. 6, 2001) .........................................29

*OSRecovery, Inc. v. One Groupe Int'l, Inc.*,
    354 F. Supp. 2d 357 (S.D.N.Y. 2005).........................................................................33, 34

*Petri v. Gatlin*,
    997 F. Supp. 956 (N.D. Ill. 1997) .............................................................................43

*Phillips v. Lincoln Nat'l Life Ins. Co.*,
    978 F.2d 302 (7th Cir. 1992) ...................................................................................17

*Polansky v. Anderson*,
    No. 04 C 3526, 2006 WL 2038603 (N.D. Ill. July 19, 2006) .........................................35

*Purizer Corp. v. Battelle Mem'l Inst.*,
    No. 01 C 6360, 2002 WL 22014 (N.D. Ill. Jan. 7, 2002) .................................................12

*River West Meeting Assocs., Inc. v. Avaya, Inc.*,
    No. 03 C 1023, 2004 WL 422683 (N.D. Ill Mar. 4, 2004) .................................................45

*Rochford v. Joyce*,
    755 F. Supp. 1423 (N.D. Ill. 1990) .............................................................................26

*Salomon Bros., Inc. v. Huitong Int'l Trust & Inv. Corp.*,
    No. 94 Civ 8559, 1996 WL 675795 (S.D.N.Y. Nov. 21, 1996) .................................30, 42

*Salzman Sign Co. v. Beck*,
    10 N.Y.2d 63 (1961) ...............................................................................................10

*Scheuer v. Rhodes*,
    416 U.S. 232 (1974)................................................................................................27

*Sears v. Likens*,
    912 F.2d 889 (7th Cir. 1990) ...................................................................................38

*Seippel v. Jenkens & Gilchrist, P.C.*,
    341 F. Supp. 2d 363 (S.D.N.Y. 2004).........................................................................19

*Seippel v. Sidley, Austin, Brown & Wood, LLP*,
    399 F. Supp. 2d 283 (S.D.N.Y. 2005).....................................................................24, 25

x

| *Cases* | *Page(s)* |
|---|---|

*Sergeants Benevolent Ass'n Annuity Fund v. Renck*,
  796 N.Y.S.2d 77 (N.Y. App. Div. 2005) ........................................................31

*Simpson v. Byron Dragway, Inc.*,
  210 Ill. App. 3d 639 (Ill. App. Ct. 1991) ..................................................21, 22

*Smith v. Wagner*,
  403 Pa. Super. 316 (Pa. Super. Ct. 1991) ....................................................39

*Solow v. Conseco, Inc.*,
  No. 06-CV-5988, 2008 U.S. Dist. LEXIS 9234 (S.D.N.Y. Jan. 11, 2008) ................15, 16

*Solutia Inc. v. FMC Corp.*,
  456 F. Supp. 2d 429 (S.D.N.Y. 2006)............................................................31

*Sommer v. Fed. Signal Corp.*,
  79 N.Y.2d 540 (1992) ............................................................................15

*Specialty Moving Sys., Inc. v. Safeguard Computer Servs., Inc.*,
  No. 01 C 5816, 2002 WL 31178089 (N.D. Ill. Sept. 30, 2002).........................44

*S.R. Bastien Corp. v. Riso, Inc.*,
  No. 96 C 6393, 1997 WL 102535 (N.D. Ill. Mar. 5, 1997) ........................37-38

*Steinbrecher v. Oswego Police Officer Dickey*,
  138 F. Supp. 2d 1103 (N.D. Ill. 2001) ..........................................................9

*Suez Equity Investors, L.P. v. Toronto-Dominon Bank*,
  250 F.3d 87 (2d Cir. 2001)................................................................16, 29, 42

*Superior Technical Res., Inc. v. Lawson Software, Inc.*,
  No. 2003-10104, 2007 WL 4291575 (N.Y. Sup. Ct. Dec. 7, 2007) .................................20

*Swartz v. Deutsche Bank*,
  No. C03-1252, 2008 WL 1968948 (W.D. Wash., May 2, 2008).........................17, 32, 40

*Swartz v. KPMG, LLP*,
  476 F.3d 756 (9th Cir. 2007) ....................................................................17

*Swierkiewicz v. Sorema N.A.*,
  534 U.S. 506 (2002)............................................................................27

*Thorpe v. Levenfeld*,
  No. 04 C 3040, 2005 WL 2420373 (N.D. Ill. Sept. 29, 2005).........................32

*Cases*                                                                                    *Page(s)*

*Time Warner Sports Merch. v. Chicagoland Processing Corp.*,
    974 F. Supp. 1163 (N.D. Ill. 1997) ...................................................................14

*Tomera v. Galt*,
    511 F.2d 504 (7th Cir. 1975) .......................................................................28

*Tuchowski v. Rochford*,
    368 Ill. App. 3d 441 (Ill. App. Ct. 2006) ...................................................... 32-33

*United Labs., Inc. v. Savaiano*,
    No. 06 C 1442, 2007 WL 4162808 (N.D. Ill. Nov. 19, 2007).........................................42

*United Safety of Am., Inc. v. Consol. Edison Co. of New York*,
    623 N.Y.S.2d 591 (N.Y. App. Div. 1995) .......................................................41

*U.S. ex rel. Kennedy v. Aventis Pharm., Inc.*,
    512 F. Supp. 2d 1158 (N.D. Ill. 2007) ............................................................29

*Vanderlinde Elec. Corp.  v. City of Rochester*,
    388 N.Y.S.2d 388 (N.Y. App. Div. 1976) .......................................................16

*Walker v. Bankers Life and Cas. Co.*,
    No. 06 C 6906, 2007 WL 967888 (N.D. Ill. Mar. 28, 2007) .....................................11, 12

*Wedbush Morgan Sec., Inc. v. Robert W. Baird & Co.*,
    320 F. Supp. 2d 123 (S.D.N.Y 2004)............................................................35

*Wheaten v. Mathews Holmquist & Assocs., Inc.*,
    No. 94 C 1134, 1996 WL 494245 (N.D. Ill. Aug. 28, 1996)........................................41

*Wight v. BankAmerica Corp.*,
    219 F.3d 79 (2d Cir. 2000)...................................................................32, 34

*Xpedior Creditor Trust v. Credit Suisse First Boston (USA) Inc.*,
    341 F. Supp. 2d 258 (S.D.N.Y. 2004)............................................................44

*Zimmerman v. Northfield Real Estate, Inc.*,
    156 Ill. App. 3d 154 (Ill. App. Ct. 1986) .......................................................14

*Zorba v. Advanced Telecomms. Network, Inc.*,
    No. 96 C 7443, 1997 WL 222932 (N.D. Ill. Apr. 30, 1997)........................................43

*Zurad v. Lehman Bros. Kuhn Loeb Inc.*,
    757 F.2d 129 (7th Cir. 1985) ...................................................................41

| *Cases* | *Page(s)* |
|---|---|

*Zurich Capital Mkts., Inc. v. Coglianese,*
No. 03 C 7960, 2005 WL 1950653 (N.D. Ill. Aug. 12, 2005)..........................................31


*Statutes & Other Authorities*

Wright & Miller, FEDERAL PRACTICE & PROCEDURE § 1215 ..........................................................27

Federal Rule of Civil Procedure Rule 8(a) ...............................................................................27, 28

Federal Rule of Civil Procedure 9(b)........................................................................................ *passim*

Federal Rule of Civil Procedure 12(b)(6) ..................................................................17, 24, 27, 29

Federal Rule of Civil Procedure 15(a) ...........................................................................................45

N.Y. CPLR § 213..............................................................................................................................23

Plaintiffs Leslie J. Leff and Ronnie H. Leff respectfully submit this memorandum of law in opposition to the motion of Defendants (collectively, "Deutsche Bank") to dismiss the complaint.

## Preliminary Statement

This case is about a massive, sophisticated fraud perpetrated by Deutsche Bank and others through the design, marketing and implementation of fraudulent tax shelters, from which they earned enormous fees. The victims of the fraud included many individual taxpayers who were connived into taking part in the shelters by assurances from multiple, respected financial institutions, including Deutsche Bank, that the transactions involved in the shelters were legitimate and the shelters themselves were lawful. In fact, they were neither.

As a result of a government investigation into the fraud, a major law firm has shuttered its doors, and a major accounting firm paid a record $456 million fine and nearly crumbled. Meanwhile, the taxpayers and their families have been saddled with enormous losses in the form of IRS penalties, interest, professional fees, and other damages. The Leffs are among these victims.

Deutsche Bank suggests that it was a bystander to the fraud, merely executing securities transactions that were part of the shelters. The truth is far different. As set forth in the Complaint, Deutsche Bank was an active, avid participant in the development, marketing and execution of the scheme, with full knowledge of its fraudulent nature, all the while reaping enormous fees. The Leffs bring this action to recover the millions of dollars in losses that they suffered as a consequence of Deutsche Bank's active participation in the fraudulent scheme.

Deutsche Bank's effort to dismiss this case at the pleading stage must fail. At the outset, Deutsche Bank relies on the wrong law. It asserts New York law applies, based on choice of law provisions in various agreements. However, the law is clear that those provisions do not apply to the Leffs' tort claims, and instead Illinois law applies. Next, Deutsche Bank relies heavily on a number of documents containing exculpatory clauses that supposedly relieve it from any liability for its

willful misconduct.  Those documents have no place on this motion, which is addressed solely to the sufficiency of the Complaint, which nowhere even mentions them.  Moreover, Deutsche Bank ignores the law that such clauses cannot shield a party from such serious, intentional misconduct.  And, though the Leffs sue in their individual capacity, Deutsche Bank relies on such documents executed on behalf of corporate entities.  Finally, construing the clauses narrowly, as the law requires, the exculpatory provisions do not apply to the conduct alleged in the Complaint.

Deutsche Bank's statute of limitations argument must also be rejected.  Again, it relies on the wrong law; Illinois law applies since the scheme was originated and in large part executed in Illinois.  Moreover, in arguing that the Leffs were put on inquiry notice of the fraud years ago, Deutsche Bank relies on IRS notices regarding tax shelters that are described in the Complaint, while ignoring that its argument on this score has been flatly—and correctly—rejected in another case in which it was a party.  Finally, and remarkably, Deutsche Bank ignores the tolling to which the Leffs are entitled because of pending class actions and tolling agreements into which the parties entered.

Finally, Deutsche Bank's contentions that the Leffs' claims are not properly pleaded must be rejected.  Its assertion that the fiduciary duty claims fail because the Complaint merely describes an "arms-length relationship" flies in the face of the allegations showing that Deutsche Bank expressly sought to have the Leffs rely on its skill, knowledge, and expertise in the supposedly complex securities trading strategies on which the tax shelters were based.  Its argument that the fraud claims do not satisfy Rule 9(b) is itself almost entirely conclusory and ignores the allegations and the law regarding Rule 9(b), both of which show that the claims are sufficient.  And its argument that the aiding and abetting and conspiracy claims must be dismissed ignores the detailed allegations regarding the underlying fraud, and Deutsche Bank's extensive participation in it.

Accordingly, Deutsche Bank's motion should be denied, and the Leffs should be permitted to proceed with their claims for the substantial injury Deutsche Bank has caused them.

**Background**

A.    <u>**COBRA**</u>

     *1.    **The Development of COBRA***

In the late 1990s, Deutsche Bank participated in a "plan to market digital options contracts as part of tax shelters." (¶ 38).[1] The participants included David Parse and Craig Brubaker and others from Deutsche Bank, Paul Daugerdas, a partner at Jenkens & Gilchrist ("J&G") and Robert Coplan from Ernst & Young. (*Id.*) Daugerdas had previously marketed other tax shelters, and had prior relationships with Parse and Brubaker. (¶¶ 40-41). Together, they developed "Currency Options Brings Rewards Alternative", or "COBRA". (¶¶ 26, 43-44).

COBRA was a complex series of transactions involving the purchase and sale of two nearly identical, and therefore offsetting, foreign options. (¶¶ 45-52). Clients were advised that they could have either profit or a loss, but in the event of a loss the tax benefits would far exceed any loss and fees paid. (¶ 103). They were further advised that both the transactions and any tax benefit were legitimate. (¶ 3, 87, 103). However, due to a number of factors, including the offsetting trades and Deutsche Bank's unilateral ability to determine the "spot rate" that would, in turn, determine whether they were profitable, there was virtually no chance of a profit. (¶ 46). Because the transactions had no real economic or business purpose (a fact concealed from the Leffs), Deutsche Bank and the other participants were well aware that COBRA would not withstand IRS scrutiny. (¶¶ 3-4, 26, 28, 79, 97, 104).

Clients were told that if there was an IRS audit, they would be protected against accuracy-related penalties by both "the fundamental legitimacy of the transactions" as well as the "independent" opinion from J&G. (¶ 87). However, neither J&G nor Deutsche Bank disclosed that because J&G was a promoter of the shelter, the opinion letter was worthless. (¶ 11).

---

[1] Citations to paragraph numbers ("¶___") are to paragraphs in the Complaint.

The Complaint further details Deutsche Bank's involvement in the development of COBRA. Deutsche Bank was given the critical role of designing (¶ 53):

> the foreign options contracts, including the "European" style of the option, the digital aspect of the option, the use of foreign currency in general and the choice of the specific foreign currency to use in each transaction, the direction of the "bets," the spot rate, the spread between the long and short positions, and the use of a corporation as the entity purchasing the contract from Defendants.

The marketing for COBRA "focused on leveraging trust and confidence in a major law firm, an international bank," and a major accounting firm. (¶ 85). Deutsche Bank and the other participants took in massive fees, calculated as a percentage of the anticipated tax benefit. (¶ 54-55).

### 2. *The Leffs Participate in COBRA*

In or around November 1999, the Leffs met with Paul Daugerdas and Donna Guerin from J&G to discuss engaging in COBRA. (¶ 101). In the prior year, Daugerdas had persuaded the Leffs to enter into a tax shelter involving treasury securities. (¶ 98). Daugerdas explained COBRA to the Leffs. (¶ 103). Daugerdas and DB Alex. Brown employees advised the Leffs that "there was a reasonable chance of realizing a pre-tax gain upon the expiration of the options, although a pre-tax loss might also occur" and "that the tax benefits of the transactions far outweighed any losses that might be incurred". (*Id.*). The Complaint details that "the Leffs relied on Defendants' advice (including specific, tax-related representations by Kevin Lynch and other employees of DB Alex. Brown's Chicago office during telephone conversations in or around November 1999)". (¶ 107).

Daugerdas, Lynch and other DB employees failed to disclose many critical facts during these discussions, including that "the tax shelter lacked economic substance entirely" because, among other reasons, Deutsche Bank "had the power to control the outcome of the" offsetting options transactions "by picking the particular spot rate" that was used. (¶¶ 104-05). Nor were the Leffs told, as Deutsche Bank was aware, that the J&G "opinion letter" was useless. (¶ 104).

Based on this advice, the Leffs engaged in a series of transactions, setting up limited liability companies and partnerships, and engaged in offsetting options transactions in accounts opened with DB Alex. Brown in Chicago.  As a result, each of the Leffs declared losses of $15 million on their income tax returns for 1999.  (¶¶ 113, 117).

B.    **PICO**

1.    *The Development of PICO*

In response to an IRS notice advising tax professionals that COBRA would not withstand IRS scrutiny, J&G and Deutsche Bank created PICO ("Personal Investment Company") as an outgrowth and refinement of COBRA.  (¶¶ 57-59).  Deutsche Bank worked with Bricolage Capital LLC ("Bricolage") and its affiliates and principals, including Andrew D. Beer, to develop this strategy.  (¶ 59).

"Though the PICO transaction was similar to the COBRA transaction . . . the particulars of the transactions were different."  (¶ 63).  As with COBRA, the client engaged in a series of complex corporate transactions and offsetting foreign currency trades, this time taking advantage of potentially advantageous tax treatment for shareholders of subchapter S corporations resulting when one shareholder transfers his or her shareholder interest. (¶ 63).  The result was that the client took all of the losses resulting from the foreign currency trading, without realizing the offsetting gains. (¶¶ 63-69).  "Similar to the COBRA transaction, any profitability in the trading was artificial" and without economic substance, and thus subject to challenge by the IRS.  (¶ 72).

The Complaint describes Deutsche Bank's central involvement in PICO (¶ 90):

Bricolage and Defendants also made similar presentations regarding the PICO transaction as those made regarding COBRA. . . . Defendants' representatives were active participants in these presentations, including those to the Leffs. . . . Defendants' enormous expertise in the supposedly sophisticated trading strategy involved in PICO and its status as a large, respected international bank were major parts of the sales effort for PICO.

Another law firm, Proskauer Rose LLP, was recruited to provide an "entirely worthless" legal opinion. (¶ 92). The Complaint describes that "Deutsche Bank obtained opinions from prominent New York law firms that discredited" PICO. (¶¶ 96).

### 2. *The Leffs Participate in PICO*

The Complaint describes a meeting with the Leffs and Beer at the Leffs' place of business on April 18, 2000. (¶ 125). Beer, aware that the Leffs had engaged in COBRA and "Defendants had been a central participant in executing that strategy", emphasized Deutsche Bank's importance in PICO: "As part of his 'sales pitch' to the Leffs, Beer explained that Defendants' involvement was critically important to the PICO strategy he was proposing, in light of their knowledge and expertise in execute[ing] the proposed trading strategy. Moreover, Beer emphasized Defendants' status as one of the largest banks in the world to enhance the credibility of his proposed strategy." (¶ 126).

Deutsche Bank made its own, in-person sales pitches to the Leffs in multiple meetings, both at its offices in New York and at the Leffs' place of business. (¶ 127). "Defendants made presentations explaining PICO and Defendants' role in the transaction, which was to execute what was represented to be a very sophisticated trading strategy" (¶¶ 127-29):

> During the presentations, Deutsche Bank representatives were the ones who described the execution of the trading strategy itself. Defendants represented that they were continually refining and improving their trading strategies, and that PICO was the result of those efforts, as well as Deutsche Bank's long experience in such trading, as to which it had world-class expertise.
> . . . .
> Defendants and Beer continually emphasized Defendants' expertise, and its role as one of the premier financial institutions in the world to convince the Leffs that the PICO strategy was a legitimate trading strategy that could result in a substantial, actual gain, with very little risk, as well as providing substantial tax benefits.

Deutsche Bank sought to exploit its prior relationship with the Leffs on COBRA, and to portray PICO as a continuation of the parties' relationship. Lynch, the Deutsche Bank employee in Chicago who, as set forth above, had dealt with the Leffs on COBRA, reached out to the Leffs to

assure them that Deutsche Bank "would continue to provide the same world-class financial service in connection with PICO that were provided in connection with COBRA." (¶ 128).

"As a result of these efforts, the Leffs agreed to engage in the PICO strategy." (¶ 130). As with COBRA, the Leffs engaged in a series of complex and convoluted steps setting up various entities, and engaging in "straddle transactions in foreign currency." (*See* ¶¶ 131-39). Proskauer provided an "opinion letter", which was, as Deutsche Bank knew, worthless. (¶ 142-47). As a result of engaging in the PICO transactions, each of the Leffs declared losses of $10,200,846 on their income tax returns for 2000. (¶ 140).

### C.    <u>IRS Notices Regarding Tax Shelters</u>

The Complaint relates a series of IRS Notices and announcements from 1999 through 2002 that showed Defendants and other financial professionals the IRS would not regard COBRA and PICO as legitimate tax shelters. (¶¶ 148-63). Deutsche Bank and the other promoters of COBRA and PICO did not advise the Leffs of the increased IRS scrutiny, and the IRS Notices were not taken into account in either the J&G or Proskauer "opinions". (¶¶ 150, 154, 156, 163). To the contrary, on August 21, 2002, Daugerdas called a representative of the Leffs and advised that despite the "increased IRS scrutiny . . . there was nothing to worry about". (¶ 160). Also, the shelter promoters advised the Leffs against taking part in a tax amnesty program that would have saved them substantial interest and penalties. (¶¶ 168).

The IRS notified the Leffs that their tax returns were selected for audit, and after retaining "new tax and legal advisers", the Leffs first discovered the scheme. (¶ 171).

### D.    <u>J&G's Admission of Fraudulent Conduct</u>

In a March 29, 2007 press release from the United States Attorney for the Southern District of New York, J&G admitted: "We believe certain Jenkens attorneys developed and marketed fraudulent tax shelters, with fraudulent tax opinions. . . . The firm's tax shelter practice was

spearheaded by the tax practitioners in Jenkens's Chicago office who are no longer with the firm."

(¶ 21).  The latter is a clear reference to Daugerdas and Guerin.  As a result of the scandal arising

from its fraudulent tax practice, J&G has closed its doors.  (¶ 20).

**Argument**

I.      **DOCUMENTS ATTACHED AS EXHIBITS TO DEFENDANTS' MOTION
        SHOULD NOT BE CONSIDERED HERE**

Deutsche Bank's reliance on certain form documents the Leffs signed (collectively, the

"Form Documents"), which apparently were among many documents executed in connection with

COBRA and PICO and which are not mentioned in the Complaint, must be rejected.

On a motion to dismiss, courts generally look only to the four corners of the complaint and

not to extrinsic documents.  *See Mescall v. Burrus*, 603 F.2d 1266, 1269 (7th Cir. 1979) (rejecting

findings of fact made beyond the complaint); *Newman & Schwartz v. Asplundh Tree Expert Co*., 102

F.3d 660, 662-63 (2d Cir. 1996) (reversing dismissal where district court relied on material not in

pleadings and failed to read complaint in the light most favorable to plaintiff).  Deutsche Bank

asserts in conclusory fashion that it can rely on the Form Documents.  (DB Mem. 6 n.3).

Deutsche Bank, however, is wrong.  A court may consider documents outside the pleadings

on a motion to dismiss in the limited case where the documents are "referred to in the plaintiff's

complaint *and* are central to [its] claim."  *In re Ameriquest Mortgage Co. Mortgage Lending

Practices Litig.*, MDL No. 1715, No. 05-7097, 2008 WL 630883, at *3 (N.D. Ill. Mar. 5, 2008)

(emphasis added) (internal citations omitted).  This is "a narrow exception aimed at cases

interpreting, for example, a contract."  *Levenstein v. Salafsky*, 164 F.3d 345, at 347 (7th Cir. 1998);

*see also EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 778 (7th Cir. 2007).  Deutsche Bank

cannot meet this narrow exception here.

### A.    The Documents Are Not Mentioned in the Complaint and Are Irrelevant to Plaintiffs' Claims

The Form Documents should not be considered on this motion because they are not mentioned in the Complaint and are entirely irrelevant to it; the Leffs do not rely on the Form Documents for any of their claims or allegations.  *See Levenstein*, 164 F.3d at 347; *Ameriquest*, 2008 WL 630883, at *3; *Dykema v. Skoumal*, No. 98 C 5309, 1999 WL 417360, at *2-3 (N.D. Ill. June 10, 1999) (refusing to consider document because it "does not merely amplify the facts . . . . [but] clearly contradicts the facts as alleged" and it is neither referred to nor central to claim).  Indeed, the Leffs' claim could have been brought absent these documents.  *See Ninth Ave. Remedial Group v. Allis Chalmers Corp.*, 974 F. Supp. 684, 687 (N.D. Ind. 1997) (document not central where it was "not necessary to state a claim against the Defendants upon which relief can be granted").  The portions of the Complaint that Deutsche Bank cites (DB Mem. 6 n.3) do not even mention the Form Documents—or any other agreements.  *See Levenstein*, 164 F.3d at 347 (refusing to consider documents because arguments regarding their centrality were "perfunctory"); *Steinbrecher v. Oswego Police Officer Dickey*, 138 F. Supp. 2d 1103, 1107 (N.D. Ill. 2001) (refusing to consider documents not mentioned in complaint).

On point here is *Ameriquest*, where a third-party defendant moved to dismiss contract and negligence claims arising out of the third-party defendants' alleged representations based on disclaimers in the parties' agreement.  2008 WL 630883, at *2.  The court rejected that argument because the agreement relied on was "not specifically referred to, identified or quoted in the Third-Party Complaint."  *Id.* at *3.

Indeed, the *only* claim that relies on contracts is that for breach of contract—and, as Deutsche Bank concedes (DB Mem. 19), even that claim is not based on the Form Documents. Instead, as described below (Section V.F.), the Leffs allege that there were multiple agreements with Defendants and their coconspirators that "taken together" constitute an enforceable contract.  (¶

226).  *See Ameriquest*, 2008 WL 630883, at *3 (recognizing that complaint alleged multiple

contracts and refusing to assume defendant's attached agreement or its terms was controlling).

Thus, because the Form Documents are neither referenced in nor central to the Complaint,

none of their provisions govern this action or this motion.

### B.       The Leffs Are Not Parties to Many of the Agreements

At least four of the eight Form Documents[2] were signed by the Leffs as representatives of

entities and *not in their individual capacity*.  If these documents have any effect, therefore, it is only

on the entities and not the Leffs individually.  *See Salzman Sign Co. v. Beck,* 10 N.Y.2d 63, 67

(1961) (officer had no personal liability under contract he signed because he "is not liable for his

corporation's engagements unless he signs individually"); *Dugan v. Petty*, No. 92 C 4486, 1993 WL

317260 at *2-3 (N.D. Ill. Aug. 8, 1993) (no individual liability if defendant can establish that

document was signed on behalf of corporation).

## II.      ILLINOIS LAW GOVERNS PLAINTIFFS' CLAIMS

Even if the Form Documents did apply on this motion, the choice of law provisions in the

Form Documents do not control here.

### A.       The Choice of Law Provisions Do Not Apply to Plaintiffs' Tort Claims

A court must determine whether the parties intended a choice of law clause to govern tort

claims.  *Cerabio LLC v. Wright Med. Tech., Inc*., 410 F.3d 981, 987 (7th Cir. 2005).  Here, by their

express terms, the choice of law provisions only apply to disputes arising from "this agreement."[3]

Generally, such provisions do not cover tort claims.  *See e.g., Birnberg v. Milk Street Residential*

*Assocs. Ltd. P'ship*, No. 02 C 0978, 2003 WL 151929, at *13-14 (N.D. Ill. Jan. 21, 2003) (language

---

[2] As Deutsche Bank acknowledges (DB Mem. 2 n.2) the Leffs signed the confirmations for COBRA on behalf of entities.  Moreover, the Custody Account Agreements state that "Bankers Trust Private Banking . . . is hereby authorized to open and maintain a Custody Account . . . in the name(s) of: L. Leff, Inc." (DB Mem. Ex. 5) and "R. Leff, Inc." (DB Mem. Ex. 6).  Thus, it is only the Letter Agreements (DB Mem. Exs. 3-4) and the BT Alex. Brown Account Agreements (DB Mem. Exs. 6-7) that the Leffs even arguably signed on their own behalf.

[3] The choice of law provisions appear in Exhibits 1, 2, 5, 6, 7, and 8 to Defendants' motion.

that "agreement shall be construed and enforced in accordance with the law of the State" did not apply to tort disputes); *Midland Mgmt. Corp. v. Computer Consoles, Inc.*, No. 87 C 0971, 1992 WL 281354, at *2 (N.D. Ill. Oct. 8, 1992) (choice of law clause "not broad enough to create agreement that New York law would govern any fraud claims.").

Deutsche Bank relies on a narrow exception to this rule that applies if the tort claims are "dependent" on the agreement, arguing that the tort claims are dependent on the contracts because "the fraud and negligent misrepresentation claims refer to the digital option trades reflected in the Confirmations". (DB Mem. 6). However, tort claims are not "dependent" on an agreement where they do not turn on the construction or interpretation of the agreement and are separate from it. *See Birnberg*, 2003 WL 151929, at *14 (tort claims premised on misrepresentations and omissions "while related to the Agreement, are not based upon the interpretation of the Agreement and could exist without the Agreement."); *Walker v. Bankers Life and Cas. Co.*, No. 06 C 6906, 2007 WL 967888 (N.D. Ill. Mar. 28, 2007) (same). That is the case here—nothing in the claims requires interpreting the Form Documents, and the claims could readily exist if the Form Documents did not.

Deutsche Bank's contention that the parties' relationship stems from the documents (DB Mem. 6) has no basis in the Complaint, which has nothing to do with these documents. *Supra* Section I.A. Moreover, the Leffs' claims are based primarily on events occurring *prior* to the execution of documents. *See Extra Equipamentos E Exportacao Ltda. v. Case Corp.*, No. 01 C 8591, 2005 WL 1651738, at *2-3 (N.D. Ill. July 1, 2005) (claims premised on conduct prior to execution of agreement, thus no dependency); *Chicago Printing Co. v. Heidelberg USA, Inc*., No. 01 C 3251, 2001 WL 1134862, at *3 (N.D. Ill. Sept. 25, 2001) (provision did not apply to misrepresentation claims that "stem from events that occurred prior to its execution").[4] Here, the Leffs' claims primarily arise from the misrepresentations when they were solicited into engaging in

---

[4] Deutsche Bank cites *Amakua Dev. LLC v. Warner*, 411 F. Supp. 2d 941 (N.D. Ill. 2006), to support its argument. (DB Mem. 6). However, in that case the plaintiff had alleged fraud *in* the actual agreement. *Id.* at 956.

the tax shelters.  Under Deutsche Bank's theory, a choice of law provision would always govern tort

claims as long as a contract was created at some point between parties that governed some part of

their relationship—a result clearly at odds with choice of law principles.

### B.    Under Applicable Choice of Law Principles, Illinois Law Applies

Illinois uses the "most significant relationship" test to determine applicable law.  That test

considers "(1) the place of the injury; (2) the place where the conduct causing the injury occurred;

(3) the domicile of the parties; and (4) the place where the relationship of the parties is centered."

*Walker*, 2007 WL 967888, at *5.

Deutsche Bank incorrectly argues in a footnote that Pennsylvania law applies under this

test because it is where the Leffs reside.  (DB Mem. 7 n.5).  Deutsche Bank's analysis is, however,

far too simplistic.  The "most significant relationship" analysis weighs the four general factors, and

certain factors receive greater weight depending on the cause of action at issue.

Fraud or misrepresentation claims require emphasis on the state where the conduct causing

the injury occurred—not where plaintiff resided or was injured.  *See First Nat'l Bank of Boston v.*

*Heuer*, 702 F. Supp. 173, 175 (N.D. Ill. 1988); *see also Extra Equipamentos E. Exportacao Ltda. v.*

*Case Corp.,* No. 01C8591, 2005 WL 843297, at *7 (N.D. Ill. Jan. 20, 2005) (applying Illinois law

where misrepresentations were made in Illinois and Plaintiff resided elsewhere); *Ivanhoe Fin., Inc. v.*

*Highland Banc Corp.*, No. 03 C 7336, 2004 WL 546934, at *4 (N.D. Ill. Feb. 26, 2004) (applying

Illinois law where plaintiff resided in and relied on misrepresentations in Florida but parties'

relationship centered in Illinois where injury caused); *Purizer Corp. v. Battelle Mem'l Inst.*, No. 01 C

6360, 2002 WL 22014, at *3 (N.D. Ill. Jan. 7, 2002) (applying law of state where misrepresentations

made).  Here, the conduct causing the injury occurred in Illinois because the massive tax fraud

scheme at issue was developed and executed primarily in Illinois.  Thus, Illinois law applies.

Moreover, notwithstanding the "substantial relationship" factors, Illinois law applies if the State that has a compelling relationship to the case. *E.g., Ivanhoe Fin.*, 2004 WL 546934, at *4. Here, the tax shelter scheme was created and marketed from Illinois and Deutsche Bank's tortious conduct emanated from Illinois. The coconspirators developed and marketed various tax shelters in Illinois, which involved multiple other victims, and which gives Illinois a strong interest in such claims. Indeed, a large and respected law firm was put out of business as a result the actions of its Chicago-based tax practice. Because Illinois has both the most significant relationship and a compelling interest in the events, Illinois law applies.

## III.    THE EXCULPATORY CLAUSES ARE INAPPLICABLE TO PLAINTIFFS' CLAIMS

Even if the Form Documents are considered on this motion (which they should not be), they do not supply any grounds for dismissal.

### A.    The Form Documents Do Not Apply to the Leffs' Claims for Aiding and Abetting and Conspiracy

As an initial matter, the Leffs assert claims for aiding and abetting fraud and breach of fiduciary duty, as well as conspiracy to defraud and breach of fiduciary duty. These claims are premised on Deutsche Bank's participation in the misrepresentations and misconduct of others, such as J&G and Bricolage. As such, the Form Documents, which purport to disclaim liability for, and reliance on, Deutsche Bank's own actions and misrepresentations, have no application to these claims.

### B.    Exculpatory Clauses are Unenforceable Due to Defendants' Willful and Wanton Misconduct

The exculpatory clauses cannot save Deutsche Bank because of the willful and wanton nature of their actions. *See Kalisch-Jarcho, Inc. v. City of New York*, 58 N.Y.2d 377, 384-85 (1983)

("an exculpatory agreement, no matter how flat and unqualified its terms, will not exonerate a party from liability under all circumstances").  Under both New York and Illinois law[5]:

> [A]n exculpatory clause is unenforceable when, in contravention of acceptable notions of morality, the misconduct for which it would grant immunity smacks of intentional wrongdoing.  This can be explicit, as when it is fraudulent, malicious or prompted by the sinister intention of one acting in bad faith.  Or, when as in gross negligence, it betokens a reckless indifference to the rights of others, it may be implicit.

*Id.* at 385 (citation and footnotes omitted); *Great N. Assocs., Inc. v. Cont'l Cas. Co.*, 596 N.Y.S.2d 938, 940 (N.Y. App. Div. 1993) (policy that exculpatory clauses are unenforceable in the face of intentional, willful or grossly negligent acts is "so strong" "that it is applicable regardless of whether exemption of such conduct was within the parties' contemplation at the time the agreement was executed"); *Time Warner Sports Merch. v. Chicagoland Processing Corp.*, 974 F. Supp. 1163, 1175 (N.D. Ill. 1997) ("An exculpatory clause cannot protect persons from the results of their willful and wanton misconduct.  Such a contractual shield is illegal.").

Here, the Complaint alleges that Deutsche Bank knowingly and intentionally created improper tax shelters and falsely marketed them to the Leffs as legitimate investment vehicles.  Thus, the Leffs' claims based on that conduct cannot be dismissed based on the exculpatory clauses.  *See id.*; *Zimmerman v. Northfield Real Estate, Inc.*, 156 Ill. App. 3d 154, 164 (Ill. App. Ct. 1986) (exculpatory clauses cannot "protect persons from the results of their willful and wanton misconduct"); *Falkner v. Hinckley Parachute Ctr., Inc.*, 178 Ill. App. 3d 597, 604 (Ill. App. Ct. 1989) (same); *Great N. Assocs.*, 596 N.Y.S.2d at 940 (exculpatory provision does not preclude claims that "allege intentional wrongdoing, willful, malicious and fraudulent acts").

Nor do the clauses apply to the remainder of the claims, which allege that Deutsche Bank, either willfully or with gross indifference, created illegal tax shelters and induced the Leffs to engage

---

[5] Because the parties dispute which law applies, where appropriate the law of both New York and Illinois will be cited in this memorandum.

in them.  Thus, to the extent that the claims allege gross negligence, the exculpatory clauses do not

apply.  *See Sommer v. Fed. Signal Corp.*, 79 N.Y.2d 540, 554 (1992) ("party may not insulate itself

from damages cause by grossly negligent conduct"); *Gross v. Sweet*, 49 N.Y.2d 102, 106 (1979) ("so

much of plaintiff's complaint as contains allegations that defendant was grossly negligent, may not

be barred by the release").

Thus, because of the intentional wrongdoing and gross negligence by Deutsche Bank, the

cases it cites enforcing such clauses are inapplicable.  *See, e.g.*, *Banco Espirito Santo de*

*Investimento, S.A. v. Citibank, N.A.*, No. 03 Civ. 1537, 2003 WL 23018888, *12 (S.D.N.Y. Dec. 22,

2003) (clause in contract between sophisticated banks applies where there were "no specific 'actions

by defendant evincing a reckless disregard for the rights of plaintiff or smacking of intentional

wrongdoing'"), *aff'd*, 110 Fed. App 191 (2d Cir. 2004); *Official Comm. of Unsecured Creditors v.*

*Donaldson, Lufkin & Jenrette Sec. Corp.*, No. 00 Civ. 8688, 2002 WL 362794, *166 (S.D.N.Y. Mar.

6, 2002) (complaint alleges ordinary negligence "not more extreme degrees of careless behavior

such as gross negligence or willful misconduct that resembles intentional wrongdoing").

This doctrine applies to both the limitation of liability provisions and the clauses that

allegedly disclaim "reasonable reliance" and a "special relationship" with the Leffs.  *See, e.g.*, *Banc*

*of Am. Sec. LLC v. Solow Bld. Co. II, L.L.C.*, 847 N.Y.S.2d 49, 53 (N.Y. App. Div. 2007) (applying

doctrine to lease provision); *Novak & Co., Inc. v. N.Y. City Hous. Auth.*, 480 N.Y.S.2d 403, 405-06

(N.Y. Sup. Ct. 1984) (applying doctrine to contractual notice of claim provision); *see also Solow v.*

*Conseco, Inc.* No. 06-CV-5988, 2008 U.S. Dist. LEXIS 9234, at *8-11 & n.8 (S.D.N.Y. Jan. 11,

2008) (attached hereto as Ex. A) (rejecting lack of reliance argument because clause allowing

defendant to terminate discussions could not "extend to permit[] Defendants to effectuate a

fraudulent scheme").  Indeed, the "disclaimers" in these documents are nothing more than a means

to limit Deutsche Bank's liability for particular causes of action.  As such, the exculpatory clauses on

15

which Deutsche Bank relies are unenforceable because they seek to absolve Defendants from

conduct that either "smacks of intentional wrongdoing . . . . [or] betokens a reckless indifference to

the rights of others . . . ." *Kalisch-Jarcho*, 58 N.Y.2d at 385.

C.    **The Terms of the Exculpatory Clauses Do Not Apply to the Leffs' Claims**

The exculpatory clauses are unenforceable for the additional reason that they do not

encompass the conduct alleged by the Leffs.

Exculpatory contracts are not favored and are strictly construed against the party seeking to

enforce them. *See Sweet*, 49 N.Y.2d at 106 ("the law frowns upon contracts intended to exculpate a

party from the consequences of his own negligence and . . . such agreements are subject to close

judicial scrutiny"); *Macek v. Schooner's Inc.*, 224 Ill. App. 3d 103, 105 (Ill. App. Ct. 1991) ("Under

Illinois law, exculpatory contracts are not favored and are strictly construed against the maker.").

As a case Deutsche Bank cites states, an exculpatory clause must *unambiguously waive the*

*precise claims* in the complaint. *DynCorp  v. GTE Corp.*, 215 F. Supp. 2d 308, 317-18 (S.D.N.Y.

2002) (upholding exculpatory clause where "unambiguous limitation of liability provision agreed to

by parties of equal bargaining power" specified exact damages permitted).  Thus, determination of

the scope of an exculpatory clause is typically not proper on a motion to dismiss.  *See Suez Equity*

*Investors, L.P. v. Toronto-Dominon Bank*, 250 F.3d 87, 104 (2d Cir. 2001) (conflict between oral

evidence and exculpatory agreement cannot be resolved on pleadings); *Vanderlinde Elec. Corp.  v.*

*City of Rochester*, 388 N.Y.S.2d 388 (N.Y. App. Div. 1976) (scope of exculpatory clause not for

determination on motion to dismiss); *see also Conseco, Inc.,* 2008 U.S. Dist. LEXIS 9234, at *8-11

(Ex. A).

Although Deutsche Bank cites tax shelter cases that have relied on disclaimers, it hardly

has disclosed the complete body of law on the issue.  In fact, a number of courts have refused to

dismiss claims on these grounds.  *See Swartz v. Deutsche Bank*, No. C03-1252, 2008 WL 1968948,

16

at *14 (W.D. Wash. May 2, 2008) (disclaimer does not prevent fraud claim in tax shelter case because while "facts may also undermine [plaintiff's] claim of reasonable reliance, they do not warrant dismissal under the demanding 12(b)(6) standard") (citing *Swartz v. KPMG, LLP*, 476 F.3d 756, 763 (9th Cir. 2007)); *Brooks v. Lehman Bros., Inc.*, No. 5:05CV160, slip op. at 4 (E.D. Tex. Sept. 20, 2006) (attached hereto as Ex. B) (denying motion to dismiss reliance-based claims in tax shelter case because disclaimers were not "unambiguous waiver by Plaintiff of all of their claims"); *Miron v. BDO Seidman, L.L.P.*, No. 04-968, slip op. at 2, n.2 (E.D. Pa. Aug. 14, 2006) (attached hereto as Ex. C) ("We are not persuaded either that the FX Contracts can, by themselves, preclude any [reasonable reliance on the alleged fraudulent statements made by the] DB Defendants for the entirety of the COBRA scheme, or that Plaintiffs cannot, through any set of facts, show that the agreements are invalid or inapplicable.").

Here, the clauses cited by Deutsche Bank fail to reach, or at the very least are ambiguous as to whether they reach, any of the conduct alleged in the complaint. Such ambiguities should be construed against Deutsche Bank, the drafter of the Form Documents. *See Phillips v. Lincoln Nat'l Life Ins. Co*., 978 F.2d 302, 306 (7th Cir. 1992) ("The rule of *contra proferentem* dictates that ambiguities in a contract be construed against the drafter.").

## 1.    *The Exculpatory Clauses are Limited to Specific Transactions*

### a.    <u>The Confirmation Forms</u>

Defendants contend that the confirmation forms for the COBRA transactions preclude any "reasonable reliance" (DB Mem. 12-14) or a "special relationship" with Plaintiffs. (DB Mem. 8-9, 12). However, the relevant clauses, as well as the forms in their entirety, are limited to "this Transaction," which is in turn narrowly defined as "the Foreign Exchange Digital Option Transaction entered into between us ("Party A") and you ("Party B") on [December 3, 1999]." (DB Mem. Exs. 1, 2). Thus, these clauses only apply to the actual execution of the "Digital Options

17

Transaction."  The Leffs' claims, however, do not allege that Deutsche Bank failed properly to execute those transactions; but that Deutsche Bank participated in an illegal scheme promoting, selling and implementing illegitimate tax shelters.

At a minimum, there is an ambiguity about whether the Deutsche Bank-drafted clauses apply to the Leffs' claims.  The Court should therefore deny Defendants' motion to dismiss.  *Macek*, 224 Ill. App. 3d at 106 (denying summary judgment based on ambiguity regarding scope of exculpatory clause); *Brooks*, slip op. at 4 (Ex. B) (unambiguous waiver by Plaintiff required to dismiss based on exculpatory clause); *Miron*, slip op. at 2, n.2 (Ex. C); *Krasner v. New York State Elec. & Gas Corp.*, 457 N.Y.S.2d 927, 929 (N.Y. App. Div. 1982) (exculpatory clause not applicable because conduct outside scope of agreement).

### b.    **Custody Account Agreements**

The language of the Custody Account Agreements related to PICO (DB Mem. Exs. 6, 7) are similarly narrow in scope.  Those agreements govern very circumscribed activities by Deutsche Bank—applying only to Deutsche Bank's "sole responsibility [] to keep and protect the Property in the Account as custodian".  *Id.*

Thus, the terms of the agreements, including the alleged disclaimers, do not extend beyond DB's obligation to "keep and protect the Property in the Account."  Moreover, the Agreement's reference to "a purchase or sale of securities or other investments hereunder," *id.*, is too narrow to cover the claims here, which do not seek damages for this *particular* purchase or sale under the Custody Agreement, but for misleading the Leffs about the tax scheme in general.  At a minimum, this language raises questions as to the applicability of the exculpatory clauses, and thus determining their applicability is improper at this stage.  *Macek*, 224 Ill. App. 3d at 106; *Brooks*, slip op. at 4 (Ex. B); *Miron*, slip op. at 2, n.2 (Ex. C).

c.    **The PICO Form Letters**

Deutsche Bank argues that the Leffs waived claims that they reasonably relied on representations that the PICO scheme was legitimate in Form Letters that the Leffs signed in connection with the transactions.  (DB Mem. Exs. 3, 4).  Again, however, it is important to view these disclaimers in light of the Leffs' claims against Deutsche Bank.

The Leffs are *not* suing because, as contemplated by these Form Letters, Deutsche Bank made representations "as to the expected performance or results" of an ordinary, above-board investment that wound up to be incorrect.  (DB Mem. Exs. 3, 4, at ¶ 2)  Instead, Plaintiffs are suing because the COBRA and PICO transactions *were not what they were represented to be at all*.  The Leffs allege that Deutsche Bank misrepresented and withheld material information from the Leffs about the true nature of the shelters and their ability to deliver legitimate tax benefits.  Now, Deutsche Bank seeks to bar the Leffs' claims through a document that was obtained by the very deception for which the Leffs sue.  Such an agreement cannot be enforced.  *See Golden v. Guar. Acceptance Capital Corp.*, 807 F. Supp. 1161, 1164 (S.D.N.Y 1992) ("[T]he issue of misrepresentation brings into question the validity of the entire contract. The merger clause offers no protection, because a contract procured by fraudulent inducement cannot be saved by its own terms.").

Deutsche Bank's cited cases are not to the contrary because they either: (i) involve wrongful conduct that is much narrower in scope than that alleged here, *see, e.g., Seippel v. Jenkens & Gilchrist, P.C.*, 341 F. Supp. 2d 363, 369, 381-82 (S.D.N.Y. 2004) (Deutsche Bank not alleged to play primary role in scheme and simply "conduct[ed] the transactions"); *Conwill v. Arthur Andersen LLP*, No. 602023/05, 2006 WL 1703621, at *1, 11 (N.Y. Sup. Ct. June 21, 2006) (disclaimer of reliance on communications regarding "*this Agreement*" against Bank, with role in scheme limited to selling currency options to plaintiff and allowing assignment); (ii) found allegations of fraud or

fiduciary duty too conclusory to overcome written representations, *see, e.g., King v. Deutsche Bank AG*, No. 04-1029-HU, slip op. at 23-27 (D. Or. Sept. 12, 2005) (under Oregon law and without discussion of facts, plaintiffs cannot overcome disclaimer where they pled neither fiduciary duty nor fraud with requisite specificity); or (iii) rely on inapplicable state-law standards, *see, e.g. id.* (Oregon); *BFS Morgan Investors, LLC  v. Deutsche Bank, AG*, Court File No. 27CV05-11478, slip op. at 4-5 (D. Minn. Aug. 16, 2006) (Minnesota law, considering contracts signed by plaintiff companies).

**D.    The Exculpatory Clauses are Void Because their Execution was Based on Misinformation**

Finally, the exculpatory clauses are invalid because the Leffs entered into them based on misrepresentations that were "peculiarly within the [Defendants'] knowledge." *DIMON Inc. v. Folium, Inc.*, 48 F. Supp. 2d 359, 368 (S.D.N.Y. 1999) (disclaimer of reliance in representations by sophisticated party precluded by inability to discover facts misrepresented).  Here, the fraudulent nature of the tax shelters was in Deutsche Bank's and its co-conspirator's peculiar knowledge, and was in fact a matter carefully concealed from the Leffs.  Thus the exculpatory clauses are invalid. *See Blue Chip Emerald LLC v. Allied Partners Inc.*, 750 N.Y.S.2d 291, 295 (N.Y. App. Div. 2002) (even where investor is sophisticated, "a fiduciary cannot by contract relieve itself of the fiduciary obligation of full disclosure by withholding the very information the beneficiary needs in order to make a reasoned judgment whether to agree to the proposed contract"); *Superior Technical Res., Inc. v. Lawson Software, Inc.*, No. 2003-10104, 2007 WL 4291575, at *10-11 (N.Y. Sup. Ct. Dec. 7, 2007) ("even a specific disclaimer of reliance is insufficient to bar a [] claim where the fact misrepresented are 'peculiarly within the [representer]'s knowledge'").

Deutsche Bank's cited cases are not to the contrary as they uphold disclaimers where the alleged misrepresented information was, unlike the information concealed here, readily accessible to plaintiffs.  *See, e.g., Grumman Allied Indus., Inc. v. Rohr Indus., Inc.*, 748 F.2d 729, 733 (2d Cir.

1984) (plaintiff had unfettered access to all relevant information regarding misrepresented testing

procedures); *Adams v. Intralinks, Inc.*, No. 03 Civ. 5384, 2004 WL 1627313, at *7 (S.D.N.Y. July

20, 2004) (no reasonable reliance where plaintiff entered contract with disclaimer that on its face

contradicted alleged oral representations).

###    E.    The Limit of Liability Provisions Do Not Apply to the Specific Claims Alleged in the Complaint

Deutsche Bank's reliance on the limitation of liability provisions in the Form Letters and

Confirmation Agreements (DB Mem. 4-5, 22-24) is also misplaced.

To release or waive a claim, "it must appear plainly and precisely that the limitation of

liability extends to negligence or other fault of the party attempting to shed his ordinary

responsibility." *Sweet*, 49 N.Y.2d at 107 (internal citation omitted). That is, it must be clear from

the face of the allegedly controlling agreements that it was the "unmistakable intent of the parties" to

release Defendants from injuries arising from the type of conduct alleged in the complaint. *See id.* at

108 (noting that exculpatory provisions drawn in broad and sweeping language generally not given

effect); *see also Simpson v. Byron Dragway, Inc.*, 210 Ill. App. 3d 639, 647 (Ill. App. Ct. 1991) ("[I]t

must be demonstrated that the danger which caused the injury was one which ordinarily

accompanied the activity and that the plaintiff knew, or should have known, that both the danger and

the possibility of injury existed before the occurrence.").

*Gross v. Sweet* is instructive. There, plaintiff sustained injuries as a result of defendant's

negligence in conducting a parachute jumping course. The plaintiff had signed a statement waiving

"any and all claims . . . for any personal injuries or property damage that [he] may sustain or which

may arise out of [his] learning, practicing or actually jumping from an aircraft." 49 N.Y.2d at 110.

The Court of Appeals denied Defendant's motion for summary judgment, stating:

> Assuming that this language alerted the plaintiff to the dangers inherent in parachute jumping and that he entered into the sport with apprehension of the risks, *it does not follow that he was aware of, much less intended to accept,* any enhanced *exposure to*

> *injury occasioned by the carelessness of the very persons on which he depended for his safety*.  Specifically, the release nowhere expresses any intention to exempt the defendant from liability for injury or property damages which may result from his failure to use due care . . . . Thus . . . the agreement could most reasonably be taken merely as driving home the fact that the defendant was not to bear any responsibility for injuries that ordinarily and inevitably would occur, without any fault of the defendant, to those who participate in such a . . . sport.

*Id.* at 109-10 (emphasis added); *compare Falkner v. Hinckley Parachute Center, Inc.,* 178 Ill. App. 3d 597, 603 (Ill. App. Ct. 1989) (exculpatory clause clearly stated that it excluded liability for negligence of parachute center, thus barring plaintiff's claim for negligence).

Here, Defendants rely on general language in two documents, the Custody Account Agreements and the Form Letters, to disclaim liability for the PICO transactions.  (DB Mem. 23).[6] As in *Sweet*, these provisions cannot bar the Leffs' claims because they nowhere express an intention to limit liability for "enhanced exposure" to injury outside of that which would "ordinarily and inevitably" occur in executing the transaction.  *Sweet*, 49 N.Y.2d at 109-10.  The Leffs did not contemplate that Deutsche Bank was defrauding them by causing them to enter into transactions that were designed in wholesale disregard of the law.  Because the Leffs were only disclaiming rights to hold Deutsche Bank responsible for ordinary losses arising out of non-negligent or otherwise good-faith conduct, these clauses do not bar any of the Leffs' PICO-related claims.  *See id.* at 110; *Simpson*, 210 Ill. App. 3d at 647-48 ("[w]hether a particular injury is one which ordinarily accompanies a certain activity and whether a plaintiff appreciates and assumes the risk associated with the activity . . . constitutes a question of fact"); *Macek*, 224 Ill. App. 3d at 106 (denying summary judgment because ambiguity existed as to whether release from liability only if injury from physical condition or from defendant's negligence).

---

[6] There is no similar representation made with respect to the COBRA transaction.

## IV.    PLAINTIFFS' CLAIMS ARE TIMELY

### A.    Illinois Statute of Limitations Law Governs Plaintiffs' Claims

An Illinois federal court sitting in diversity should apply the law of the forum state for statute of limitations. *ABF Capital Corp. v. McLauchlan*, 167 F. Supp. 2d 1011, 1014 (N.D. Ill. 2001).[7] Deutsche Bank is correct that under Illinois law, the borrowing statue is applied when a cause of action "arose" in another jurisdiction and both parties are non-residents of Illinois. It is mistaken, however, that the Leffs' claims "arose" in Pennsylvania.

Like the choice of law analysis, Illinois courts use the most significant relationship test to determine where a cause of action arose. *Supra* Section II.B. As set forth above, that test shows that the Illinois law applies. *Id.* The tortious conduct took place in Illinois, the relationship between the parties was centered in Illinois, and the development of the fraudulent tax shelter scheme was in Illinois.[8] Though Plaintiffs at the time of the injury resided in Pennsylvania, this is insufficient for purpose of this analysis when Illinois offers the most significant contacts. *See Hollinger Int'l, Inc. v. Hollinger Inc.*, No. 04 C 0698, 2005 WL 589000, at *26 (N.D. Ill. Mar. 11, 2005) (applying Illinois statute of limitations where plaintiff resident of different state but relevant documents mailed from defendant's Illinois office); *supra* Section II.B. Given that Plaintiffs' action "arose" in Illinois for purposes of the borrowing statute, the Illinois statute of limitations should be applied.

---

[7] Illinois applies its law to statute of limitations even when litigants are parties to a contractual choice of law provision governing substantive contract rights. *ABF Capital Corp.*, 167 F. Supp. 2d at 1014.

[8] The Leffs have not had access to discovery to determine the location of much of Deutsche Bank's activities at issue here. Although Plaintiffs' claims arose in Illinois because it has the most significant relationships it may well be that New York has the second most significant contacts, given the meetings and other actions in New York described in the Complaint. *See Bridge Prods., Inc. v. Quantum Chem. Corp.,* No. 88 C 10734, 1990 WL 19968, at *5-6 (N.D. Ill. Feb. 28, 1990) (focusing on place of contractual performance in borrowing statute analysis). The New York statute of limitations for most of Plaintiffs' claims is six years (breach of fiduciary duty claim is also six years to the extent it is based in fraud). *Kaufman v. Cohen*, 760 N.Y.S.2d 157, 164 (N.Y. App. Div. 2003); N.Y. CPLR § 213. Because New York's statute is longer than Illinois' primarily three or five year statutes, the Illinois borrowing statute would not be applicable. *See Am. Heavy Trading, Inc.  v. Gen. Elec. Co.*, No. 93 C 3609, 1996 WL 556742, at *5 (N.D. Ill. Sept. 27, 1996).

**B.**    **Deutsche Bank Uses the Wrong Accrual Date for the Statute of Limitations**

Under Illinois law, the discovery rule tolls the statute of limitations until Plaintiffs knew or reasonably should have known, through the exercise of reasonable diligence, of their injury and that it was wrongfully caused. *Colovos Co. v. Northwestern Mut. Life Ins. Co.*, No. 96 C 464, 1997 WL 399613, at *1 (N.D. Ill. July 14, 1997).

Illinois courts are extremely hesitant to grant a motion to dismiss when there are questions as to when a plaintiff was on inquiry notice. *See Covington v. Mitsubishi Motor Mfg. of Am., Inc.*, 154 Fed. Appx. 523, 524 (7th Cir. 2005) (deeming it "'irregular' to dismiss a claim as untimely under Rule 12(b)(6)" and vacating grant of dismissal); *Bashton v. Ritko*, 164 Ill. App. 3d 37, 40 (Ill. App. Ct. 1987) (reversing dismissal due to fact question of when reasonable diligence would have uncovered fraud and such "[de]terminations must be made by the trier of fact, not in a pre-trial motion to dismiss"). For Deutsche Bank to succeed on a motion to dismiss, it must show that it was clear on the face of the complaint that the claims are time barred. *See Brown v. County of Will*, No. 02 C 3165, 2005 WL 1138642, at *4 (N.D. Ill. May 9, 2005) (defendant bears burden to show conclusively that complaint time-barred). Deutsche Bank cannot do so.

Deutsche Bank asserts that the Leffs, in the exercise of reasonable diligence, should have discovered their potential claims from IRS Notices issued August 11, 2000 and September 25, 2002. (DB Mem. 26). However, *Seippel v. Sidley, Austin, Brown & Wood, LLP*, 399 F. Supp. 2d 283 (S.D.N.Y. 2005), is dispositive of that argument. There, the court ruled these IRS notices were insufficient to place plaintiffs on inquiry notice because neither Notice mentioned COBRA or any defendant by name and it was not clear that an ordinary taxpayer could understand that the Notices applied to a particular tax product. As the court ruled, "[t]o have understood the import of Notice 2000-44 would have required more legal expertise than can be demanded of ordinary taxpayers – even wealthy, but otherwise typical taxpayers". 399 F. Supp. 2d at 292.

As with Deutsche Bank's present motion, the *Seippel* defendants (including Deutsche Bank), focused on allegations in the complaint that Notice 2000-44 described the COBRA transaction.  The court rejected this contention on grounds equally applicable here:  "In context, the Complaint's meaning is clear: it alleges that IRS Notice 2000-44 made the unlawfulness of COBRA clear to the tax and investment professionals named as defendants, rather than to plaintiffs."  *Id.* Although Deutsche Bank seeks to distinguish *Seippel* by arguing that the court emphasized the reassurance plaintiffs received that the Notice did not apply to their tax shelters  (DB Mem. 28 n.40), that was not the exclusive grounds for this holding.  *Id.* at 291.  In any event, Deutsche Bank ignores that the Leffs received similar reassurances.  (¶ 160).

Deutsche Bank cites *Bausch v. Philatelic Leasing, Ltd.*, 728 F. Supp. 1201, 1208 (D. Md. 1989), for the proposition that "IRS notices stating that tax shelters were invalid [and] were 'sufficient to put the ordinary person on notice that an investigation into the possibility of fraud is necessary.'"  (DB Mem. 28).  However, *Bausch* holds not that the general IRS Notices to the public commenced the running of the statute of limitations, but that the IRS litigation over the specific tax shelters at issue, as well as commencement of administrative proceedings are the proper accrual date. 728 F. Supp. at 1206-07.  The notices in *Bausch* were *not* the general public notices upon which Deutsche Bank relies here.

Here, the Leffs describe their lack of knowledge about the IRS Notices and the fraudulent nature of the scheme and explain the reassurances received from Defendants.  (¶¶ 150, 156, 160, 163, 168).  The Leffs also allege that they discovered Deutsche Bank's wrongdoing after they were audited by the IRS and retained other professional tax advisers.  (¶ 171).  Thus, Deutsche Bank's motion to dismiss on statute of limitations grounds based on the IRS notices should be rejected.

C.    **Plaintiffs' Are Entitled To Further Tolling**

There are additional grounds to toll the statute of limitations here.    *First,* the statute of limitations should be tolled because Plaintiffs were members of relevant class actions.    *See e.g., American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 553-54 (1973) (holding that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class").    This tolling remains in effect until the class certification is denied or, if certification is approved, when the class member opts out.    *Id*; *Appleton Elec. Co. v. Graves Truck Line, Inc.*, 635 F.2d 603, 610 (7th Cir. 1980).

Here, Plaintiffs were class members of *Denney v. Jenkens & Gilchrist*, Index. No. 03 Civ. 05460 (S.D.N.Y.) and *Abessenio v. Ernst & Young,* Index No. 06 Civ. 02777 (S.D.N.Y.).    *Denney* was instituted on July 23, 2003 against multiple defendants, including Deutsche Bank, and asserted claims on behalf of a class of COBRA investors.    The *Denney* claims were substantially similar, if not identical, to the Leffs' claims regarding the COBRA strategy.    *See generally Rochford v. Joyce*, 755 F. Supp. 1423, 1428-29 (N.D. Ill. 1990) (to apply *American Pipe* tolling, claims must be similar enough so that defendants had notice of substantive claims).    Although Deutsche Bank ultimately was dismissed as a defendant, it is unclear from the docket sheet (attached hereto as Ex. D) when that occurred.    However, the case was terminated on March 8, 2007, and therefore, Plaintiffs' claims relating to COBRA should be tolled from July 2003 through that date.

Similarly, an amended complaint in *Abessinio* that included Deutsche Bank was filed on April 10, 2006 arising out of PICO (attached hereto as Ex. E).    Likewise, the *Abessinio* claims are substantially similar, and often identical, to the Leffs' claims relating to the PICO strategy.    The *Abessinio* class action was still pending when this action was filed.    Thus, the Leffs' claims relating to PICO should be tolled from April 2006 through the date the Complaint was filed.

26

*Second*, the parties entered into an agreement on December 30, 2005, that tolled the statute of limitations for one year (attached hereto as Ex. F). It was then amended on December 30, 2006 to extend through December 30, 2007(attached hereto as Ex. G). Thus, the time elapsing from the period between December 30, 2005 and December 30, 2007 should not be included in determining the timeliness of Plaintiffs' claims.

In light of Deutsche Bank's inability to conclusively show that the statute commenced to run upon issuance of the IRS notices, as well as the other tolling periods to which the Leffs are entitled, Deutsche Bank's motion to dismiss based on the statute of limitations should be denied.

## V. PLAINTIFFS' CLAIMS ARE PROPERLY PLEADED

### A. The Standard to Be Applied on This Motion

On a Rule 12(b)(6) motion to dismiss, the Court must accept the allegations in the Complaint as true and make all reasonable inferences in Plaintiffs' favor. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). Thus, the Court should not decide whether Plaintiffs are likely to prevail on their claims, as the Defendants' arguments suggest, but instead whether they are "entitled to offer evidence to support the claims." *Scheuer,* 416 U.S. at 236.

#### 1. Rule 8(a)

Rule 8(a) applies on a motion to dismiss. *See Hefferman v. Bass*, 467 F.3d 596, 598-99 (7th Cir. 2006); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002). "In federal court under Rule 8, the rules are simple: Notice is what counts. Not facts; not elements of 'causes of action'; not legal theories." *Hefferman*, 467 F.3d at 600; *See also* 5 Wright & Miller, FEDERAL PRACTICE & PROCEDURE § 1215 ("It was the design of the rulemakers that the discovery procedures should give the parties an opportunity for securing an elaboration of the allegations and that process and not the pleadings bears the burden of filling in the details of the dispute for the parties and the court."). The issue is "whether the complaint contains 'enough factual matter (taken as true)' to

provide the minimum notice of the plaintiffs' claim that the Court believes a defendant entitled to."

*In re Ocwen Loan Servicing, LLC Mortgage Servicing Litig.*, 491 F.3d 638, 648-49 (7th Cir. 2007)

(*quoting Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1967-69 (2007)).

### 2.    Rule 9(b)

Deutsche Bank argues that Rule 9(b) applies to the Leffs' fraud-based claims.  (DB Mem.

29 n.41).  As Deutsche Bank points out, the Seventh Circuit has held that under Rule 9(b), a party

alleging fraud must allege the "who, what, when, where and how" of the fraud.  (DB Mem. 29, *citing*

*DiLeo v, Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)).

Courts consistently apply Rule 9(b) "in conjunction with its underlying purposes, which are

(1) to inform defendants of the alleged wrongs and enable them to form an adequate defense and

response; (2) to eliminate the filing of conclusory complaints as a pretext for detecting additional

wrongs; and (3) to shield defendants from unfounded fraud charges that might injure their

reputations."  *Hot Wax, Inc. v. Grace-Lee Prods., Inc.*, No. 97 C 6882, 1998 WL 664945, at *3

(N.D. Ill. Sept. 15, 1998).  "Fair notice is the most basic consideration."  *Guar. Residential Lending,*

*Inc. v. Int'l Mortgage Ctr., Inc.*, 305 F. Supp. 2d 846, 853 (N.D. Ill. 2004).

Moreover, "Rule 9(b) must be applied in conjunction with the Rule 8(a) requirement of a

short and plain statement of the cause of action".  *Carter v. Signode Indus., Inc.*, 694 F. Supp. 493,

500 (N.D. Ill. 1988) (*citing Tomera v. Galt*, 511 F.2d 504, 508 (7th Cir. 1975)).  Therefore, "plaintiff

need only allege a 'brief sketch of how the fraudulent scheme operated, when and where it occurred,

and the participants.'"  *Id.* (*quoting Tomera*, 511 F.2d at 509); *accord Merix Pharm.Corp. v.*

*GlaxoSmithKline Consumer Healthcare, L.P.*, No. 5 C 1403, 2006 WL 1843370, *2 (N.D. Ill. June

28, 2006) (pleader "only required to set forth the basic outline of the scheme, who made what

representations and the general time and place of such misrepresentations." (citation omitted)).

"Plaintiffs need not allege the evidentiary details."  *Carter*, 694 F. Supp. at 500.

Nor is Rule 9(b) applied rigidly. "It is well established . . . that the requirements of Rule 9(b) are relaxed when the plaintiff lacks access to all facts necessary to detail his claim." *U.S. ex rel. Kennedy v. Aventis Pharm., Inc.*, 512 F. Supp. 2d 1158, 1167 (N.D. Ill. 2007). Finally, "even under Rule 9(b) '[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally.'" *Hefferman*, 467 F.3d at 601.

Measured against these standards, the Complaint should not be dismissed.

### B. The Complaint States a Valid Claim for Breach of Fiduciary Duty

Plaintiffs have adequately pled the existence of a fiduciary relationship with Defendants—one far beyond the mere "arms-length transaction" claimed by Deutsche Bank. (DB Mem. 8).

Whether a fiduciary relationship exists is fact-intensive and generally not subject to a Rule 12(b)(6) dismissal. *See E & J Gallo Winery v. Morand Bros. Beverage Co.*, 247 F. Supp. 2d 979, 985 (N.D. Ill. 2003) ("the existence of a fiduciary duty generally is a question of fact . . . and thus typically not appropriate for disposal on a motion to dismiss"); *Olshansky v. Sutton*, No. 00 Civ. 3539, 2001 WL 99857, at *5 (S.D.N.Y. Feb. 6, 2001) (under "generous pleading standard" of Rule 8, claim for breach of fiduciary duty generally "not subject to dismissal").

Here, the Leffs have amply alleged a fiduciary relationship. In Illinois, a fiduciary relationship exists when one puts trust and confidence in another such that the latter has influence over the other. *E & J Gallo Winery*, 247 F. Supp. 2d at 985.[9] The Leffs describe a relationship far beyond the simple "arms-length transaction" that Deutsche Bank insists applies. (DB Mem. 8). *See Suez Equity Investors*, 250 F.3d at 103 (complaint implied relationship beyond typical arms-length transaction where defendants initiated contact and "vouched for the veracity of the allegedly deceptive information"); *E & J Gallo Winery.*, 247 F. Supp. 2d at 985 (fiduciary relationship where

---

[9] The basis for finding a fiduciary relationship is similar in New York and Pennsylvania, essentially a relationship of trust and confidence. (*See* DB Mem. 7). *See Compania Sud-Americana de Vapores, S.A. v. IBJ Schroder Bank & Trust Co.*, 785 F. Supp. 411, 425 (S.D.N.Y. 1992)

allegations allege more than arms-length relationship); *Salomon Bros., Inc. v. Huitong Int'l Trust & Inv. Corp.,* No. 94 Civ. 8559, 1996 WL 675795, at *2 (S.D.N.Y. Nov. 21, 1996) (same).

The Leffs allege that Deutsche Bank was involved in the design, development and marketing of both tax shelters. The Leffs specifically allege that Defendants helped solicit them to engage in the COBRA tax shelter and offered "repeated assurances of the legitimacy of the transactions" as well as "specific, tax-related representations." (¶ 107). The Leffs also allege multiple meetings where Deutsche Bank represented that PICO was the result of "Deutsche Bank's long experience in such trading, as to which it had world-class expertise." (¶¶ 127-128). Further, Plaintiffs allege that "one of [Defendants'] personnel from the Chicago office who had dealt with the Leffs on COBRA, Kevin Lynch, reached out to the Leffs to assure them that Defendants would continue to provide the same world-class financial service in connection with PICO that were provided in connection with COBRA." (¶ 128). The Leffs allege that Deutsche Bank repeatedly emphasized their skill and expertise and used their "role as one of the premier financial institutions in the world" to encourage the Leffs to engage in the tax shelters. (¶ 76, 90, 126, 128-129). Deutsche Bank even had discretion and control over the COBRA and PICO transactions—designed in part to ensure their high fees—in that they could "determine when and if the event was triggered" as well as the ability to "choose to accept or disregard any spot rate." (¶ 51, 55, 105).

Though Deutsche Bank attempts to cast its role as a disinterested broker (DB Mem. 10), the Leffs clearly allege much more. Deutsche Bank repeatedly and expressly told the Leffs that they could rely on its financial skill and abilities; they were solicited with an express emphasis on the parties' continuing relationship; and it was given discretionary control over the manner in which the transactions would be carried out. This not a case of a broker/dealer executing nondiscretionary trades, as was involved in many of the cases Deutsche Bank cites. *See De Kwiatkowksi v. Bear, Stearns & Co.*, 306 F.3d 1293 (2d Cir. 2002) (analyzing broker and client relationship in

nondiscretionary accounts); *Indep. Order of Foresters v. Donald, Lufkin & Jenrette, Inc.*, 157 F.3d

933, 940 (2d Cir. 1998) (same).[10]

Moreover, a fiduciary relationship can be established when "a person solicits another to

trust him in matters in which he represents himself to be an expert as well as trustworthy and the

other is not expert and accepts the offer and reposes complete trust in him." *Burdett v. Miller*, 957

F.2d 1375, 1381 (7th Cir. 1992); *see also Zurich Capital Mkts., Inc. v. Coglianese*, No. 03 C 7960,

2005 WL 1950653, at *11 (N.D. Ill. Aug. 12, 2005) ("when the [investment] advisor cultivates a

relation of trust in which the client unquestionably relies on the advisor's advi[c]e and expertise, a

fiduciary relationship may exist.").[11]  As described above, the Complaint sets forth numerous

assurances of just such expertise.

Finally, Defendants heavily influenced and dominated the transactions, and had superior

knowledge about the schemes while misleading the Leffs on nearly all aspects of the tax shelters.

(¶¶ 103-17, 127-29, 131-140).  *See Zurich Capital Mkts.*, 2005 WL 1950653, at *11 (breach of

fiduciary duty claim viable where plaintiff did not have access to all information); *supra* Section

III.D.[12]  This inequality in information as a result of Defendants' misrepresentations and omissions,

coupled with Defendants' involvement in the solicitation of the Leffs and repeated claims of

---

[10] Deutsche Bank cites *Official Comm. of Unsecured Creditors v. Donaldson, Lufkin & Jenrette Sec.,* No. 00 Civ.
8688, 2002 WL 362794 (S.D.N.Y. Mar. 6, 2002) in support of various arguments; notably, the court in that case found
that the plaintiff had pled sufficient facts to support a finding of a fiduciary relationship between investment banker
and client.

[11] In New York and Pennsylvania, a fiduciary relationship may also exist where the self-proclaimed expertise of the
professional is trusted by investor.  *See Sergeants Benevolent Ass'n Annuity Fund v. Renck*, 796 N.Y.S.2d 77, 79 (N.Y.
App. Div. 2005) (defendants "held themselves out as experienced in the field of investment consulting and
management" and plaintiff relied on such expertise); *Brandow Chrysler Jeep Co. v. DataScan Techs.*, 511 F. Supp. 2d
529, 539 (E.D. Pa. 2007) (fiduciary allegations sufficient where they "tend to show that plaintiff businesses relied
upon defendant's 'pretense of expertise'" and thus "reasonable to infer from the facts in the complaint that plaintiffs
reposed complete trust in defendant").

[12] The superior knowledge of one party is a factor in determining a fiduciary relationship in New York law as well.
*See Solutia Inc. v. FMC Corp.*, 456 F. Supp. 2d 429, 456 (S.D.N.Y. 2006) (fiduciary relationship may arise from
commercial transaction where facts regarding transaction "were within the knowledge and control of only one party to
the transaction").

31

expertise upon which the Leffs relied, are more than sufficient for the Leffs to meet the liberal

pleading standard for a fiduciary relationship claim.

Indeed, a court recently rejected Deutsche Bank's effort to dismiss a taxpayer's breach of

fiduciary duty claim because the complaint in that case, like the Leffs', suggested more than "arm's

length" relationship where defendants controlled the transaction and concealed facts "giv[ing] rise to

fiduciary-like duties." *Swartz*, 2008 WL 1968948, at *15-16.  The same result should occur here.

### 1.    The Complaint Sets Forth a Claim for Aiding and Abetting Breach of Fiduciary Duty

Under Illinois law, the elements of aiding and abetting are:  "(1) the party whom the

defendant aids performed a wrongful act causing an injury, (2) the defendant was aware of his role

when he provided the assistance, and (3) the defendant knowingly and substantially assisted the

violation."  *Hefferman*, 467 F.3d at 601 (overturning dismissal of claims for aiding and abetting

breach of fiduciary duty and fraud).[13]  In addition to properly pleading direct breach of fidicuary

duty claims against Deutsche Bank, the Leffs properly alleged that Deutsche Bank aided and abetted

the breaches of fiduciary duties by others.

### a.    The Complaint alleges a breach of fiduciary duty

J&G, Daugerdas, Bricolage and Beer breached their fiduciary duties to the Leffs.  Under

Illinois law, the elements of a fiduciary duty claim are:  "(1) the existence of a fiduciary duty, (2) a

breach of that duty, and (3) damages proximately resulting from the breach."  *Thorpe v. Levenfeld*,

No. 04 C 3040, 2005 WL 2420373, at *4 (N.D. Ill. Sept. 29, 2005).  Here, the Leffs plead that both

J&G and Daugerdas, as the Leffs' advisers and attorney (¶¶ 87, 108, 120-22), and Bricolage and

Beer, as the Leff's advisers (¶¶127-31), owed the Leffs a fiduciary duty. (¶ 185).  *Tuchowski v.*

---

[13] Under New York law, the elements of aiding and abetting fraud are: (1) the existence of a fraud; (2) the defendant's knowledge of that fraud; and (3) that the defendant provided substantial assistance to advance the fraud.  *See Wight v. BankAmerica Corp.*, 219 F.3d 79, 91 (2d Cir. 2000) (internal citation omitted).  To state a claim for aiding and abetting breach of fiduciary duty, a plaintiff need only allege: (1) a breach of fiduciary duty, and that (2) the defendant induced or participated in the breach with the requisite scienter.  *See id.* (internal citation omitted).

*Rochford*, 368 Ill. App. 3d 441, 445 (Ill. App. Ct. 2006) (fiduciary relationship exists as a matter of

law between attorney and client); *E & J Gallo Winery*, 247 F. Supp. 2d at 985 (producer owes

fiduciary duty to distributor where high degree of trust reposed in producer).  As a result of J&G and

Bricolage's misrepresentations, the Leffs engaged in COBRA and PICO (¶ 107, 130) and were

injured. (¶ 178-83).

### b.    The Complaint alleges Deutsche Bank's knowing participation in the breach of fiduciary duty

An aider an abettor assists a tort, such as fraud, when it "affirmatively assists, helps

conceal, or by virtue of failing to act when required to do so enables the fraud to proceed."

*OSRecovery*, *Inc. v. One Groupe Int'l, Inc.*, 354 F. Supp. 2d 357, 378 (S.D.N.Y. 2005).

The allegations of Deutsche Bank's activities easily satisfy this standard.  Although

Deutsche Bank argues that "simply providing banking facilities does not rise to the level of

substantial assistance" (DB Mem. 16), that is hardly what this case is about.  The Complaint sets

forth in detail that Deutsche Bank was a knowing and crucial participant in not only creating both

the COBRA and PICO schemes (¶¶ 46-54, 58-62) but also in marketing and executing them, with

Deutsche Bank a key player in assuring the Leffs of the transactions' legitimacy (¶¶ 107, 128-29)

with substantial discretion in the manner in which the transactions were carried out (¶ 51, 55, 105).

In addition, the Leffs were directed to establish accounts with Deutsche Bank through which the

Defendants executed the sham transactions and instructed the Leffs on the mechanics of the

transactions.  (¶¶ 108-09, 113, 132, 137, 140).

Such conduct is a far cry from maintaining accounts through which fraud occurred without

a bank's knowledge, as was the case in *Nigerian Nat'l Petroleum Corp. v. Citibank, N.A.*, No. 98

Civ. 4960, 1999 WL 558141 (S.D.N.Y July 30, 1999), and instead rises to the level of assistance that

courts routinely find sufficient to sustain aiding and abetting claims.  *See, e.g., Hefferman*, 467 F.3d

at 598 (substantial assistance by attorney who assured he would protect plaintiff but then prepared

document stating plaintiff had resigned); *OSRecovery*, 354 F. Supp. 2d at 378 (substantial assistance where bank provided tiered account system through which primary wrongdoers conducted ponzi scheme); *Wight*, 219 F.3d at 92 (aiding and abetting pled where bank helped "orchestrate" fraud by arranging for and supervising transfer of money through various accounts).

Deutsche Bank's argument that its actions were not the proximate cause of Plaintiffs' injuries (DB Mem. 17) is misplaced.[14]  As a general rule, the fact-intensive issue of proximate cause is usually not properly determined on a motion to dismiss.  *See Johnson v. Bryco Arms*, 304 F. Supp. 2d 383, 395-96, 399-400 (E.D.N.Y. 2004) (denying motion to dismiss); *Derdiarian v. Felix Contracting Corp.*, 51 N.Y.2d 308, 315 (1980).  Nonetheless, the detailed allegations in the Complaint regarding Deutsche Bank's close involvement in the development, marketing and execution of the tax shelters show that the Leffs' injuries are a *direct* result of Deutsche Bank's activities.  An intervening act by a third party—Deutsche Bank contends that the actions of other "tax and legal advisors" (DB Mem. 17)—does not necessarily break the causal connection between the bad action and Plaintiffs' injury.  "To break the legal chain, the intervening act must have been of such an extraordinary nature or so attenuated from the defendants' conduct that responsibility for the injury should not reasonably be attributed to them."  *Bryco Arms*, 304 F. Supp. 2d at 395 (internal quotation omitted).  Here, the alleged "intervening events" do not break the legal chain because it is alleged that the tax advice and legal opinions were all part of the overarching wrongful plan by Deutsche Bank and its co-conspirators.[15]

---

[14] While some courts have equated the concept of "substantial assistance" with that of "proximate cause," *Kolbeck v. LIT Am., Inc.*, 939 F. Supp. 240, 249 (S.D.N.Y. 1996), other courts hold that "[a] person can make a meaningful contribution to a fraudulent scheme without being understood to have legally 'caused' the scheme or its results." *JP Morgan Chase Bank v. Winnick*, 406 F. Supp. 2d 247, 256, n.6 (S.D.N.Y. 2005).

[15] The cases cited by Defendants, which involve acts by third parties that were completely unrelated to the plaintiffs' injuries, are therefore inapposite.  *See Duggal v. St. Regis Hotel*, 695 N.Y.S.2d 602, 603 (N.Y. App. Div. 1999) (taxi driver hit plaintiff when defendant hotel's employee directed plaintiff into street to load luggage into car); *Giraldo v. Rossberg*, 747 N.Y.S.2d 78, 79 (N.Y. App. Div. 2002) (traffic agent waived plaintiff bicyclist through intersection and defendant struck plaintiff with car).

Further, the Leffs have pled Deutsche Bank's actual knowledge of the underlying wrongdoing (¶¶ 221, 13, 18) along with numerous facts showing that, at a minimum, they "acted with reckless disregard of[] the wrongful conduct." *Wedbush Morgan Sec., Inc. v. Robert W. Baird & Co.*, 320 F. Supp. 2d 123, 131 (S.D.N.Y. 2004).

### C.    The Fraud Allegations in the Complaint Comply with Rule 9(b)

The elements of common law fraud are: (1) a false statement of material fact; (2) defendant's knowledge of the falsity; (3) defendant's intent that the statement induce the plaintiff to act; (4) reliance; and (5) damages. *Gehrett v. Chrysler Corp.*, 379 Ill. App. 3d 162, 172 (Ill. App. Ct. 2008); *Kaufman*, 760 N.Y.S.2d at 165. As detailed above, (*supra* Section V.A.2), Rule 9(b) requires that the "who, what, when, where and how" of the fraud be alleged in detail. (DB Mem. 29, *citing DiLeo*, 901 F.2d at 627).

Deutsche Bank argues that the Complaint fails to satisfy the particularity requirements of Fed. R. Civ. P. 9(b) in, ironically enough, an entirely conclusory fashion.[16] In so doing, Deutsche Bank ignores both the Complaint's numerous specific allegations and the law from this Circuit showing that the Complaint meets Rule 9(b).

### 1.    The Detailed Fraud Allegations in the Complaint

The Complaint sets forth that in the late 1990's, Deutsche Bank employees, including David Parse and Craig Brubaker, participated in the development of the COBRA tax shelter with others from J&G and Ernst & Young (¶¶ 38, 40-44); it describes the structure of the shelter in detail (¶¶ 45-56); the scheme that Deutsche Bank and the other participants developed to market COBRA to the Leffs and others (¶¶ 85-87); and Deutsche Bank's central role in developing the actual options

---

[16]Because of the brevity of Deutsche Bank's 9(b) arguments, we anticipate it may raise new contentions regarding Rule 9(b) (to the extent that it has any) for the first time on reply. Such an effort would, however, be improper. *Polansky v. Anderson*, No. 04 C 3526, 2006 WL 2038603, at *6 n.6 (N.D. Ill. July 19, 2006) (defendants argument for the first time on reply about purported failure to make proper conspiracy allegations was improper, but rejecting contention on its merits).

transactions themselves. (¶ 53). The Complaint further describes Deutsche Bank's critical role in giving the scheme credibility (¶¶ 90, 126, 128-29), and its discretion to select the "spot rate" for the options, and thus its the ability to decide whether the Leffs profited. (¶ 51). This fact alone must have made it clear to Deutsche Bank that the transactions were without economic substance.

The Complaint details a meeting with Daugerdas and Guerin in November 1999 to discuss COBRA. (¶ 101). There, Daugerdas explained COBRA, falsely advised that there was a reasonable chance that the transactions would result in a profit to the Leffs, and that any tax benefit would be legitimate, which Deutsche Bank knew was not the case. (¶ 103). The Complaint further details that "the Leffs relied on Defendants' advice (including specific, tax-related representations by Kevin Lynch and other employees of DB Alex. Brown's Chicago's office during telephone conversations in or around November 1999)." (¶ 107). The Leffs set forth an extensive list of misstatements and omissions that Defendants made in connection with these transactions. (¶¶ 103-07, 119, 214).

The Complaint further alleges that PICO was an outgrowth of COBRA, and was developed with Deutsche Bank's active assistance (¶¶ 57-59); it describes the complex – and economically meaningless – nature of the transactions (¶¶ 63-69); and, as with COBRA, describes the important marketing role that Deutsche Bank played as a major international bank (¶ 90). The Complaint details meetings that the Leffs had with Bricolage's principal and Deutsche Bank in New York and Philadelphia commencing April 18, 2000 (¶¶ 125-27) and the misrepresentations Deutsche Bank made to the Leffs "that the PICO strategy was a legitimate trading strategy." (¶ 129). The Leffs detail Deutsche Bank's efforts, through Kevin Lynch, to use its prior relationship with them on COBRA to convince the Leffs that they would continue to receive "the same world-class financial service" on PICO. (¶ 128). Of course, Lynch and the other Deutsche Bank participants knew that they were not providing such service, but were involved in a sham. (¶¶ 90-91, 96).

As with COBRA, the Complaint details the numerous misstatements and omissions that were made by Deutsche Bank and others in connection with PICO.  (¶¶ 90-97, 127-29, 214).

### 2.    The Detailed Fraud Allegations in the Complaint, the Great Majority of Which Deutsche Bank Ignores, Comply with Rule 9(b)

These allegations meet the requirements of 9(b).  They supply the identity of the makers of the misrepresentations (Lynch and others at Defendants), the nature of the misrepresentations and omissions (among others, the false statements regarding the legitimacy of the transactions and the proposed tax treatment for them, the legitimacy of the financial services being provided, and the omissions regarding the risks the transactions posed and the consequences of IRS audits), where the statements were made (among others, in face to face meetings in Chicago, Philadelphia and New York, in telephone calls, and in promotional and other materials), the relevant time frames in which the statements were made, and how they were made.  Rule 9(b) requires nothing more.

Deutsche Bank ignores virtually all of these allegations.  The sole exception is the conversation between the Leffs and Lynch in November 1999 in which Lynch made "specific, tax-related representations"; however Deutsche Bank asserts that the content of that communication is not sufficiently specified.  (DB Mem. 30).  That argument is pettifogging at best.  The Complaint details the misrepresentations that the Leffs received from Deutsche Bank regarding the tax treatment of the transactions, as described above.  Deutsche Bank is hardly left in the dark regarding this conversation.

Furthermore, Deutsche Bank appears to contend that the Leffs must name the Deutsche Bank employees who made the fraudulent statements on their behalf, and set forth the exact date that the statement was made.  (DB Mem. 30).  Such evidentiary allegations, however, are not required.  A plaintiff need only identify "the entity making the statement."  *Merix*, 2006 WL 1843370, at *2; *accord Hot Wax*, 1998 WL 664945, at *4 (identifying maker of misrepresentations as "Defendant Grace-Lee Products" was sufficient); *S.R. Bastien Corp. v. Riso, Inc.*, No. 96 C 6393, 1997 WL

37

102535, at *1 (N.D. Ill. Mar. 5, 1997) (allegations that "defendant and its agents" made misrepresentations sufficient); *Gelco Corp. v. Duval Motor Co.*, No. 02 C 5613, 2002 WL 31875537, at *7 (N.D. Ill. Dec. 26, 2002) (rejecting contention that "plaintiff is required to identify a natural person who made the fraudulent submission").[17]

Similarly, the time frames in the Complaint for the misstatements (some of which are very specific, *e.g.,* ¶¶ 125-27, 160) are amply sufficient. *Fischer Indus. Inc. v. Medivance Instruments, Ltd.*, No. 89 C 9082, 1992 WL 686866, at *6 (N.D. Ill. Aug. 31, 1992) ("approximate or general time frames are sufficient", citing cases); *see also Gelco*, 2002 WL 31875537, at *7 (misstatements took place "on more than a hundred occasions beginning in 1995" sufficient); *Energy Servs. Air Conditioning & Heating Co., Inc. v. Nicor, Inc.*,  No. 97 C 373, 1997 WL 790725, *9-10 (N.D. Ill. Dec. 22, 1997).

Viewed in the context of the purposes of Rule 9(b), there is no doubt that the Complaint should be sustained. *See Guar. Residential*, 305 F. Supp. 2d at 853 ("Fair notice is the most basic consideration").  Deutsche Bank is a defendant in numerous lawsuits by taxpayers arising from its extensive and undisputed participation in the tax shelters business, as well as being embroiled in class actions, at least one federal grand jury investigation, and no doubt many other proceedings.[18] For its part, J&G has admitted that "certain Jenkens attorneys developed and marketed fraudulent tax shelters, with fraudulent tax opinions".  (¶ 21).  KPMG paid $456 million to the government for its role in the scandal.  Deutsche Bank has no doubt conducted an exhaustive review, and is well aware of its role in the development, marketing and executing of these shelters.  Likewise, there can be no

---

[17] Deutsche Bank does not cite any authority to the contrary.  Although it cites *Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990) for the proposition that "allegations that lump defendants together (or, in this case, lump defendants together with non-parties)" do not satisfy Rule 9(b) (DB Mem. 30), that case actually states only the former proposition.  In fact, the prohibition against "lumping" parties together applies only in cases involving "multiple defendants and multiple injuries", *Hot Wax*, 1998 WL 664945, at *4, which this case does not.

[18] *See, e.g.,* http://www.nytimes.com/2005/09/16/business/16shelter.html?_r=1&oref=slogin; http://www.iht.com/articles/2006/05/18/business/deutsche.php; http://www.iht.com/articles/2006/03/16/business/shelter.php.

doubt it is fully aware of the role they played in the specific transactions they performed for the Leffs. To say that Deutsche Bank needs more facts to have notice of what the Leffs are claiming here is, to put it mildly, a stretch.

In sum, "[t]his is not a case where the plaintiff cries 'fraud,' and offers nothing more." *Gelco*, 2002 WL 31875537, at *7. Deutsche Bank knows exactly what this case is about and how to defend it. The Complaint's allegations are more than sufficient to meet Rule 9(b).

### 3.     The Complaint States a Valid Claim for Conspiracy to Defraud

Defendants' cursory attempt to challenge Plaintiffs' conspiracy to defraud claim (DB Mem. 14-15) is similarly baseless. Under applicable Illinois law, civil conspiracy is an actionable tort. *E.g., Adcock v. Brakegate, Ltd.*, 247 Ill. App. 3d 824, 832-33 (Ill. App. Ct. 1993). Such a claim requires: (1) a conspiracy, (2) an overt act of fraud in furtherance of the conspiracy, and (3) damages as a result of the fraud. *Id.* [19]

The Leffs allege underlying fraud claims by Daugerdas, J&G, Beer and Bricolage. The Complaint alleges that J&G, through Daugerdas, introduced COBRA to the Leffs at a meeting in November 1999 (¶¶ 100-01) and sets forth the specific misstatements and omissions that were made to the Leffs. (¶ 214, *see also* ¶¶ 160, 169). The Leffs further allege that these representations are material (¶ 215), were false when made (¶ 216), and that the Leffs, as a direct result of these representations, and unaware of their falsity, entered to the COBRA transaction (¶ 107).

---

[19] New York law is similar to Illinois, with the exception that New York requires the additional element of "a party's intentional participation in the furtherance of a plan." (DB Mem. 14). It can be inferred from the many overt actions by Defendants that they intentionally participated in furtherance of the conspiracy. *See e.g., Cleft of the Rock Found v. Wilson,* 992 F. Supp. 574 (E.D.N.Y. 1998). Thus, even under New York law, Plaintiffs have adequately pled a claim for conspiracy to defraud.

The analysis is also similar under Pennsylvania law, under which Plaintiffs' conspiracy cause of action is valid. *Smith v. Wagner*, 403 Pa. Super. 316, 322-23 (Pa. Super. Ct. 1991) (civil conspiracy requires "(1) a combination of two or more  persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage.").

Similarly, the Complaint describes the fraud perpetrated by Beer and Bricolage with respect to PICO, describing the mechanics of the transaction, and that it was void of economic substance. (¶ 63-79). The Complaint details Beer's meetings with the Leffs and the specific misrepresentations that he made there. (*E.g.,* ¶129, *see also* ¶¶212-15). As a result of Bricolage's and Deutsche Bank's joint marketing efforts, the Leffs entered into the PICO strategy (¶130) and followed Bricolage's and Defendants' directions about setting up the entities, loans, and accounts needed to execute the transaction. (¶¶132-40).

The Leffs have further pled how Deutsche Bank entered into a conspiracy with these parties, and how they acted to further the conspiracy. For example, the Complaint describes how Deutsche Bank and third parties worked together to develop COBRA and PICO. The Complaint further describes Deutsche Bank's role in developing mechanics of the foreign option exchange transaction. (¶¶ 46, 47, 53). In addition, the Leffs allege the role of each entity, including Deutsche Bank. (¶¶ 85, 90, 126). The Leffs describe how Deutsche Bank marketed the tax shelters and participated in their implementation, all of which were overt acts in furtherance of the conspiracy. Also, the Complaint describes the fee arrangement between the coconspirators. (¶¶ 54-55, 77, 82).

Thus, Plaintiffs have stated a valid claim for conspiracy to defraud. *See generally Swartz*, 2008 WL 1968948, at *12 (denying motion to dismiss conspiracy claim where allegations described defendant's role in developing, marketing, and implementing tax shelter scheme).

### 4.    *The Complaint Sets Forth Valid Claims for Aiding and Abetting Fraud*

For the same reasons, the Complaint states a claim for aiding and abetting fraud claims. The Leffs have alleged an underlying fraud and, as set forth above in connection with the Leffs' aiding and abetting breach of fiduciary duty claims (*supra* V.C.3), the Leffs have more than adequately alleged Deutsche Bank's knowing, substantial assistance in the scheme.

40

### D.    The Complaint States a Valid Claim for Negligent Misrepresentation and Negligence

Deutsche Bank relies on New York law in arguing that the Leffs' negligent misrepresentation claims should be dismissed because it did not have a "special relationship" with the Leffs.  However, under applicable Illinois law, no "special relationship" is required; instead, a plaintiff must allege "(1) a false statement of material fact; (2) carelessness or negligence in ascertaining the truth of the statement by the party making it; (3) an intention to induce the plaintiff to act; (4) action by the plaintiff in reliance on the truth of the statement; (5) damage suffered by the plaintiff as a result of its reliance; and (6) a duty on the part of the defendant to communicate accurate information."  *Interlease Aviation Investors II v. Vanguard Airlines, Inc.*, 254 F. Supp. 2d 1028, 1041 (N.D. Ill. 2003).

In this context, a defendant has a "duty to exercise reasonable care or competence in obtaining or communicating information intended to guide . . . investment decisions."  *Zurad v. Lehman Bros. Kuhn Loeb Inc.*, 757 F.2d 129, 134 (7th Cir. 1985) (financial advisor breached duty by omitting significant information); *Wheaten v. Mathews Holmquist & Assocs., Inc.*, No. 94 C 1134, 1996 WL 494245, at *18 (N.D. Ill. Aug. 28, 1996) (advisor in "business of effecting transactions in securities . . . had a duty to use reasonable care in making representations . . .").

Here, Deutsche Bank breached its duties by misrepresenting details of the "investments" and failing to disclose material facts.  Those allegations make out a negligent misrepresentation claim.  *See Chaikin v. Fid. and Guar. Life Ins. Co.*, No. 02 C 6596, 2003 WL 21003715, at *2 (N.D. Ill. May 1, 2003) (no dismissal where complaint simply alleged duty to communicate accurate information regarding financial benefits of annuity).[20]

---

[20]Deutsche Bank's citations to *Atkins Nutritionals, Inc. v. Ernst & Young LLP*, 754 N.Y.S.2d 320 (N.Y. App. Div. 2003) and *United Safety of Am., Inc. v. Consol. Edison Co. of New York*, 623 N.Y.S.2d 591 (N.Y. App. Div. 1995) where plaintiff had no relationship with defendant, or the relationship was only a services contract, are inapposite given the very different nature of the Leffs' relationship with Deutsche Bank.  (*See supra* V.B.).

The Leffs' negligent misrepresentation claim is also viable under New York law.[21]

Deutsche Bank's assertion that they had an arms-length, "conventional business relationship" (DB Mem. 12) is a gross mischaracterization.  As detailed above, the parties' relationship went far beyond arms-length, s*upra* section V.B., and Plaintiffs have thus pled a sufficiently "special relationship" under New York law.  *See Suez Equity Investors,* 250 F.3d at 103-04 (sufficient pleading where defendants "repeatedly vouched for the veracity of the allegedly deceptive information," "held themselves out as possessing-special knowledge" and knew plaintiff sought information to aid investment decision); *Hughes v. BCI Int'l Holdings, Inc.*, 452 F. Supp. 2d 290, 303-04 (S.D.N.Y. 2006) (allegation that defendant solicited plaintiff's investment and had expertise in industry and project sufficient).

Similarly, these allegations make out negligence claims under both Illinois and New York law.  *See Carl v. Galuska*, 785 F. Supp. 1283, 1290 (N.D. Ill. 1992) (duty arises from investment advisor relationship); *United Labs., Inc. v. Savaiano*, No. 06 C 1442, 2007 WL 4162808, at *7 (N.D. Ill. Nov. 19, 2007) (existence of extra-contractual duty of care adequately alleged); *Salomon Bros.,* 1996 WL 675795, at *3 (denying motion to dismiss negligence counterclaim where plaintiff alleged relationship of broker in addition to contractual relationship).[22]

### E.     The Complaint States a Valid Claim for the Illinois Consumer Fraud Act

Deutsche Bank argues that Plaintiffs' Illinois Consumer Fraud Act ("ICFA") claim is flawed because the alleged misrepresentations are future promises or opinions.  This argument fails

---

[21]Likewise, Deutsche Bank correctly states the elements for a negligent misrepresentation claim and properly notes that Pennsylvania law does not require a "special relationship" between parties in order to establish such a claim. Defs. Mem. at 11.  Therefore, Plaintiffs negligent misrepresentation claim is valid under Pennsylvania law.

[22] The analysis is also the same under Pennsylvania law.  *See Jairett v. First Montauk Sec. Corp.*, 153 F. Supp. 2d 562, 569 (E.D. Pa. 2001) (refusing to dismiss negligence claim where allegations show set of facts where defendant acting as broker and owed duty to plaintiff).

for multiple reasons.[23]  *First*, Deutsche Bank's representation that it would continue to provide

"world-class financial service" was coupled with false statements of existing facts, including

representations that PICO and COBRA were legitimate strategies with economic substance and that

the law firm opinion letters were independent.  (¶¶ 103, 107, 128, 214).  *See Zorba v. Advanced*

*Telecomms. Network, Inc.*, No. 96 C 7443, 1997 WL 222932, at *4 (N.D. Ill. Apr. 30, 1997)

(allegations sufficient where plaintiff alleged defendant made future promises of guaranteed rates

along with false statements of existing facts).  Thus, the Leffs allege more than mere future promises.

      *Second*, Deutsche Bank's misrepresentations were not, as it argues, mere expressions of

opinion.  The statements to which Deutsche Bank points – those regarding its "expertise,

capabilities, and the likely success of the Tax Strategies" (DB Mem. 19) are not merely "puffing" or

opinions.  Deutsche Bank's misrepresentations about the tax shelters pertained not only to the

overall "likely success," but also to the execution, discretion, risk, gains, losses, legitimacy, and

other qualities of the shelters.  *See also Heller Bros. Bedding, Inc. v. Leggett & Platt, Inc.*, No. 01 C

3409, 2001 WL 740514, at *2 (N.D. Ill. June 28, 2001) (IFCA cause of action properly pled where

allegations of false representations pertained to product's quality).

      *Third*, given the broad protection afforded to the ICFA, Illinois courts have found that a

"statement that would otherwise be an opinion can constitute a statement of fact if it is made in such

a way that the consumer could reasonably treat it as a statement of fact."  *Borcherding v. Anderson*

*Remodeling Co.*, 253 Ill. App. 3d 655, 661 (Ill. App. Ct. 1993) (false representations that defendants

would provide suitable services, was a competent and reputable company, and would perform work

as promised were sufficient); *see also Petri v. Gatlin*, 997 F. Supp. 956, 969 (N.D. Ill. 1997)

(defendant advertised savings on gas bills and plaintiffs reasonably could have treated statements as

---

[23]As set forth above, the Form Documents' choice of law provisions are not applicable and do not govern Plaintiffs' non-contract claims.  *Supra* Sections II.A.; *see also Birnberg*, 2003 WL 151929, at *16-17 (not dismissing ICFA claim and finding it was not governed by Massachusetts choice of law provision because claim was independent of contract).

fact).  Given Deutsche Bank's repeated assertions of skill and expertise to induce the Leffs to engage in the tax shelters, and its representations regarding the legitimacy of the shelters, it was reasonable for the Leffs to treat those misrepresentations as statements of facts, and to have relied on them.

*Finally*, Deutsche Bank fails to address the omissions alleged in the Complaint.  It is well-settled that an "omission or concealment of a material fact is actionable under the ICFA."  *Gavin v. AT&T Corp.*, 543 F. Supp. 2d 885, 909 (N.D. Ill. 2008).  The Leffs allege various instances of Defendants' failure to disclose material facts.  (¶¶ 91, 94, 104-06, 150, 156-57, 206).  Thus, the Leffs have adequately stated a claim under the ICFA.

### F.    The Complaint States a Valid Claim for Breach of Contract

Deutsche Bank's motion to dismiss the Leffs' breach of contract claim seeks to twist that claim into something it is not.

The Leffs allege a series of oral agreements under which Deutsche Bank and others "promised to deliver certain benefits to Plaintiffs, but failed to deliver the benefits promised and for which they were paid."  (¶ 228).  Thus, the crux of the Leffs' breach of contract claim has nothing to do with the Form Documents that Deutsche Bank attaches to its motion.  Rather, they are about the breach of oral agreements Plaintiffs had with Defendants *prior* to the bogus transactional formalities.  Though Defendants again attempt to use the documents to show they had not guaranteed tax benefits, such disclaimers are irrelevant.  *Supra* Section I.A.  Plaintiffs' allegation as to Deutsche Bank's promise of tax benefits is sufficient; no further detail is necessary at this stage in the litigation.  *See Specialty Moving Sys., Inc. v. Safeguard Computer Servs., Inc.*, No. 01 C 5816, 2002 WL 31178089, at *2 (N.D. Ill. Sept. 30, 2002); *Heller Bros.*, 2001 WL 740514, at *4.[24]  Therefore, Plaintiffs have sufficiently alleged a cause of action for breach of contract.

---

[24] The law is similar in New York.  *See Xpedior Creditor Trust v. Credit Suisse First Boston (USA) Inc.*, 341 F. Supp. 2d 258, 270-71 (S.D.N.Y. 2004) (rejecting argument that plaintiff must identify terms of agreement that were breached because liberal pleading standards only require pleadings give defendant notice of claims).

Also, the Leffs may plead in the alternative, which they have in the claim of breach of the duty of good faith and fair dealing.  *See M-101, LLC v. iN Demand LLC*, No. 06 Civ. 12938, 2007 WL 4258191, at *3 (S.D.N.Y. Dec. 3, 2007) (good faith and fair dealing viable since "the defendant may assert technical defenses to the breach of contract claim which would fail to defeat [the] alternative claim"); *River West Meeting Assocs., Inc. v. Avaya, Inc.*, No. 03 C 1023, 2004 WL 422683, at *2-3 (N.D. Ill Mar. 4, 2004) (breach of duty of good faith and fair dealing viable in addition to breach of contract).  Deutsche Bank had an obligation to proceed in good faith and failed to do so when they purposefully made misrepresentations and omitted material facts.  (¶¶ 229, 230).  *See Citicorp Sav. of Ill. v. Rucker*, 295 Ill. App. 3d 801, 808 (Ill. App. Ct. 1998) (duty requires party "not to injure other parties to the contract by action or omission").

## VI.    IN THE ALTERNATIVE, LEAVE TO REPLEAD SHOULD BE GRANTED

Under Federal Rule of Civil Procedure 15(a), "leave to amend a complaint shall be freely given when justice so requires."  *EEOC v. Mitsubishi Motor Mfg. of Am., Inc.*, 990 F. Supp. 1059, 1092 (C.D. Ill. 1998) (internal quotation omitted).  Thus, if the Court dismisses the Complaint in any respect, Plaintiffs respectfully request leave to amend.

## Conclusion

For all the foregoing reasons, Deutsche Bank's motion should be denied.

Dated: June 3, 2008

Respectfully submitted,

DEWEY PEGNO & KRAMARSKY LLP

By:____/s/David S. Pegno_____
David S. Pegno (*pro hac vice*)                     Patrick J. O'Brien
Wendy Reisman (*pro hac vice*)                     O'Brien & O'Brien, P.C.
220 East 42nd Street                                     55 W. Wacker Drive, Suite 900
New York, NY 10017                                   Chicago, Illinois 60601
(212) 943-9000                                           ARDC #  2081946
*Attorneys for Plaintiffs*                              *Attorneys for Plaintiffs*