# EXHIBIT A

2 of 3 DOCUMENTS

SHELDON H. SOLOW, Plaintiff, CONSECO INC. and CARMEL FIFTH, LLC, Defendants.

06-CV-5988 (BSJ)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

2008 U.S. Dist. LEXIS 9234

January 11, 2008, Decided
January 11, 2008, Filed

**SUBSEQUENT HISTORY:** Motion granted by *Solow v. Conseco, Inc.,* 2008 U.S. Dist. LEXIS 4277 (S.D.N.Y., Jan. 18, 2008)

**PRIOR HISTORY:** *Solow v. Conseco, Inc.,* 2007 U.S. Dist. LEXIS 40479 (S.D.N.Y., June 4, 2007)

**COUNSEL:** [*1] For Sheldon H. Solow, Plaintiff: Alan Levine, Daniel Mark Hibshooh, Jason Mark Koral, Lauren Rhea Fishman, LEAD ATTORNEYS, Cooley Godward Kronish LLP, New York, NY; William O'Brien, LEAD ATTORNEY, Kronish, Lieb, Weiner & Hellman, New York.

For Conseco Inc., Carmel Fifth, LLC, Defendants: Amy Christine Haywood, Reed S. Oslan, Kirkland & Ellis (IL), Chicago, IL; Matthew Frederick Dexter, Kirkland & Ellis LLP (NYC), New York, NY.

For Harry Macklowe, Macklowe Properties, Inc., Fifth Avenue 58/59 Acquisition Co., L.P., Movants: Douglas H. Flaum, LEAD ATTORNEY, Fried, Frank, Harris, Shriver & Jacobson, New York, NY.

**JUDGES:** BARBARA S. JONES, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** BARBARA S. JONES

**OPINION**

Order

**BARBARA S. JONES**

**UNITED STATES DISTRICT JUDGE**

On August 7, 2006, Plaintiff Sheldon H. Solow ("Solow" or "Plaintiff") filed a complaint (the "Complaint") alleging fraud in connection with the $ 1.4 billion sale in 2003 of the General Motors Building (the "G.M. Building" or the "Building"), located at 767 Fifth Avenue in Manhattan. Prior to the events outlined in the Complaint, defendant Conseco, Inc. ("Conseco") owned a controlling interest in the Building through its indirect subsidiary, defendant Carmel Fifth, LLC [*2] ("Carmel" or, together with Conseco, "Defendants"). Defendants have moved to dismiss the complaint with prejudice under *Federal Rule of Civil Procedure 12(b)(6)* for failure to state a claim upon which relief can be granted. For the reasons below, Defendants' motion to dismiss is GRANTED in part and DENIED in part.

**BACKGROUND**[1]

[1] This factual summary is drawn from the Complaint, the factual allegations of which are accepted as true for the purpose of deciding this motion.

The G.M. Building is a fifty-story building that occupies an entire city block in Manhattan, between Fifth and Madison Avenues and East 58th and East 59th Streets.

In 1998, Conseco, an insurance and financial services company, acquired control of the Building through a venture with Donald Trump ("Trump").[2] Compl. P 16. On December 17, 2002, Conseco filed for bankruptcy in the United States Bankruptcy Court for the Northern District of Illinois. *Id.* P 23. On March 5, 2003, Conseco submitted an application to the Bankruptcy Court for an order permitting it to sell the Building in an auction "for

Case 1:08-cv-00733    Document 32-2    Filed 06/03/2008    Page 3 of 6

Page 2
2008 U.S. Dist. LEXIS 9234, *

the best available price," with Eastdil Realty Company LLC ("Eastdil") as its agent. *Id.* PP 26-27, 33. After resolving certain [*3] disputes with Trump, Conseco moved forward with the process of selling the Building in July 2003.³ *Id.* PP 35-37.

> 2  Conseco's interest in the Building was acquired through Carmel, its indirect subsidiary.
>
> 3  Defendants note that while an application was submitted to the Bankruptcy Court regarding the sale of the Building, the application was eventually withdrawn and the sale was not conducted at the Bankruptcy Court's direction. Conseco's Reply to Pl.'s Opp. at 3 n.1.

In July 2003, Defendants, by and through Eastdil, circulated an informational memorandum regarding the Building, a Confidentiality Agreement to be executed by prospective bidders before conducting initial due diligence, and a memorandum inviting bids.⁴ The invitation to bid specified that initial bids had to be submitted to Eastdil's office before 6:00 p.m. on August 11, 2003. *Id.* P 39. After these bids were reviewed, a subset of the bidders would be selected to participate in a second and "final" round of bidding. *Id.* P 40. The second round of bidding, described in a letter dated August 13, 2003, instructed that final offers "should be submitted on August 27th, 2003, **before 5:00 p.m.**" *Id.* PP 51-52 (emphasis in original). [*4] Offers were to be submitted in sealed envelopes to be opened by Eastdil at 6:00 p.m. on August 27, 2003, in the presence of the Building's owner and legal counsel. *Id.* P 53. The August 13, 2003 letter contained a disclaimer that the Building's owner "reserves the right, in its sole and absolute discretion, to accept or reject any offer for any reason." *Id.* P 54.

> 4  In addition to the written materials, Conseco's representatives also visited prospective bidders, including Solow, to discuss the sale process. *Id.* P 43.

On July 16, 2003, Solow, through counsel, executed the Confidentiality Agreement. *Id.* P 48. On August 11, 2003, Solow's counsel submitted a timely initial bid (the "Solow Initial Bid"), offering $ 1.2 billion cash, with 20% provided as equity and a $ 20 million deposit. *Id.* PP 49-50. On August 27, 2003, Solow's counsel timely submitted a final bid (the "Solow Final Bid") for a purchase price of $ 1.4 billion, with 20% to be provided by Solow as equity and a $ 50 million deposit, also to be provided by Solow. *Id.* P 62.

According to the Complaint, Solow alleges that while its Final Bid was the "best and highest credible bid," the Building was sold to entities controlled by Harry [*5] Macklowe ("Macklowe"). According to Solow, Macklowe's bid did not comply with the process established by Conseco for the sale of the building. Solow alleges that the Macklowe bid did not comply with the rules set forth in the August 13, 2003 letter requesting final bids in several key respects: 1) Macklowe submitted his bid after the 5:00 p.m. deadline; 2) Macklowe was not required to submit a sealed bid, but was singled out by Eastdil to be brought to Eastdil's offices after the deadline to submit a bid in-person; 3) Macklowe submitted a "basic" bid of $ 1.365 billion as well as an "addendum" bid that offered to "add an additional $ 10,000,000 - $ 15,000,000" to the final bid price if the $ 1.365 billion bid was exceeded; and, 4) Macklowe's bid indicated that its financing required no further approval when in fact the financing was conditional on conducting further due diligence and on the identification of additional equity. *Id.* PP 67-76. Furthermore, Macklowe was contacted the following day, August 28, 2003, and was told that "the Building would be his if he would agree to pay a fixed price of $ 1.4 billion." *Id.* P 77.

In essence, Plaintiff now alleges that the entire bidding process [*6] was a sham designed to use Solow and other bidders as "stalking horses" to establish the price Macklowe paid. The Complaint in this matter, filed approximately three years after the transaction closed,⁵ asserts five causes of action: breach of duty to hold a fair auction (Claim I), fraud (Claim II), promissory estoppel (Claim III), unjust enrichment (Claim IV), and a declaratory judgment (Claim V) declaring that the sale to Macklowe was void as contrary to public policy. Defendants have moved to dismiss each of the five claims.

> 5  In September 2003, Solow filed an action in Delaware Chancery Court, seeking an order enjoining the sale of the property and directing that the Defendants in the present case negotiate with Solow to close the transaction with him. *Id.* P 90. That court denied Solow's request for injunctive relief, but denied Defendants' motion to dismiss the complaint. Subsequently, the Delaware Chancery Court action was dismissed without prejudice by stipulation of the parties. *Id.* P 91.

## DISCUSSION

I. Legal Standard

"In reviewing a complaint for dismissal under *Rule 12(b)(6)*, the court must accept the material facts alleged in the complaint as true and construe all reasonable [*7] inferences in the plaintiff's favor." *Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir. 1994)*. A motion to dismiss may only be granted if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Allen v. Westpoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir.*

*1991) (quoting Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957))*. "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Weisman v. Le Landais, 532 F.2d 308, 311 (2d Cir. 1976) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974))*. "The level of specificity necessary to state a claim for *Rule 12(b)(6)* purposes is governed by the Federal Rules of Civil Procedure's notice pleading principles that call for no more than 'a short and plain statement' of a plaintiff's claim." *Gregory v. Daly, 243 F.3d 687, 692 (2d Cir. 2001)*; see *Fed. R. Civ. P. 8(a)*.

II. Breach of Duty to Hold a Fair Auction, Fraud & Promissory Estoppel

Solow alleges that Defendants breached the duty to conduct a fair auction and engaged in a fraudulent scheme to mislead other potential purchasers by selecting Macklowe's [*8] bid for the Building which did not comply with the terms of the process set forth by Defendants in the July 2003 information memorandum and August 13, 2003 letter to bidders. Plaintiff alleges that, as a good faith bidder, he was damaged by expending resources and bidding for the Building, when, from the outset, Defendants intentionally misrepresented the process by which it would be sold while intending "to sell the Building in a secret deal in contravention of its own stated auction procedures." Compl. P 109. In moving to dismiss these claims, Defendants argue that, as a matter of law, no cause of action for breach of duty to conduct a fair auction [6] or fraud [7] may be established because the Confidentiality Agreement (which was sent with the July 2003 informational memorandum) and the August 13, 2003 letter both contained provisions that expressly reserved Defendants' "sole and absolute discretion" to accept or reject any offer for any reason.

> 6 Under New York law, when parties agree "to a private auction to selected potential purchasers who submitted written bids," the auction must be "conducted fairly pursuant to its terms." *Valeo Engine Cooling v. Guy F. Atkinson Co., 240 A.D.2d 176, 177, 658 N.Y.S.2d 285 (N.Y. App. Div. 1st Dep't 1997)*(citing [*9] 7 N.Y. Jur. 2d, Auctions Auctioneers, § 1). Defendants argue, in part, that because the written documents directed to Plaintiff did not expressly use the term "auction," no cause of action may lie. However, Defendants cite no case law for the proposition that an auction must be specifically labeled as such in order for Plaintiff to pursue this claim. Plaintiff asserts the process was consistently described as being one for selected potential purchasers who submitted written bids, and that the process outlined by Defendants in the written documents given to bidders did not necessarily conflict with Defendants' prior use of the term "auction." Mem. of Law in Opp. to Mot. to Dismiss at 7-8. Construing all inferences in Plaintiff's favor, the absence of the term "auction" in written documents is not sufficient at this stage in the litigation to defeat the claim.

> 7 In an action to recover damages for fraud under New York law, a plaintiff must prove a) a misrepresentation or a material omission of fact which was false and known to be false by defendant, b) made for the purpose of inducing the other party to rely upon it, c) justifiable reliance of the other party on the misrepresentation or [*10] material omission, and d) injury *Lama Holding Co. v. Smith Barney Inc., 88 N.Y.2d 413, 668 N.E.2d 1370, 1373, 646 N.Y.S.2d 76 (N.Y. 1996)*.

These documents do make clear--and Plaintiff concedes--that Defendants reserved the right to terminate discussions with any bidder, including Solow, and to exercise discretion in evaluating any valid bid. Mem. of Law in Opp. to Mot. to Dismiss at 9-10. However, Plaintiff argues, the reservation of rights could not be read to extend to permitting Defendants to effectuate a fraudulent scheme whereby a sham process was undertaken and the terms of the auction unfairly violated. Thus, at this stage in the litigation, when a court must accept all allegations in the Complaint as true and construe all reasonable inferences in Plaintiff's favor, *Hernandez, 18 F.3d at 136*, the Court finds that the Complaint adequately pleads a cause of action for failure to conduct a fair auction and fraud. [8] The reservation of rights cited by Defendants would not extend to fraud or an unfair departure from the auction rules, and, accordingly, with respect to Claim I and Claim II, Defendants' motion is denied. [9]

> 8 In moving to dismiss both Plaintiff's claims for fraud and promissory estoppel, Defendants argue [*11] that Solow could not have reasonably relied on any alleged misrepresentations because the written documents clearly reserved Conseco's sole discretion in the sales process. Mem. of Law in Supp. of Mot. to Dismiss at 10-11. However, questions of reasonable reliance "raise issues of fact that often make them unsuitable for determination on a motion to dismiss." *Spencer Trask Software, 383 F. Supp. 2d 428, 458 (S.D.N.Y. 2003)*(citing *Press v. Chem. Inv. Servs. Corp., 166 F.3d 529, 538 (2d Cir. 1999))*. While Defendants argue that a lack of reasonable reliance may be found here as a matter of law to the extent that any oral representations conflict with the written representations that were made,

Plaintiff asserts that the information given in the oral and written representations was consistent, and only Defendants' actions during the course of the sales process that were inconsistent with those representations. Thus, giving all reasonable inferences to the Plaintiff at this time, a lack of reasonable reliance has not been established with respect to Plaintiff's claims for fraud or promissory estoppel.

9  Plaintiff's claim for promissory estoppel (Claim III), challenged by Defendants on similar [*12] grounds to the claim for fraud, may also proceed at this time. Accordingly, Defendants' motion to dismiss Claim III is denied.

III. Unjust Enrichment

To state a claim for unjust enrichment under New York law, a plaintiff must allege that: (1) the defendant benefited; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution. *Kaye v. Grossman, 202 F.3d 611, 616 (2d Cir. 2000)*. In making his claim for unjust enrichment, Solow asserts that he spent substantial time and money developing bids for the purchase of the G.M. Building, securing financing, and conforming with the procedures that he asserts were not complied with. Compl. PP 122-24. As a result of his bid, Solow asserts, the ultimate price paid by Macklowe was driven up by $ 35 million, thereby benefiting Defendants unjustly. Thus, according to Solow, Defendants should be required to disgorge at least $ 35 million to him. *Id.* P 126.

Defendants move to dismiss this claim on the grounds that a contract--specifically, the Confidentiality Agreement--governs the dispute, and that Conseco has not been enriched by Solow. The Court finds that this claim should be dismissed, although based on somewhat different [*13] reasoning than that set forth by Defendants. In order to recover under a theory of unjust enrichment, a plaintiff must "prove that performance was rendered *for the defendant,* resulting in its unjust enrichment." *Carruthers v. Flaum, 388 F. Supp. 2d 360, 371 (S.D.N.Y. 2005)* (citations omitted)(emphasis in original). "[T]he mere fact that the plaintiff's activities bestowed a benefit on the defendant is insufficient to establish a cause of action for unjust enrichment." *Clark v. Daby, 300 A.D.2d 732, 732, 751 N.Y.S.2d 622 (N.Y. App. Div. 3d Dep't 2002)* (citations omitted). Here, the facts set forth in the Complaint establish that Solow prepared its bid based on its own interest in acquiring the Building and not as part of any attempt to render a service to Defendants. Thus, preparing and submitting what Plaintiff now characterizes as a "stalking horse" bid would not be sufficient to establish this cause of action. Accordingly, the Court finds that Claim IV should be dismissed.

VI. Declaratory Judgment

Plaintiff seeks a declaratory judgment declaring the sale to Macklowe to be void and contrary to public policy. Defendants argue that the request fails on the merits along with Solow's other claims, that Solow [*14] would not benefit from such a declaratory judgment as Conseco could, at its discretion, again sell the G.M. Building to a party other than Solow, and that the claim for equitable relief is barred by laches because Solow did not file the present Complaint until three years after the sale of the Building. Mem. of Law in Supp. of Mot. to Dismiss at 12-13. In response, Plaintiff argues that to void the sale would not be a "vain act" because Conseco, as a public company, "would be obligated to obtain the best possible deal" for the Building, which "might" result in Solow's purchasing it the second time around. Mem. of Law in Opp. to Defs.' Mot. to Dismiss at 17.

Apart from any findings on the merits of Plaintiff's claims at law, the Court finds that an equitable remedy in the form of a declaratory judgment is not appropriate in the present case. The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction," a district court "*may* declare the rights and other legal relations of any interested party seeking such declaration." *28 U.S.C. § 2201(a)* (emphasis added). In passing the Act, "Congress sought to place a remedial arrow in the district court's quiver; [*15] it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants." *Wilton v. Seven Falls Co., 515 U.S. 277, 288, 115 S. Ct. 2137, 132 L. Ed. 2d 214 (1995)*. While district courts typically have a "virtually unflagging obligation" to exercise their jurisdiction, *Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817, 96 S. Ct. 1236, 47 L. Ed. 2d 483 (1976)*, they "possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Wilton, 515 U.S. at 282; see also Dow Jones & Co. v. Harrods Ltd., 346 F. 3d 357, 359 (2d Cir. 2003)*.

In order to decide whether to entertain an action for a declaratory judgment, this Court must consider whether the judgment will (1) serve a useful purpose in clarifying or settling the legal issues involved; and (2) finalize the controversy and offer relief from uncertainty. *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co., 411 F.3d 384, 389 (2d Cir. 2005); Texport Oil Co. v. M/V. Amolyntos, 11 F.3d 361, 366 (2d Cir. 1993)*. [10] In the present case, the Court is not persuaded that issuing the remedy requested would settle the legal issues involved [*16] in the dispute regarding the process of selling the Building in 2003. As Defendants note and Solow concedes, even if the sale of the Building were voided, Solow would not

necessarily be selected as the buyer in any sale that followed such a decision. Thus, undoing the transaction at issue would not, in the Court's view, serve a useful purpose in resolving Plaintiff's claims flowing from participation in a process that is alleged to have been fraudulent from its inception.

> 10   The Court may also consider: "(1) whether the proposed remedy is being used merely for 'procedural fencing' or a 'race to res judicata'; (2) whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court; and (3) whether there is a better or more effective remedy." *Dow Jones, 346 F. 3d at 359-60.*

Furthermore, because Defendants entered into a contract for sale of the building in 2003 and ownership has since transferred to non-party Macklowe, no uncertainty exists in this matter regarding the legal rights of the parties that are before the Court that requires resolution via a declaratory judgment. [11] A driving purpose [*17] of the Declaratory Judgment Act is the ability "to enable litigants to narrow the issues, speed the decision, and settle the controversy before an accumulation of differences and hostility engenders a wide and general conflict involving numerous collateral issues." *12-57 Moore's Federal Practice -- Civil § 57.03*. Because this action comes years after the closing of such a complex real estate transaction, a speedy resolution that avoids an accumulation of differences can no longer be achieved. Accordingly, the Court finds that dismissal of Plaintiff's claim for a declaratory judgment is appropriate at this time. *See Wilton, 515 U.S. at 288* ("If a district court, in the sound exercise of its judgment, determines after a complaint is filed that a declaratory judgment will serve no useful purpose, it cannot be incumbent upon that court to proceed to the merits before staying or dismissing the action.").

> 11   While the fact that ownership transferred approximately three years before this suit was brought is relevant to the Court's finding that no uncertainty presently exists that would factor towards considering a declaratory judgment, such a finding is separate from any determination on the [*18] defense of laches raised by Defendants in the motion to dismiss. With respect to laches, a court may consider the defense of laches on a motion to dismiss, although courts generally do not do so because application of the laches defense involves consideration of fact issues outside the pleadings. *See United States v. Portrait of Wally, No. 99 Civ. 9940 (MBM), 2002 U.S. Dist. LEXIS 6445, (S.D.N.Y. Apr. 12, 2002)* (noting that laches analysis involves a fact-intensive inquiry into the conduct and background of both parties in order to determine the relative equities and is often not amenable to resolution on a motion to dismiss).

## CONCLUSION

For the reasons stated herein, Defendants' motion to dismiss the Complaint is DENIED with respect to Claims I-III and GRANTED with respect to Claims IV-V.

**SO ORDERED:**

/s/ Barbara S. Jones

**BARBARA S. JONES**

**UNITED STATES DISTRICT JUDGE**

Dated: New York, New York

January 11, 2008