IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
LESLIE J. LEFF and RONNIE H. LEFF,　　　　:

　　　　　　　　Plaintiffs,　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　:
　　　v.　　　　　　　　　　　　　　　　　　　:　　Case No. 08C 0733 (RMD) (AK)
　　　　　　　　　　　　　　　　　　　　　　　　:
DEUTSCHE BANK AG, and DEUTSCHE BANK　:
SECURITIES, INC., D/B/A DEUTSCHE BANK　:
ALEX. BROWN, a DIVISION OF DEUTSCHE　:
BANK SECURITIES, INC.,　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　Defendants.　　　　　　　　　:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DEUTSCHE BANK AG AND DEUTSCHE BANK SECURITIES INC.'S REPLY
MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO
DISMISS PLAINTIFFS' COMPLAINT**

Erin L. Ziaja (ID # 6278775)　　　　　　Seth C. Farber (admitted *pro hac vice*)
DEWEY & LeBOEUF LLP　　　　　　　　DEWEY & LeBOEUF LLP
Two Prudential Plaza, Suite 3700　　　　1301 Avenue of the Americas
180 North Stetson Avenue　　　　　　　New York, New York 10019-6092
Chicago, Illinois 60601　　　　　　　　Telephone:  (212) 259-8000
Telephone:  (312) 794-8000　　　　　　Facsimile:  (212) 259-6333
Facsimile:  (312) 794-8100

*Attorneys for Defendants Deutsche Bank AG and Deutsche Bank Securities Inc.*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................. iii

ARGUMENT ....................................................................................................................1

I.      THIS COURT MAY CONSIDER THE DOCUMENTS ATTACHED TO THE MOTION TO DISMISS, WHICH ARE ENFORCEABLE AND PRECLUDE PLAINTIFFS FROM ALLEGING CERTAIN ELEMENTS OF THEIR CLAIMS ..........................................................................................1

      A.      This Court May Consider Documents Attached To Deutsche Bank's Motion ................................................................................................1

      B.      Plaintiffs' Attempt To Salvage Their Claims By Asserting That The Exculpatory Clauses And Contractual Representations Are Invalid And Inapplicable Is Unavailing ..................................................................3

            1.      Plaintiffs' Argument Regarding "Willful And Wanton" Conduct Is Inapposite ....................................................................3

            2.      Plaintiffs' Contractual Representations Apply To Their Claims ................5

            3.      The Limited "Peculiar Knowledge" Exception Does Not Apply ...............7

            4.      The Exculpatory Clauses Apply To Plaintiffs PICO-Based Negligence, Negligent Misrepresentation And Breach of Contract Claims ..................................................................................9

      C.      The New York Choice Of Law Provisions Govern Plaintiffs' Claims .................10

II.     PLAINTIFFS CLAIMS ARE DEFICIENT AS A MATTER OF LAW ..........................11

      A.      Plaintiffs Do Not Sufficiently Allege A Fiduciary Relationship Or Duty To Support Their Breach Of Fiduciary Duty, Negligent Misrepresentation And Negligence Claims ...........................................................11

      B.      Plaintiffs Cannot Establish Reasonable Reliance And Thus Their Fraud And Negligent Misrepresentation Claims Fail .............................................14

      C.      Plaintiffs' Fail To Adequately Allege A Conspiracy To Defraud .........................14

      D.      Plaintiffs' Aiding And Abetting Claims Fail ........................................................15

      E.      Plaintiffs' ICFA Claim Fails ................................................................................16

i

F.      Plaintiffs Do Not – And Cannot – Allege A Breach Of "Oral Agreements" ........................................................................................17

III.    THE MAJORITY OF PLAINTIFFS' CLAIMS ARE TIME-BARRED ..........................19

A.      Pennsylvania Statute Of Limitations Law Applies To Plaintiffs' Claims ...........................................................................................19

B.      Plaintiffs' Claims Accrued Upon The Issuance Of Certain IRS Notices ..............21

C.      Plaintiffs' Claims Were Time-Barred Before Any Possible Tolling ....................23

IV.     PLAINTIFFS' FRAUD-BASED CLAIMS DO NOT SATISFY RULE 9(b)..................24

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Aetna Cas. & Surety Co. v. Aniero Concrete Co.*,
    404 F.3d 566 (2d Cir. 2005) ................................................................. 6

*Amakua Dev. LLC v. Warner*,
    411 F. Supp. 2d 941 (N.D. Ill. 2006) .................................................. 10

*American Pipe & Construction Co. v. Utah*,
    414 U.S. 538 (1974) ............................................................................ 23

*In re Ameriquest Mortgage Co. Mortgage Lending Practices Litig.*,
    MDL No. 1715, No. 05-7097, 2008 WL 630883 (N.D. Ill. Mar. 5, 2008) ............................ 2

*Atkins Nutritionals, Inc. v. Ernst & Young, LLP*,
    754 N.Y.S.2d 320 (N.Y. App. Div. 2003) ........................................... 14

*BFS Morgan Investors, LLC v. Deutsche Bank AG*,
    Court File No. 27CV05-11478, slip op. (Minn. Dist. Ct. Aug. 16, 2006) ............................ 7

*Banc of America Securities LLC v. Solow Building Co. II, LLC*,
    847 N.Y.S.2d 49 (N.Y. App. Div. 2007) ............................................... 4

*Birnberg v. Milk Street Residential Assocs. L.P.*,
    Nos. 02 C 0978, 02 C 3436, 2003 WL 151929 (N.D. Ill. Jan. 21, 2003) ............................ 16

*Bishnu C. Borah, M.D., P.C. v. Monumental Life Ins. Co.*,
    No. 04-3617, 2007 WL 1030477 (E.D. Pa. Apr. 2, 2007) ..................... 23

*Blue Chip Emerald LLC v. Allied Partners Inc.*,
    750 N.Y.S.2d 291 (N.Y. App. Div. 2002) ............................................. 9

*Borsellino v. Goldman Sachs Group, Inc.*,
    477 F.3d 502 (7th Cir. 2007) .............................................................. 24

*Borcherding v. Anderson Remodeling Co., Inc.*,
    253 Ill. App. 3d 655 (Ill. App. Ct. 1993) ............................................ 17

*Brasseur v. Speranza*,
    800 N.Y.S.2d 669 (N.Y. App. Div. 2005) ........................................... 16

*Breindel & Ferstendig v. Willis Faber & Dumas Ltd.*,
    No. 95 Civ. 7905 (SHS), 1996 WL 413727 (S.D.N.Y. July 24, 1996) ................................. 13

*Brooks v. Lehman Bros., Inc.*,
  No. 5:05CV160, slip op. (E.D. Tex. Sept. 20, 2006) ........................................................ 6, 7

*Brooks v. Lehman Bros. Inc.*,
  No. 5:05CV160, slip op. at 37 (E.D. Tex. Aug. 24, 2006)
  (Mag. Judge's Report & Recommendation),
  *adopted in Brooks v. Lehman Bros., Inc.*,
  No. 5:05CV160, slip op. (E.D. Tex. Sept. 20, 2006), ........................................................ 6

*Burdett v. Miller*,
  957 F.2d 1375 (7th Cir. 1992) ................................................................................... 12, 13

*Compania Sud-Americana de Vapores, S.A. v. IBJ Schroder Bank & Trust Co.*,
  785 F. Supp. 411 (S.D.N.Y. 1992) ................................................................................. 13

*Conwill v. Arthur Andersen LLP*,
  820 N.Y.S.2d 842 (Table), 2006 WL 1703621 (N.Y. Sup. Ct. June 21, 2006) .......... 4-5, 7, 12

*Dalrymple v. Brown*,
  701 A.2d 164 (Pa. 1997) ............................................................................................... 21

*Danann Realty Corp. v. Harris*,
  184 N.Y.S.2d 599 (N.Y. 1959) ....................................................................................... 6

*DeJohn v. .TV Corp. Int'l*,
  245 F. Supp. 2d 913 (N.D. Ill. 2003) ............................................................................... 2

*de Kwiatkowski v. Bear, Stearns & Co.*,
  306 F.3d 1293 (2d Cir. 2002) .................................................................................... 13-14

*DiLeo v. Ernst & Young*,
  901 F.2d 624 (7th Cir. 1990) ......................................................................................... 24

*DIMON Inc. v. Folium, Inc.*,
  48 F. Supp. 2d 359 (S.D.N.Y. 1999) .............................................................................. 7-8

*DOD Tech. v. Mesirow Ins. Servs., Inc.*,
  No. 1-06-3300, 2008 WL 423444 (Ill. App. Ct. Feb. 14, 2008) .......................................... 17

*Do It Best Corp. v. Passport Software, Inc.*,
  No. 01 C 7674, 2004 WL 1660814 (N.D. Ill. July 23, 2004) ............................................... 24

*Dykema v. Skoumal*,
  No. 98 C 5309, 1999 WL 417360 (N.D. Ill. June 10, 1999) ................................................ 2

*DynCorp v. GTE Corp.*,
  215 F. Supp. 2d 308 (S.D.N.Y. 2002) ............................................................................ 8, 9

*Golden v. Guar. Acceptance Capital Corp.*,
807 F. Supp. 1161 (S.D.N.Y. 1992) ................................................................. 6

*Gross v. Sweet*,
49 N.Y.2d 102 (N.Y. 1979) ...................................................................... 9, 10

*Hollinger Int'l, Inc. v. Hollinger Inc.*,
No. 04 C 0698, 2005 WL 589000 (N.D. Ill. Mar. 11, 2005) ................................ 20

*Hutton v. Deutsche Bank AG*,
541 F. Supp. 2d 1166 (D. Kan. 2008) ....................................................... 22, 23

*Joseph Victori Wines, Inc. v. Vina Santa Carolina S.A.*,
933 F. Supp. 347 (S.D.N.Y. 1996) ............................................................... 19

*Kempf v. Mitsui Plastics, Inc.*,
No. 96 Civ. 1106 (HB), 1996 WL 673812 (S.D.N.Y. Nov. 20, 1996) ................. 18-19

*King v. Deutsche Bank AG*,
No. 04-1029-HU, slip op. (D. Or. Sept. 12, 2005)
(Findings & Recommendation),
*adopted in King v. Deutsche Bank AG*, No. 04-1029,
slip op. (D. Or. Feb. 1, 2006) ..................................................................... 7

*Klamath Strategic Inv. Fund v. United States*,
440 F. Supp. 2d 608 (E.D. Tex. 2006) ........................................................... 23

*Kolbeck v. LIT Am., Inc.*,
939 F. Supp. 240 (S.D.N.Y. 1996), *aff'd*, 152 F.3d 918 (2d Cir. 1998) ............ 15-16

*Kriendler v. Chem. Waste Mgmt., Inc.*,
877 F. Supp. 1140 (N.D. Ill. 1995) ............................................................... 24

*Lagen v. Balcor Co.*,
274 Ill. App. 3d 11 (Ill. App. Ct. 1995) ...................................................... 16-17

*Lazard Freres & Co. v. Protective Life Ins. Co.*,
108 F.3d 1531 (2d Cir. 1997) ....................................................................... 8

*McCready v. eBay, Inc.*,
453 F.3d 882 (7th Cir. 2006) ........................................................................ 1

*Minch v. City of Chicago*,
486 F.3d 294 (7th Cir. 2007) ........................................................................ 2

*Miron v. BDO Seidman, L.L.P.*,
Civil Action 04-968, slip op. (E.D. Pa. Aug. 14, 2006) ...................................... 7

*Novak & Co., Inc. v. N.Y. City Housing Auth.*,
   480 N.Y.S.2d 403 (N.Y. Sup. Ct. 1984) ............................................................ 4

*Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc.*,
   468 A.2d 468 (Pa. 1983) ................................................................................. 21

*Renkas v. Sweers*,
   10 Misc. 3d 1076(A), 2005 WL 3711215 (N.Y. Sup. Ct. Nov. 7, 2005) ............ 18

*Seippel v. Sidley Austin Brown & Wood LLP*,
   399 F. Supp. 2d 283 (S.D.N.Y. 2005)............................................................... 22

*Seippel v. Jenkens & Gilchrist, P.C.*,
   341 F. Supp. 2d 363 (S.D.N.Y. 2004),
   *amended on other grounds on reconsideration*,
   No. 03 Civ. 6942 (SAS), 2004 WL 2403911 (S.D.N.Y. Oct. 26, 2004) .................7

*Sharp Int'l Corp. v. State Street Bank & Trust Co.*,
   403 F.3d 43 (2d Cir. 2005)............................................................................... 15

*Solow v. Conseco Inc.*,
   No. 06-CV-5988, 2008 U.S. Dist. LEXIS 9234 (S.D.N.Y. Jan. 11, 2008) ............ 4

*Steinbrecher v. Oswego Police Officer Dickey*,
   138 F. Supp. 2d 1103 (N.D. Ill. 2001) ............................................................... 2

*Stroll v. Epstein*,
   818 F. Supp. 640 (S.D.N.Y. 1993)..................................................................... 18

*Stutts v. De Dietrich Group*,
   No. 03-CV-4058 (ILG), 2006 WL 1867060 (E.D.N.Y. June 30, 2006)................ 16

*Superior Technical Res., Inc. v. Lawson Software, Inc.*,
   17 Misc. 3d 1137(A), 2007 WL 4291575 (N.Y. Sup. Ct. Dec. 7, 2007)................ 9

*Swartz v. Deutsche Bank*,
   No. C03-1252MJP, 2008 WL 1968948 (W.D. Wash. May 2, 2008) ............... 6, 13

*Telular Corp. v. Mentor Graphics Corp.*,
   282 F. Supp. 2d 869 (N.D. Ill. 2003) ................................................................ 20

*Thomason v. Nachtrieb*,
   888 F.2d 1202 (7th Cir. 1989) .......................................................................... 18

*United Safety of Am., Inc. v. Consol. Edison Co. of New York, Inc.*,
   623 N.Y.S.2d 591 (N.Y. App. Div. 1995) .......................................................... 14

*Williams v. Bank Leumi Trust Co. of N.Y.*,
    No. 96 Civ. 6695 (LMM), 1997 WL 289865 (S.D.N.Y. May 30, 1997)............................. 16

*Zorba v. Advanced Telecomms. Network*, *Inc.*,
    No. 96 C 7443, 1997 WL 222932 (N.D. Ill. Apr. 30, 1997) .................................................. 17

*Zurich Capital Mkts. Inc. v. Coglianese*,
    No. 03 C 7960, 2005 WL 1950653 (N.D. Ill. Aug. 12, 2005).............................................. 13

## Statutes and Rules

Fed. R. Civ. P. 9 ......................................................................................................... 14-15, 24, 25

Deutsche Bank[1] respectfully submits this reply memorandum of law in further support of its Motion to Dismiss Plaintiffs' Complaint.

## ARGUMENT

I.  **THIS COURT MAY CONSIDER THE DOCUMENTS ATTACHED TO THE MOTION TO DISMISS, WHICH ARE ENFORCEABLE AND PRECLUDE PLAINTIFFS FROM ALLEGING CERTAIN ELEMENTS OF THEIR CLAIMS**

A.    **This Court May Consider Documents Attached To Deutsche Bank's Motion**

Plaintiffs argue that this Court should not consider the Confirmations, Account Agreements, Custody Account Agreements and Representation Letters because (i) they purportedly are "not mentioned in the Complaint and are entirely irrelevant to it" and (ii) Plaintiffs are not parties to many of the agreements. Opp'n at 9-10. Plaintiffs are incorrect.

As noted in Deutsche Bank's Opening Brief, "documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim." *McCready v. eBay, Inc.*, 453 F.3d 882, 891 (7th Cir. 2006) (quotations omitted). Here, that standard is met. Although not mentioned specifically by name, the Complaint nevertheless contains numerous paragraphs that refer to Deutsche Bank's alleged role of opening and maintaining accounts – accomplished through the Account Agreements and Custody Account Agreements – and executing trades – reflected in the Confirmations.[2] For example, the Complaint contains extensive detail of the terms of the digital option trades executed with Deutsche Bank, and the Confirmations are the contracts that set forth the terms of those trades. *Compare* Compl. ¶¶ 110, 114 *with* Opening Br. Exs. 1-2. As a result, Plaintiffs' contention that "[t]he portions of the Complaint that Deutsche Bank cites . . . do not even mention the Form Documents – or any other agreements," Opp'n at 9, is mistaken. Plaintiffs cannot avoid the preclusive effect these agreements have on their claims by describing and referring to the subject matter of the Confirmations, Account Agreements, Custody Account

---

[1] Capitalized terms have the same meaning as in Deutsche Bank AG and Deutsche Bank Securities Inc.'s Memorandum of Law in Support of Their Motion to Dismiss Plaintiffs' Complaint ("Opening Brief" or "Opening Br."). Plaintiffs' Memorandum of Law in Opposition to Deutsche Bank's Motion to Dismiss the Complaint is cited as "Opposition" or "Opp'n."

[2] *See, e.g.*, Compl. ¶ 76 (alleging that Deutsche Bank's role in the PICO Strategy was to execute trades and maintain accounts, Opening Br. Exs. 5-6); *id.* ¶ 108 (discussing the Digital Options Strategy and referring to the opening of accounts with Deutsche Bank, Opening Br. Exs. 7-8, to effectuate the purchase and sale of digital options, *id.* Exs. 1-2); *id.* ¶ 135 (referring to valuations for Plaintiffs' PICO accounts, Opening Br. Exs. 5-6).

Agreements and Representation Letters but not referring to them by name or attaching them to their Complaint. *See DeJohn v. .TV Corp. Int'l*, 245 F. Supp. 2d 913, 916 n.2 (N.D. Ill. 2003) (explaining that "[t]he purpose of the exception [that allows a court to consider documents attached to a motion to dismiss] is to prevent parties from surviving a motion to dismiss by artful pleading or by failing to attach relevant documents") (quotation omitted).[3]

Similarly, the documents upon which Deutsche Bank seeks to rely are central to Plaintiffs' claims. These agreements are the documents which arose from what the Complaint alleges was the role played by Deutsche Bank in implementing their Tax Strategies – opening and maintaining accounts and executing trades. Thus, if Plaintiffs had not executed these agreements with Deutsche Bank, they would have not had any relationship with – or claims against – Deutsche Bank.[4] In addition, several of the claims make reference to the digital option trades reflected in the Confirmations and maintained in Plaintiffs' accounts. *See, e.g.*, Compl. ¶¶ 193, 214, 229 (referring to the "digital options," "foreign currency transactions" and "foreign currency options contract"); *id.* ¶¶ 190, 201, 209, 223, 237 (referring to the alleged "unnecessary investments" purchased as part of the Strategies).[5]

Finally, Plaintiffs argue that the documents may not be considered because Plaintiffs were not parties to certain agreements. *See* Opp'n at 10. Plaintiffs, however, are bound by the terms of the various agreements. As Plaintiffs implicitly acknowledge, the Account Agreements

---

[3] Because the agreements attached to Deutsche Bank's Opening Brief are referred to and thus mentioned in the Complaint, Plaintiffs reliance on *Dykema v. Skoumal*, No. 98 C 5309, 1999 WL 417360, at *2-3 (N.D. Ill. June 10, 1999), and *Steinbrecher v. Oswego Police Officer Dickey*, 138 F. Supp. 2d 1103, 1107 (N.D. Ill. 2001), is misplaced.

[4] *See Minch v. City of Chicago*, 486 F.3d 294, 300 n.3 (7th Cir. 2007) (noting that it would be proper for the court to consider a document that was neither quoted from nor referred to in the complaint where there was no question that the plaintiffs' claim rested on the document).

[5] Plaintiffs' reliance on *In re Ameriquest Mortgage Co. Mortgage Lending Practices Litigation*, MDL No. 1715, No. 05-7097, 2008 WL 630883 (N.D. Ill. Mar. 5, 2008), is unavailing. In *Ameriquest*, the defendants attached a contract to their motion to dismiss alleging that it was the "operative document governing the parties' relationships," where the plaintiffs had alleged the existence of "numerous written and oral contracts." The court stated that the attached contract was not "referred to, identified or quoted in the Third-Party Complaint" and determined that there existed a question of fact as to whether the attached document was the "solitary operative contract," which could not be resolved on a motion to dismiss. *Id.* at *2-3. Here, Plaintiffs do not argue that the documents attached to Deutsche Bank's motion are not operative or not genuine, but rather assert that they should not be considered because they were not referred to by name in the Complaint. If this were the correct standard, a plaintiff could always avoid consideration of a document on a motion to dismiss by simply omitting the title of the document from its complaint.

and PICO Representation Letters were signed by Plaintiffs in their individual capacity.  Although the remaining agreements may have been entered into by Plaintiffs' entities, they were nevertheless signed by Plaintiffs and entered into by entities that Plaintiffs created for the sole purpose of engaging in the Strategies.  *See* Compl. ¶¶ 109, 132, 139.  Had Plaintiffs not created these entities and executed these agreements, they could not have implemented the Strategies and thus would not have any claims against Deutsche Bank.  Plaintiffs therefore should not be permitted to escape the consequences stemming from the agreements they executed by claiming that they somehow are not parties to certain agreements.

> **B.      Plaintiffs' Attempt To Salvage Their Claims By Asserting That The Exculpatory Clauses And Contractual Representations Are Invalid And Inapplicable Is Unavailing**

As demonstrated in Deutsche Bank's Opening Brief, Plaintiffs entered into agreements with Deutsche Bank containing exculpatory clauses and contractual representations stating that Plaintiffs were not relying upon advice from Deutsche Bank and that Deutsche Bank was not Plaintiffs' fiduciary.  *See* Opening Br. at 8-9, 12-14.  Plaintiffs now argue that their own representations – which negate their ability to allege necessary elements of several claims – should be ignored for various reasons.  As demonstrated below, Plaintiffs' arguments fail.

> **1.      Plaintiffs' Argument Regarding "Willful And Wanton" Conduct Is Inapposite**

Plaintiffs first argue that the exculpatory clauses and contractual representations do not apply because Deutsche Bank "knowingly and intentionally created . . . and falsely marketed" "improper tax shelters" and engaged in "willful and wanton" conduct.  Opp'n at 13-14.  As an initial matter, Deutsche Bank does not argue that the exculpatory clauses contained in the PICO Representation Letters and Custody Account Agreements bar all of Plaintiffs' claims.  Rather, as demonstrated in Deutsche Bank's Opening Brief, these clauses are valid under New York law and bar Plaintiffs' PICO-based negligence, negligent misrepresentation and breach of contract claims.  *See* Opening Br. at 22-24.  As such, contrary to Plaintiffs' assertions, *see* Opp'n at 14, Deutsche Bank does not argue that these clauses apply to Plaintiffs' claims that rely upon "knowing[] and intentional[]" conduct, such as Plaintiffs' fraud claim.  Moreover, Deutsche Bank does not argue that the limitations of liability provisions immunize "willful or wanton"

misconduct.[6]  In fact, such conduct is expressly excluded from the clauses in the Custody Account Agreements.[7]  Here, however, although Plaintiffs argue that the exculpatory clauses do not apply "to the extent that the claims allege gross negligence," Opp'n at 15, the Complaint only alleges a claim for *ordinary* negligence.  *See* Compl. Count VI.  And, the few allegations that refer to "willful" conduct, *see id*. ¶¶ 189, 224, 230, are merely conclusory and thus do not prevent application of the exculpatory clauses to Plaintiffs' PICO-based negligence, negligent misrepresentation and breach of contract claims.  *See* Opening Br. at 23 n.34 (citing cases).

Plaintiffs also assert that "[t]his doctrine" applies to "the clauses that allegedly disclaim 'reasonable reliance' and a 'special relationship.'"  Opp'n at 15.  However, the cases Plaintiffs cite in support of this proposition have nothing to do with specific contractual representations such as those at issue here.  For example, both *Banc of America Securities LLC v. Solow Building Co. II, LLC*, 847 N.Y.S.2d 49 (N.Y. App. Div. 2007), and *Novak & Co., Inc. v. N.Y. City Housing Authority*, 480 N.Y.S.2d 403 (N.Y. Sup. Ct. 1984), deal with exculpatory clauses or clauses limiting consequential damages and *not* specific contractual representations like those contained in the Confirmations, Representation Letters and Custody Account Agreements that preclude Plaintiffs from establishing the elements of duty and reliance essential to their breach of fiduciary duty, negligence, negligent misrepresentation and fraud claims.  *See* Opening Br. at 8-9, 12-14.  Although not addressing an exculpatory clause, *Solow v. Conseco Inc.*, No. 06-CV-5988, 2008 U.S. Dist. LEXIS 9234, at *10-11 n.8 (S.D.N.Y. Jan. 11, 2008), involved a claim that the plaintiff could not have reasonably relied on any alleged misrepresentations because written documents clearly reserved the defendant's discretion in the sales process – *not* a claim, as here, that the plaintiff expressly stated that it was not relying upon the same representations it later alleged in support of a fraud claim.  As such, Plaintiffs' cases stand in stark contrast to those cited in Deutsche Bank's Opening Brief that make clear that specific representations such as those in the contracts Plaintiffs executed with Deutsche Bank "provide a complete defense to any claims that require a finding of representations, reliance or fiduciary duty."  *Conwill v. Arthur*

---

[6] As such, Plaintiffs' reliance on cases reciting the unremarkable proposition that exculpatory clauses that purport to absolve a party from all liability for any conduct are unenforceable, *see* Opp'n at 13-14, is misplaced.

[7] *See* Opening Br. Exs. 5-6 (limiting liability for "causes *other than* [Deutsche Bank's] gross negligence or willful misconduct or breach of an undertaking of [Deutsche Bank's] expressly stated herein") (emphasis added).

*Andersen LLP*, 820 N.Y.S.2d 842 (Table), 2006 WL 1703621, at *11 (N.Y. Sup. Ct. June 21, 2006); *see also* Opening Br. at 8-9, 12-14 (citing cases). Plaintiffs' attempt to contort these contractual representations into something they are not – exculpatory clauses – fails.

### 2. Plaintiffs' Contractual Representations Apply To Their Claims

Plaintiffs next claim that "the clauses cited by Deutsche Bank fail to reach, or at the very least are ambiguous[8] as to whether they reach, any of the conduct alleged in the complaint." Opp'n at 17. However, even a cursory review of the Complaint's allegations regarding Deutsche Bank's role in implementing Plaintiffs' Tax Strategies belies Plaintiffs' contention. As discussed repeatedly throughout Deutsche Bank's briefing, the Complaint alleges that Deutsche Bank's role in connection with both Tax Strategies was to "execute trades and maintain accounts." Compl. ¶ 76. As such, although Plaintiffs now claim that the Confirmations are narrow and limited to the digital option transactions, *see* Opp'n at 17, that is the role that Plaintiffs attribute to Deutsche Bank in connection with implementing their Digital Options Strategy.[9] Similarly, although Plaintiffs claim that the Custody Account Agreements are also "narrow in scope" and "govern very circumscribed activities by Deutsche Bank – applying only to Deutsche Bank's 'sole responsibility [] to keep and protect the Property in the Account as custodian,'" *id.* at 18, again, that is the precise role Plaintiffs allege Deutsche Bank performed in implementing their PICO Strategy.[10] Plaintiffs also claim that the PICO Representation Letters somehow do not relate to the claims alleged. *See id.* at 19. However, these agreements refer to the Strategy "proposed, organized and arranged" by Counterpoint Capital pursuant to which Plaintiffs would execute through Deutsche Bank "transactions involving foreign exchange derivatives." Opening Br. Exs. 3-4. This description mirrors the Complaint's allegations regarding the involvement of Deutsche Bank and Counterpoint Capital in Plaintiffs' PICO Strategy. *See generally* Compl. ¶¶ 131-39.[11] Accordingly, Plaintiffs' contractual representations "reach" the conduct attributed to

---

[8] Plaintiffs fail to explain how the contractual representations – which clearly indicate, among other things, that Deutsche Bank was not acting as Plaintiffs' advisor or fiduciary and that Plaintiffs were not entering into the Strategies in reliance on any guarantee or representation regarding expected tax consequences, *see generally* Opening Br. at 2-5 – are "ambiguous."

[9] *See* Compl. ¶ 108 (alleging that Plaintiffs "opened accounts with [Deutsche Bank] *to effectuate the purchase and sale of digital options*") (emphasis added).

[10] *See* Compl. ¶ 76 (alleging that "Deutsche Bank was engaged to hold the custodial account for the S corporation").

[11] Plaintiffs also contend that Deutsche Bank cannot rely upon the Representation Letters

Deutsche Bank, and this Court may therefore give effect to the parties' intentions in entering into these agreements and grant Deutsche Bank's Motion to Dismiss.

Plaintiffs' reliance on other "tax shelter cases" that denied motions to dismiss based on contractual representations is misplaced.  In contrast to the vast majority of cases cited by Deutsche Bank, *see* Opening Br. at 9 n.9, 15 n.12, *Swartz v. Deutsche Bank*, No. C03-1252MJP, 2008 WL 1968948 (W.D. Wash. May 2, 2008), and *Brooks v. Lehman Brothers, Inc.*, No. 5:05CV160, slip op. (E.D. Tex. Sept. 20, 2006), address different, more limited, contractual representations than those at issue here.  For example, *Swartz* involved agreements with the plaintiff's investment advisor containing representations that "prospective investors 'should consult their own tax advisers,'" and that "the signing member has had an opportunity to question the Managing Member and that the signer has sufficient experience to 'evaluate the merits and risks' involved."  *Swartz*, 2008 WL 1968948, at *14.  In addition, the court was applying Washington state law which holds that "whether a plaintiff justifiably relied on a party's misrepresentation is an issue of fact which requires consideration of the surrounding circumstances," *id.*, and thus appears to contrast New York law upholding contractual representations of the kind Plaintiffs executed here.  *See* Opening Br. at 13-14.  *Brooks* is similarly inapposite because the contractual representations there differ from those at issue here and explicitly state that they "do 'not constitute a release with respect to the acts or omissions of [defendant] in connection with the execution of the Transactions.'"  *Brooks v. Lehman Bros. Inc.*, No. 5:05CV160, slip op. at 37 (E.D. Tex. Aug. 24, 2006) (Mag. Judge's Report & Recommendation), Ex. 1, *adopted in Brooks v. Lehman Bros., Inc.*, No. 5:05CV160, slip op. (E.D. Tex. Sept. 20, 2006).  Moreover, although the court was not ultimately convinced that the

---

because the agreements were "obtained by the very deception for which the Leffs sue." Opp'n at 19.  Even if a plaintiff particularly alleges fraudulent inducement, a contractual representation is effective and precludes a finding of fraudulent inducement and reasonable reliance unless the provision itself was procured by fraud.  *See Danann Realty Corp. v. Harris*, 184 N.Y.S.2d 599, 603 (N.Y. 1959).  Where a contracting party disclaims reliance upon specified representations, the party cannot later claim it was fraudulently induced to enter into the contract in reliance thereon.  *See Aetna Cas. & Surety Co. v. Aniero Concrete Co.*, 404 F.3d 566, 576 (2d Cir. 2005).  Because the contractual representations are sufficiently specific to preclude Plaintiffs' claims, and Plaintiffs have not alleged facts that would render the provisions ineffective, Plaintiffs are bound by their express representations.  Moreover, the case upon which Plaintiffs rely does not support their argument that the representations should be ignored.  *Golden v. Guaranty Acceptance Capital Corp.*, 807 F. Supp. 1161, 1164 and n.2 (S.D.N.Y. 1992), involved only the application of the parol evidence rule to a general merger clause, and not to specific representations of non-reliance such as those at issue here.

language encompassed the plaintiffs' claims, *see* Opp'n Ex. B at 4, as discussed above, Plaintiffs' contractual representations here clearly encompass their claims as alleged. Given these substantive differences, the *Brooks* court's determination regarding the scope of the provisions has no bearing on whether the contractual representations in this case are valid and binding. Finally, although *Miron v. BDO Seidman, L.L.P.*, Civil Action 04-968, slip op. (E.D. Pa. Aug. 14, 2006), involved similar contractual representations as those in Plaintiffs' Confirmations, the opinion lacks the detailed analysis contained in other cases considering these same provisions and simply holds that that the disclaimers would not be enforced on a motion to dismiss because the plaintiffs might be able to allege facts under which the confirmations were "invalid or inapplicable." *Miron*, slip op. at 2 n.2. Plaintiffs here, however, have not done so.[12]

### 3. The Limited "Peculiar Knowledge" Exception Does Not Apply

Plaintiffs next argue that even though they represented that they were not relying on Deutsche Bank when they engaged in the Strategies, they nevertheless should have the right to sue for fraud now because they were misled by misrepresentations that were allegedly "peculiarly within the [Defendants'] knowledge." Opp'n at 20. However, the "peculiar knowledge" exception does not apply.

First, the "peculiar knowledge" exception generally applies only in cases of "undetectable fraud" which a party cannot, despite diligent efforts, practically discover. And, "the more sophisticated the buyer, the less accessible must be the information to be considered within the seller's peculiar knowledge." *DIMON Inc. v. Folium, Inc.*, 48 F. Supp. 2d 359, 368, 369 n.55 (S.D.N.Y. 1999) (cited by Plaintiffs) (involving a "carefully masked accounting scheme" which went undetected even by the company's public auditors and therefore there was nothing the

---

[12] Plaintiffs' attempt to distinguish certain cases dismissing similar claims based on similar contractual representations is unavailing. Contrary to Plaintiffs' unsupported assertions, *Seippel v. Jenkens & Gilchrist, P.C.*, 341 F. Supp. 2d 363 (S.D.N.Y. 2004), and *Conwill v. Arthur Andersen LLP*, 820 N.Y.S.2d 842 (Table), 2006 WL 1703621, at *11 (N.Y. Sup. Ct. June 21, 2006), do not involve "wrongful conduct that is much narrower in scope than that alleged here," Opp'n at 19, but rather allegations that are substantially similar to those presented here. *See, e.g., Seippel*, 341 F. Supp. 2d at 367; *Conwill*, 2006 WL 1703621, at *2-6. Similarly, Plaintiffs' characterization of *King v. Deutsche Bank AG*, No. 04-1029-HU, slip op. (D. Or. Sept. 12, 2005), *see* Opp'n at 19-20, is incorrect. *King* found the fraud claim deficient *both* because the contractual representations in the digital option confirmations precluded a finding of reliance *and* because the claim failed to satisfy Rule 9(b). *See King*, slip op. at 23-26. Finally, *BFS Morgan Investors, LLC v. Deutsche Bank AG*, Court File No. 27CV05-11478, slip op. (Minn. Dist. Ct. Aug. 16, 2006), applied New York – not Minnesota – substantive law. *See id*. at 3.

buyer could practically do to investigate the statements made to it and discover the fraud). The facts here are a far cry from *DIMON*, as the risks of Plaintiffs' Tax Strategies were not concealed but rather plainly disclosed. For example, Plaintiffs – who are sophisticated businessmen – were allegedly told in connection with the Strategies that, among other things, (i) there was a chance of an IRS audit but (ii) it was "highly unlikely that an IRS auditor would see through the complexity of the tax shelter." Compl. ¶ 87. Having allegedly been told that their ability to succeed in their Tax Strategies depended on the IRS's not being able to understand the Strategies, Plaintiffs are in no position to argue that they were defrauded because the IRS did in fact figure out those Strategies and has rejected their tax positions.

Second, courts are loathe to apply the "peculiar knowledge" exception where, like here, a plaintiff explicitly agrees to limit the types of information it would receive from a party. *See, e.g., Dyncorp v. GTE Corp.*, 215 F. Supp. 2d 308, 322 (S.D.N.Y. 2002) ("Sophisticated parties to major transactions cannot avoid their disclaimers by complaining that they received less than all information, for they could have negotiated for fuller information or more complete warranties."). Plaintiffs agreed to explicit limitations on the types of information they were receiving from Deutsche Bank. In particular, they represented that they received neither investment advice nor a guarantee from Deutsche Bank as to the expected results of the transactions, including the financial, regulatory, accounting or tax consequences. *See* Opening Br. at 2-5. If Plaintiffs desired additional information or warranties from Deutsche Bank, they could have negotiated for them. Plaintiffs, however, chose not to do so.[13] Instead, they accepted the contractual limitations and sat quietly until years later when they were audited by the IRS. Only then did they claim that Deutsche Bank did in fact give the very advice that Plaintiffs had earlier represented they did not receive – namely, assurances regarding the tax benefits of the Strategies. *See* Compl. ¶¶ 3, 87, 103. This Court should reject Plaintiffs' attempt to now "rewrite the allocations of risks, rights and obligations agreed to by the parties."

---

[13] Indeed, if "a party has been put on notice of the existence of material facts which have not been documented and he nevertheless proceeds with a transaction without securing the available documentation or inserting appropriate language in the agreement for his protection, he may truly be said to have willingly assumed the business risk that the facts may not be as represented." *Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531, 1543 (2d Cir. 1997) (emphasis omitted).

*Dyncorp*, 215 F. Supp. 2d at 323.[14]

### 4.    The Exculpatory Clauses Apply To Plaintiffs PICO-Based Negligence, Negligent Misrepresentation And Breach of Contract Claims

Finally, Plaintiffs argue that they should not be held to the limitation of liability provisions they executed in the PICO Representation Letters and Custody Account Agreements because the clauses purportedly do not cover the types of damages Plaintiffs have allegedly suffered.  *See* Opp'n at 21-22.[15]  This, too, is incorrect.  Under New York law, unambiguous contractual clauses absolving a party for liability from its own ordinary negligence – such as the clauses here – are enforceable.  *See* Opening Br. at 22.

Relying on *Gross v. Sweet*, 49 N.Y.2d 102 (N.Y. 1979), Plaintiffs argue that the limitations of liability are invalid because they were intended to cover only "ordinary losses arising out of non-negligent or otherwise good-faith conduct" and do not "express an intention to limit liability for enhanced exposure to injury outside of that which would ordinarily and inevitably occur in executing the transaction."  Opp'n at 22 (internal quotations omitted).  Yet, the text of the provisions makes clear that they seek to cover precisely the damages that Plaintiffs seek here, *i.e.*, damages stemming from the IRS's decision to challenge the Strategy.  For example, the Representation Letters state that Deutsche Bank would not be liable for "any losses, liabilities, costs, expenses or other amounts arising out of the failure of the Strategies or any Transaction to achieve your legal, regulatory, business, investments, financial, accounting, tax or

---

[14]  Plaintiffs' cases do not compel a different result.  *Blue Chip Emerald LLC v. Allied Partners Inc.*, 750 N.Y.S.2d 291 (N.Y. App. Div. 2002), stands for the unremarkable position that fiduciaries (in that case, managing co-venturers) cannot use contractual disclaimers to avoid their duties.  *See id.* at 295 ("even if the disclaimers . . . would have negated any allegation of reliance on the . . . Defendants by a party to whom they owed no fiduciary duty, such disclaimers must be deemed ineffective, on this motion addressed to the pleadings, as against [the plaintiffs], to whom the . . . Defendants did owe such a duty") (internal citations omitted).  Because Deutsche Bank was not Plaintiffs' fiduciary, *see infra* Section II.A., reliance on *Blue Chip* is misplaced.  *Superior Technical Resources, Inc. v. Lawson Software, Inc.*, 17 Misc. 3d 1137(A), 2007 WL 4291575 (N.Y. Sup. Ct. Dec. 7, 2007), involved a generic integration clause and, unlike here, the "wording of the clause also [did] not relate specifically to the misrepresentations purportedly made" to the complaining party.  *See id.* at *11.  Therefore, the case has no application here.

[15]  Although Plaintiffs state that "Deutsche Bank's reliance on the limitation of liability provisions in the Form Letters and Confirmation Agreements is also misplaced," Opp'n at 21, Deutsche Bank has not relied upon any limitation of liability provisions in the Confirmations.  Rather, and as Plaintiffs seem to recognize elsewhere, *see* Opp'n at 22 n.6, the only documents containing exculpatory clauses relate to the PICO Strategy.  The effect of the non-reliance provisions in the Confirmations and other PICO and Digital Options documents, however, is discussed elsewhere and is distinct from this discussion of the limitation of liability provisions.

other objectives." Opening Br. Exs. 3-4. Thus, the intention of the parties is expressed in "unmistakable language" as required by New York law. *Sweet*, 49 N.Y.2d at 107. In addition, the language of this clause is more specific than the broadly worded *Sweet* clause that Plaintiffs argue has some bearing on the arguments before this Court.[16] Accordingly, this Court should give effect to the exculpatory clauses and bar Plaintiffs' PICO-based negligence, negligent misrepresentation and breach of contract claims.

### C.    The New York Choice Of Law Provisions Govern Plaintiffs' Claims

Plaintiffs seek to avoid the contractual choice of law provisions by arguing that their tort claims are not dependent on the agreements because they do not "turn on the construction or interpretation" of the agreements. Opp'n at 11. However, in determining whether a tort claim is dependent upon a contract, courts examine not only whether "the claim alleges a wrong based on the construction and interpretation of the contract," but also whether "the tort claim is closely related to the parties' contractual relationship; or . . . the tort claim could not exist without the contract." *Amakua Dev. LLC v. Warner*, 411 F. Supp. 2d 941, 955 (N.D. Ill. 2006). Plaintiffs ignore these other bases in their Opposition.

Here, Plaintiffs clearly allege that the tort claims are "closely related to the parties' contractual relationship." Plaintiffs' claims arise out of their relationship with Deutsche Bank, which relationship was governed by the Confirmations, Account Agreements and Custody Account Agreements containing the New York choice of law provisions.[17] In addition, as demonstrated in Deutsche Bank's Opening Brief and above, Plaintiffs' tort claims refer to the digital option trades reflected in the Confirmations, which in turn were held in the accounts opened pursuant to the Account Agreements.[18] Similarly, the tort claims could not exist without

---

[16] *See Sweet*, 49 N.Y.2d at 109 ("I, the undersigned, hereby, and by these covenants, do waive any and all claims that I, my heirs and/or assignees may have against Nathaniel Sweet, the Stormville Parachute Center, the Jumpmaster and the Pilot who shall operate the aircraft when used for the purpose of parachute jumping for any personal injuries or property damage that I may sustain or which may arise out of my learning, practicing or actually jumping from an aircraft. I also assume full responsibility for any damage that I may do or cause while participating in this sport.").

[17] *See, e.g.*, Compl. ¶¶ 76, 108 (alleging that Deutsche Bank's role in the Strategies was to execute trades and maintain accounts).

[18] *See* Opening Br. at 6. For example, in support of Plaintiffs' fraud claim, the Complaint alleges that the purported false representations include that "the foreign currency transactions [reflected in the Confirmations] would result in capital loss and/or ordinary loss" and "the Leffs had an opportunity to make a profit on the transactions [reflected in the Confirmations]." Compl. ¶ 214;

the Confirmations, Account Agreements and Custody Account Agreements.  If Plaintiffs did not execute these agreements with Deutsche Bank as part of the Strategies, they would not have opened the accounts necessary to implement the Strategies or engaged in the transactions as part of the Strategies, and thus would not have had any relationship with – or claims against – Deutsche Bank.  Accordingly, the New York choice of law provisions Plaintiffs agreed to upon entering into the Strategies apply to all of Plaintiffs' claims.  *See* Opening Br. at 7 n.5.[19]

## II.    PLAINTIFFS CLAIMS ARE DEFICIENT AS A MATTER OF LAW

### A.    Plaintiffs Do Not Sufficiently Allege A Fiduciary Relationship Or Duty To Support Their Breach Of Fiduciary Duty, Negligent Misrepresentation And Negligence Claims

Notwithstanding the valid contractual representations that establish that Deutsche Bank did not owe Plaintiffs a fiduciary or other duty and that the parties did not have a special relationship, *see* Opening Br. at 8-9, 12, *supra* Section I.B., Plaintiffs seek to impose broad duties upon Deutsche Bank by claiming that (i) Deutsche Bank was involved in the design, development and marketing of the Strategies, (ii) Deutsche Bank "solicit[ed]" Plaintiffs' trust in matters that Deutsche Bank represented to be "an expert," and (iii) Deutsche Bank "heavily influenced and dominated the transactions, and had superior knowledge about the schemes." Opp'n at 30-31.  However, none of these allegations is sufficient to transform the arms-length relationship between Plaintiffs and Deutsche Bank into a fiduciary one.[20]

First, Plaintiffs' allegations regarding any purported role by Deutsche Bank in the design and development of the Tax Strategies simply have no bearing on whether or not Deutsche Bank and Plaintiffs had a fiduciary or special relationship.  Plaintiffs offer no basis for this Court to

*see also id.* ¶ 193.

[19] Contrary to Plaintiffs' assertion, it is not Deutsche Bank's "theory" that "a choice of law provision would always govern tort claims as long as a contract was created at some point between the parties that governed some part of their relationship."  Opp'n at 12.  Here, the Complaint alleges that the agreements containing the New York choice of law provisions are directly related to the role purportedly played by Deutsche Bank and the wrongdoing alleged in support of Plaintiffs' various tort claims refers to the contracts.  As such, Plaintiffs' tort claims are dependent on the contracts containing the New York choice of law provisions.

[20] Plaintiffs' contention that whether a fiduciary relationship exists is generally not subject to determination on a motion to dismiss, *see* Opp'n at 29, is inapposite.  As can be seen from the numerous cases cited by Deutsche Bank dismissing similar breach of fiduciary duty claims asserted against Deutsche Bank stemming from these and other tax strategies, *see* Opening Br. at 9 n.9, 12 n.15, if a plaintiff has pled allegations that patently fail to establish a special relationship or duty, a court need not wait to dismiss such defective claims.

conclude that merely designing and later selling a financial product converts an arms-length business relationship between a buyer and seller into a fiduciary one.[21]  Moreover, although Plaintiffs refer to allegations that Deutsche Bank "helped solicit them," Opp'n at 30, Plaintiffs ignore their allegations that (i) they were in fact first approached by others regarding the Digital Options Strategy after having previously engaged in yet another tax transaction, *see* Compl. ¶¶ 98, 100-02, and (ii) they themselves sought out a tax strategy in approaching Bricolage in 2000, and only then were Plaintiffs introduced to the PICO Strategy, *see id.* ¶¶ 124-25.  Such allegations undermine any claim by Plaintiffs now that they were unsophisticated novices duped by Deutsche Bank and the other alleged conspirators.[22]

Second, Plaintiffs' claim that a fiduciary relationship was created because Deutsche Bank solicited Plaintiffs' trust in matters in which Deutsche Bank represented itself to be an expert is similarly lacking in merit.  As a case upon which Plaintiffs rely explains:[23]

> [w]e have emphasized knowledge and expertise but we do not mean to suggest that every expert is automatically a fiduciary.  That is not the law in Illinois or anywhere else.  A fiduciary relation arises only if "one person has reposed trust and confidence in another who thereby gains influence and superiority over the other."

*Burdett v. Miller*, 957 F.2d 1375, 1381 (7th Cir. 1992) (citation omitted).  *Burdett* explains that one source of such "ascendancy" is that "the agent has (or claims to have) expert knowledge the deployment of which the principal cannot monitor."  *Id.*  Although present in *Burdett*, where the plaintiff was an "inexperienced and unsophisticated" investor with whom the defendant cultivated a business and social relationship over several years, *id.*, the same is not true here, where Plaintiffs were only introduced to Deutsche Bank in connection with the Strategies, could have monitored the movement of foreign currencies and, as discussed above, *see supra* Section

---

[21] *See Conwill*, 2006 WL 1703621, at *11 ("an arm's length transaction with a large financial institution acting as the counterparty on an option transaction, will not generally give rise to a fiduciary duty unless one is created by agreement, and the mere assertion of a fiduciary duty in the complaint does not create one without a factual basis from which to infer its existence.") (internal citations omitted).

[22] In addition, although Plaintiffs refer to allegations regarding Deutsche Bank's role and the discretion vested in Deutsche Bank in the transactions that formed a part of the overall Strategies, Plaintiffs fail to explain how any alleged conduct by Deutsche Bank deceived them. For example, although the Confirmations did vest Deutsche Bank with discretion, that discretion was expressly disclosed in the Confirmations, *see* Opening Br. Exs. 1-2, and, more importantly, Plaintiffs fail to allege that Deutsche Bank somehow abused that discretion to deprive them of a payout to which they otherwise would have been entitled.

[23] Although, for the reasons discussed above, Illinois law does not apply here, it appears similar to New York law and Plaintiffs' claims would thus still fail even under Illinois law.

I.B.3., were made aware of the risks of the Strategies at their outset.[24]  Moreover, clearly Plaintiffs – who repeatedly engaged in a series of complex tax strategies over several years to claim over $50 million in tax losses in reliance on advice from tax and legal advisors who either approached Plaintiffs or were affirmatively sought out by Plaintiffs – are not the same "inexperienced and unsophisticated" investor seeking tax advice on $200,000 in income present in *Burdett*. *Id*. at 1379.[25]

Finally, although Plaintiffs assert that Deutsche Bank assumed broad duties because it "heavily influenced and dominated the transactions, and had superior knowledge about the schemes," Opp'n at 31, this assertion is unsupported by the Complaint.  Rather than "dominating" the Strategies, the only role the Complaint alleges that Deutsche Bank assumed in Plaintiffs' implementation of the Strategies was to open and maintain accounts and execute trades.  *See* Compl. ¶¶ 76, 108.  As such, the only "duties" inherent in the parties' relationship are those imposed in an ordinary broker-customer relationship.  As courts have routinely held:

> it is uncontested that a broker ordinarily has no duty to monitor a nondiscretionary
> account, or to give advice to such a customer on an ongoing basis.  The broker's

---

[24] Plaintiffs' reliance on *Zurich Capital Markets Inc. v. Coglianese*, No. 03 C 7960, 2005 WL 1950653 (N.D. Ill. Aug. 12, 2005), is similarly misplaced.  After noting that "status as an investment advisor does not place one under a fiduciary duty to one's clients," the *Zurich* court nevertheless found a fiduciary duty present where, among other things, the plaintiffs alleged that they were forced to place trust and confidence in defendants because certain defendants "were not required to, and in fact did not, disclose the underlying investments made by them on behalf of" the plaintiff and certain defendants "had unsupervised control over [the plaintiff's] investment capital and [the plaintiff] could not have even attempted to obtain any knowledge of, or control over, their activities on its behalf."  *Id*. at *11.  Similarly, although Plaintiffs incorrectly claim that a court "recently rejected Deutsche Bank's efforts to dismiss a taxpayer's breach of fiduciary duty claim" in *Swartz v. Deutsche Bank*, No. C03-1252MJP, 2008 WL 1968948 (W.D. Wash. May 2, 2008), Opp'n at 32, that opinion addresses motions made by defendants other than Deutsche Bank.  In finding that the plaintiff sufficiently alleged a fiduciary relationship against one defendant, the court relied upon an agreement that, among other things, granted that defendant "overall management and control of the business and affairs" of the plaintiff's company.  *See Swartz*, 2008 WL 1968948, at *15.  Nowhere do Plaintiffs allege that Deutsche Bank was granted such widespread control over their affairs as that present in *Zurich* and *Swartz*.

[25] In addition, although, as indicated in *Burdett*, a fiduciary relationship may arise in certain circumstances where "trust or confidence [is] reposed by one person in the integrity and fidelity of another," *Compania Sud-Americana de Vapores, S.A. v. IBJ Schroder Bank & Trust Co.*, 785 F. Supp. 411, 425 (S.D.N.Y. 1992), that trust and confidence must be accepted by the other party and must be reposed justifiably, *see Breindel & Ferstendig v. Willis Faber & Dumas Ltd.*, No. 95 Civ. 7905 (SHS), 1996 WL 413727, at *6 (S.D.N.Y. July 24, 1996).  Here, not only was there no justifiable reliance, there was no acceptance by Deutsche Bank.  To the contrary, Deutsche Bank insisted that Plaintiffs provide contractual representations that Deutsche Bank was not acting as their advisor or fiduciary.  *See* Opening Br. at 8-9, 12.

duties ordinarily end after each transaction is done, and thus do not include a duty
to offer unsolicited information, advice, or warnings concerning the customer's
investments.

*de Kwiatkowski v. Bear, Stearns & Co.,* 306 F.3d 1293, 1302 (2d Cir. 2002).  Here, Plaintiffs do

not allege that Deutsche Bank breached any of these limited duties in connection with the trades

executed as part of the Strategies and in fact acknowledge that fact in their Opposition.  *See*

Opp'n at 18.  Accordingly, the Complaint does not establish a broad fiduciary relationship

between the parties or a means to conclude that Deutsche Bank owed Plaintiffs any far-reaching

duties to advise Plaintiffs regarding their implementation of the overall Tax Strategies, and their

claims for breach of fiduciary duty, negligent misrepresentation and negligence therefore fail.[26]

**B.      Plaintiffs Cannot Establish Reasonable Reliance And Thus Their Fraud And
         Negligent Misrepresentation Claims Fail**

Plaintiffs' express written representations to Deutsche Bank in various agreements make

any alleged reliance by Plaintiffs unreasonable as a matter of law.  *See* Opening Br. at 12-14.

Although Plaintiffs argue that the Court cannot consider these contractual representations, *see*

Opp'n at 8-10, that they are unenforceable, *see id*. at 13-16, and that they are inapplicable to the

conduct alleged in the Complaint, *see id*. at 16-23, for the reasons discussed above, *see supra*

Section I.B., Plaintiffs' cannot evade their express representations.  Therefore, because Plaintiffs

cannot establish the element of reasonable reliance where written representations contradict

allegedly fraudulent oral representations, *see* Opening Br. at 26, 29 (citing cases), Plaintiffs'

fraud and negligent misrepresentation claims should be dismissed.

**C.      Plaintiffs' Fail To Adequately Allege A Conspiracy To Defraud**

In their Opposition, Plaintiffs argue that because the Complaint purports to allege

underlying fraud claims against other participants in the Tax Strategies and how Deutsche Bank

entered into a conspiracy with these parties, the conspiracy to defraud claim is not subject to

dismissal.  *See* Opp'n at 39-40.  However, as with the fraud claim asserted against Deutsche

Bank, the Complaint, among other things, fails to meet the particularity requirements of Rule

---

[26] Although Plaintiffs attempt to distinguish *Atkins Nutritionals, Inc. v. Ernst & Young, LLP*, 754
N.Y.S.2d 320, 322 (N.Y. App. Div. 2003), and *United Safety of America, Inc. v. Consolidated
Edison Co. of New York, Inc.*, 623 N.Y.S.2d 591, 593 (N.Y. App. Div. 1995), by arguing that in
those cases "plaintiff had no relationship with defendant, or the relationship was only a services
contract," Opp'n at 41 n.20, Plaintiffs fail to allege sufficiently that they had any relationship
with Deutsche Bank beyond that which was contracted for in the various account agreements and
Confirmations.  *See* Opening Br. at 9-10, 12.

9(b) in attempting to state a conspiracy claim against these other parties. *See, e.g.*, Opening Br. at 29-30; *infra* Section IV. Thus, because Plaintiffs have not adequately alleged fraud as a viable independent tort, their claim for civil conspiracy should be dismissed. *See* Opening Br. at 15.

In addition, in arguing that the Complaint alleges how Deutsche Bank acted in furtherance of the conspiracy, Plaintiffs point to their allegations that describe how Deutsche Bank purportedly worked with others to develop the Strategies, marketed the Strategies and participated in implementing the Strategies. Although these allegations may support the assertion that Deutsche Bank agreed to participate and play a role in the Strategies, they provide no basis to conclude that Deutsche Bank entered into a *corrupt* agreement to defraud Plaintiffs. The conspiracy claim should therefore be dismissed for this reason, as well.

### D.      Plaintiffs' Aiding And Abetting Claims Fail

Even if Plaintiffs adequately pled a primary violation by another alleged participant in the Tax Strategies, Plaintiffs' aiding and abetting claims fail because the Complaint does not adequately allege that Deutsche Bank "knowingly participate[d]" in the primary violation. *Sharp Int'l Corp. v. State Street Bank & Trust Co.*, 403 F.3d 43, 49-50 (2d Cir. 2005); *see also* Opening Br. at 15-17. Allegations that Deutsche Bank was a "knowing and crucial participant" in "creating" the Tax Strategies and was involved in "marketing and executing them" are not sufficient to establish the element of substantial assistance. Plaintiffs' allegations regarding Deutsche Bank's purported role in the development of the Tax Strategies predate both Plaintiffs' involvement in the Strategies and any third party's alleged breaches of fiduciary duty or fraud, and thus could not have occurred in connection with any such primary violations or proximately caused such violations. *See Kolbeck v. LIT Am., Inc.*, 939 F. Supp. 240, 249 (S.D.N.Y. 1996), *aff'd*, 152 F.3d 918 (2d Cir. 1998); *see also* Opening Br. at 16-17. In addition, contrary to Plaintiffs' assertions, the activities the Complaint alleges Deutsche Bank performed in implementing Plaintiffs' Tax Strategies – opening accounts and executing trades, *see* Compl. ¶¶ 76, 108, 110, 114 – were nothing more than typical banking services and thus do not rise to the level of substantial assistance. *See* Opening Br. at 16.

Similarly, although Plaintiffs claim that Deutsche Bank's alleged conduct was a proximate cause of their purported injuries, they fail to explain how any injury could be "a direct or reasonably foreseeable result" of any alleged conduct by Deutsche Bank when Plaintiffs expressly stated that they were not relying on any representations by Deutsche Bank – including

any representations regarding the tax consequences – in various agreements executed upon entering into the Tax Strategies. *Kolbeck*, 939 F. Supp. at 249; Opening Br. at 16-17.  Given these representations, it was not foreseeable that Plaintiffs would now claim to have relied on any alleged statements by Deutsche Bank in deciding to engage in the Strategies.

Finally, Plaintiffs incorrectly claim that they have pled Deutsche Bank's actual knowledge of the alleged underlying wrongdoing.  *See* Opp'n at 35.  In fact, the Complaint alleges that Deutsche Bank "knew or should have known" of such alleged wrongdoing. Plaintiffs do not address those cases that establish that allegations that a defendant "knew or should have known" of the alleged primary violation are insufficient to allege actual knowledge. *See Stutts v. De Dietrich Group*, No. 03-CV-4058 (ILG), 2006 WL 1867060, at *13 (E.D.N.Y. June 30, 2006); *Brasseur v. Speranza*, 800 N.Y.S.2d 669, 671 (N.Y. App. Div. 2005); *Williams v. Bank Leumi Trust Co. of N.Y.*, No. 96 Civ. 6695 (LMM), 1997 WL 289865, at *5 (S.D.N.Y. May 30, 1997).  Therefore, to the extent Plaintiffs' aiding and abetting claims are predicated on such allegations,[27] their claims fail.  *See* Opening Br. at 16.

### E.    Plaintiffs' ICFA Claim Fails

As demonstrated in Deutsche Bank's Opening Brief, Plaintiffs' ICFA claim fails for the simple reason that New York law applies pursuant to the choice of law provisions contained in various agreements Plaintiffs executed with Deutsche Bank in implementing the Strategies.  *See* Opening Br. at 17-18.[28]  In addition, even if the ICFA did apply here, Plaintiffs' claim fails because the alleged misstatements are either opinions or promises of future behavior, and thus not actionable.  *See id.* at 18-19.

Plaintiffs' assertion that Deutsche Bank's opinion or promise was coupled with "false statements of existing facts," Opp'n at 43, is insufficient to overcome this well-established principle.  Although Plaintiffs state that Deutsche Bank commented on the "economic substance" and the "risk, gain [and] losses" of the Strategies, *id.*, such commentary would be the equivalent of financial projection, and, as such, cannot serve as a predicate existing fact.  *See Lagen v.*

---

[27] *See* Compl. ¶¶ 28, 79, 97, 150, 156, 171, 186-87, 216.

[28] As demonstrated above and in Deutsche Bank's Opening Brief, the New York choice of law provisions apply because Plaintiffs' tort claims – including the ICFA claim – are closely related to the parties' contractual relationship and could not exist without the contracts.  Plaintiffs' reliance on *Birnberg v. Milk Street Residential Associates L.P.*, Nos. 02 C 0978, 02 C 3436, 2003 WL 151929 (N.D. Ill. Jan. 21, 2003), *see* Opp'n at 43 n.23, is therefore misplaced.

*Balcor Co.*, 274 Ill. App. 3d 11, 17 (Ill. App. Ct. 1995) (noting that financial projections are generally considered to be "statements of opinion, not fact."); *cf. Zorba v. Advanced Telecomms. Network, Inc.*, No. 96 C 7443, 1997 WL 222932, at *4 (N.D. Ill. Apr. 30, 1997) (finding that defendant's *affirmative guarantee* of long-distance rates and false representation of *existing* rate charges constituted fact statements).

Plaintiffs also suggest that the opinions expressed by Deutsche Bank assumed an air of fact due to the manner in which they were expressed.  However, whether a statement is one of fact or opinion depends on the circumstances under which the statements were made.  *See Borcherding v. Anderson Remodeling Co., Inc.*, 253 Ill. App. 3d 655, 661 (Ill. App. Ct. 1993). Here, the parties had well-defined agreements in which Plaintiffs expressly represented that they were not construing or relying upon any statements by Deutsche Bank as investment advice or as a recommendation to enter into the Strategies.  *See* Opening Br. Exs. 1-4.  Illinois courts have recognized that the inclusion of meaningful cautionary language can negate the materiality of any alleged misrepresentation or omission and render the reliance on any such statements unreasonable.  *See Lagen*, 274 Ill. App. 3d at 19 (finding that cautionary language included in offering documents negated the plaintiffs' ability to establish reliance necessary for fraud claim and subsequently dismissing ICFA claim because the complaint, as a matter of law, failed to allege any deceptive practice).[29]  Because the language in the parties' agreements specifically cautioned Plaintiffs against relying on Deutsche Bank's statements, Plaintiffs cannot show that their reliance was reasonable, and thus cannot establish an actionable deceptive practice. Plaintiffs' ICFA claim should therefore be dismissed.

### F.        Plaintiffs Do Not – And Cannot – Allege A Breach Of "Oral Agreements"

Plaintiffs contend for the first time in their Opposition that the Complaint states a claim for breach of contract because Plaintiffs purportedly entered into a "series of oral agreements [with] Deutsche Bank and others."[30]  Opp'n at 44.  However, as can be seen from the paragraph cited by Plaintiffs, *see id.* (citing Compl. ¶ 228), the Complaint simply does not refer to any "oral

---

[29] The same is true for omissions.  An omission can only serve as the basis of an ICFA claim if the omission was material and made with the intention of causing a party's reliance.  *See DOD Tech. v. Mesirow Ins. Servs., Inc.*, No. 1-06-3300, 2008 WL 423444, at *7 (Ill. App. Ct. Feb. 14, 2008).

[30] Plaintiffs fail to explain how Deutsche Bank could have possibly breached a purported oral agreement between Plaintiffs and "others."

agreements" between the parties.[31]  The agreements governing the relationship between Plaintiffs and Deutsche Bank are the written agreements attached to Deutsche Bank's Motion to Dismiss, which Plaintiffs now apparently concede were not breached by Deutsche Bank.  Because a party cannot amend its complaint through briefing in opposition to a motion to dismiss, *see Thomason v. Nachtrieb*, 888 F.2d 1202, 1205 (7th Cir. 1989), Plaintiffs' breach of contract claim fails.

Even if the Complaint did actually refer to "oral agreements," Plaintiffs' breach of contract claim would still fail because the written agreements governing the parties' relationship that Plaintiffs executed subsequent to the purported "oral agreements" to deliver "tax benefits" preclude a breach of contract claim premised on antecedent oral agreements.  Under the parol evidence rule, a party is prohibited from introducing evidence of an oral agreement which contradicts a subsequent writing that is complete on its face.[32]  Because Plaintiffs in their Opposition rely upon such contradictory "oral agreements," their breach of contract claim fails.

In implementing the Digital Options Strategy, Plaintiffs executed Account Agreements with Deutsche Bank containing an integration clause that states that "[t]his Agreement contains the entire understanding between us concerning the subject matter of this Agreement."  Opening Br. Exs. 7-8 ¶ 18.  The "subject matter of th[e] Agreement" is identified in the Account Agreements as Deutsche Bank's acceptance of Plaintiffs' accounts and Deutsche Bank's role as Plaintiffs' broker.  *See id*. intro ¶.  This integration clause is valid and thus precludes Plaintiffs from seeking to offer evidence of a prior oral agreement that modifies or contradicts the terms of the integrated written agreement.[33]

Plaintiffs similarly cannot rely on purported "oral agreements" to state a breach of contract claim regarding the PICO Strategy.  Although the Custody Account Agreements may not contain a formal integration clause, such a clause is not necessary for an agreement to be deemed integrated and complete.  *See Kempf*, 1996 WL 673812, at *7.  Rather, "[t]o be considered integrated, the contract must completely embody the rights and obligations of the parties," and "[a] contract which appears complete on its face is an integrated agreement as a

---

[31] The remaining paragraphs in Plaintiffs' breach of contract claim similarly fail to reference any "oral agreements."  *See* Compl. ¶¶ 226-27, 229-31.

[32] *See Kempf v. Mitsui Plastics, Inc.*, No. 96 Civ. 1106 (HB), 1996 WL 673812, at *7 (S.D.N.Y. Nov. 20, 1996).

[33] *See, e.g., Renkas v. Sweers*, 10 Misc. 3d 1076(A), 2005 WL 3711215, at *6-7 (N.Y. Sup. Ct. Nov. 7, 2005); *Stroll v. Epstein*, 818 F. Supp. 640, 645 (S.D.N.Y. 1993).

matter of law." *Id.* (quotation omitted). Plaintiffs' allege that, with respect to the PICO Strategy, "Deutsche Bank was engaged to hold the custodial account for the S corporation," Compl. ¶ 76, which is precisely what is addressed by the Custody Account Agreements; thus, these agreements are complete and embody the rights and obligations of the parties. Because in the Custody Account Agreements Plaintiffs acknowledge that Deutsche Bank is "not being engaged to render any advice with respect to any securities or other investments," Plaintiffs are engaging Deutsche Bank "to perform only the custody and execution services described herein," and Plaintiffs will not hold Deutsche Bank "responsible for making any determination regarding the appropriateness or suitability of any investment, regardless of any information [Deutsche Bank] may have regarding . . . legal or tax characteristics of any security or investment," Opening Br. Exs. 5-6 at 2, Plaintiffs cannot now seek to state a breach of contract claim based on contradictory "oral agreements" to provide tax or other benefits not provided for in the Custody Account Agreements.[34]

## III.    THE MAJORITY OF PLAINTIFFS' CLAIMS ARE TIME-BARRED

### A.    Pennsylvania Statute Of Limitations Law Applies To Plaintiffs' Claims

Plaintiffs argue that their claims arose in Illinois, and thus Illinois statute of limitations law applies, because "[t]he tortious conduct took place in Illinois, the relationship between the parties was centered in Illinois, and the development of the fraudulent tax shelter scheme was in Illinois." Opp'n at 23; *see also id.* at 12-13. Plaintiffs, however, fail to cite to their Complaint in support of this contention, *see id.* at 12-13, 23, likely because their assertion is largely unsupported by the Complaint's allegations. For example, although Plaintiffs allege that Jenkens & Gilchrist was involved in the development and marketing of the Strategies, the Complaint also lists numerous other alleged participants in the purported conspiracy, without any suggestion that such parties were located or conducted activities in Illinois.[35]

---

[34] Moreover, even if the Court finds that the Custody Account Agreements are not integrated, the parol evidence rule would nevertheless bar evidence of the alleged oral agreements that contradict the terms of the parties' written agreements. *See Joseph Victori Wines, Inc. v. Vina Santa Carolina S.A.*, 933 F. Supp. 347, 352-53 (S.D.N.Y. 1996) ("Parol evidence of an additional contract term is not admissible, even to supplement the terms of an otherwise incomplete written agreement, where the proposed additional term contradicts the terms of the written agreement.").

[35] *See* Compl. ¶ 98 (referencing Mark Klopfenstein, "a financial advisor in Atlanta"); *id.* ¶¶ 43-44, 92 (referencing Robert Coplan, Ernst & Young, KPMG and Proskauer Rose LLP, with no indication of a connection to activity in Illinois); *id.* ¶ 59 (referencing Bricolage Capital,

Similarly, although Plaintiffs argue – again, without any citation to the Complaint – that the tortious conduct took place in Illinois and the parties' relationship was purportedly centered in Illinois, these contentions are also belied by various allegations in the Complaint. For example, not only did Plaintiffs reside in Pennsylvania at the time the Strategies were implemented – and thus suffered the purported injuries in Pennsylvania – but Plaintiffs were allegedly visited in Pennsylvania in connection with the Strategies, were "sent . . . opinion letters" addressing the Strategies by Jenkens & Gilchrist and Proskauer (presumably at their residences in Pennsylvania), and relied on the advice provided to them in Pennsylvania in filing their tax returns. *See, e.g.*, Compl. ¶¶ 14-15, 119, 125, 142. As courts have explained, the place where a plaintiff acted in reliance on representations is one of the most important factors in conducting the most significant relationship analysis. *See Telular Corp. v. Mentor Graphics Corp.*, 282 F. Supp. 2d 869, 873 (N.D. Ill. 2003). In addition, the Account Agreements and Representation Letters were addressed to Plaintiffs in Pennsylvania. *See* Opening Br. Exs. 3-4, 7-8. Thus, because the Complaint alleges that Plaintiffs resided in Pennsylvania at the time the Strategies were implemented and thus were injured in Pennsylvania, were visited in Pennsylvania in connection with the marketing of the Strategies and relied on the alleged misrepresentations in Pennsylvania, the statute of limitations prescribed by Pennsylvania law applies to Plaintiffs' claims.[36] *See Telular*, 282 F. Supp. 2d at 873 (applying Illinois statute of limitations where, among other things, plaintiff acted in reliance on defendant's representations and had its principle place of business in Illinois); *see also* Opening Br. at 7 n.5, 24-29.[37]

---

Counterpoint Capital LLC, Delta Currency Trading, Andrew Beer, Samyak Veera, ASA Trading LLC and JJC Trading LLC, with no indication of any connection to activity in Illinois). Similarly, although Plaintiffs argue in conclusory fashion that "[t]he coconspirators developed and marketed various tax shelters in Illinois, which involved multiple other victims," Opp'n at 13, there is no suggestion that these unidentified "other victims" had any connection to Illinois.

[36] Because of these various connections to Pennsylvania, this case is different than *Hollinger Int'l, Inc. v. Hollinger Inc.*, No. 04 C 0698, 2005 WL 589000 (N.D. Ill. Mar. 11, 2005), a case upon which Plaintiffs rely. *See* Opp'n at 23. In *Hollinger*, although a defendant argued that the Delaware statute of limitations should apply under the Illinois Borrowing Statute, the court found that "other than the fact that [the plaintiff] is incorporated in Delaware, [the defendant] has not put forth any other reasons as to why the breach of fiduciary claim arose in Delaware." *Hollinger*, 2005 WL 589000, at *26.

[37] For the same reasons, if the Court finds that the New York choice of law provisions do not apply, Pennsylvania law governs Plaintiffs' common law claims. *See also* Opening Br. at 7 n.5.

**B.     Plaintiffs' Claims Accrued Upon The Issuance Of Certain IRS Notices**

As demonstrated in Deutsche Bank's Opening Brief, under Pennsylvania law, the exercise of reasonable diligence by Plaintiffs would have led them to discover a series of IRS Notices – including IRS Notice 2000-44, issued on August 11, 2000, and a subsequent notice purportedly addressing "PICO-like strategies," issued on September 25, 2002, Compl. ¶¶ 151, 161 – that the Complaint alleges made perfectly clear that the IRS believed that the Tax Strategies Plaintiffs implemented were not legitimate.  *See* Opening Br. at 26-27.  These IRS notices therefore commenced the statute of limitations running, and Plaintiffs' fraud, aiding and abetting fraud, conspiracy to defraud, negligent misrepresentation, breach of fiduciary duty, aiding and abetting breach of fiduciary duty and negligence claims were time-barred as of August 11, 2002 (for Plaintiffs' Digital Options claims) and September 25, 2004 (for Plaintiffs' PICO claims).  *See id.* at 26-29.  Plaintiffs, however, argue that such notices are not sufficient to commence the running of the statute of limitations and that the limitations periods only commenced running at some unspecified date after they were audited and retained other tax advisors.  *See* Opp'n at 25.  Plaintiffs' contentions lack merit.

First, although Plaintiffs claim that they only discovered the alleged wrongdoing after they were audited, Plaintiffs' actual knowledge is irrelevant.  Under Pennsylvania law, the statute of limitations begins to run from the moment the right to bring an action arises, regardless of a plaintiff's lack of actual knowledge of injury or wrongdoing.[38]   Although the statute of limitations may be tolled under the Pennsylvania discovery rule, a plaintiff seeking to invoke the discovery rule bears the burden of establishing the inability to know of the injury despite the exercise of reasonable diligence.  *See Dalrymple v. Brown*, 701 A.2d 164, 167 (Pa. 1997).  Here, Plaintiffs cannot meet that burden.  As demonstrated in Deutsche Bank's Opening Brief, IRS notices that "made clear that the tax shelters that Defendants sold to the Leffs were not legitimate" and thus would be challenged by the IRS, Compl. ¶¶ 154, 162, are certainly sufficient to place a reasonable person exercising reasonable diligence on notice of a potential injury.  *See*

---

[38]  *See Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc.*, 468 A.2d 468, 471 (Pa. 1983) ("[T]he statute of limitations begins to run as soon as the right to institute and maintain a suit arises; *lack of knowledge, mistake or misunderstanding do not toll the running of the statute of limitations*; even though a person may not discover his injury until it is too late to take advantage of the appropriate remedy, this is incident to a law arbitrarily making legal remedies contingent on mere lapse of time.") (emphasis added; internal citations omitted); Opening Br. at 25-26.

Opening Br. at 27-29.

Plaintiffs' argument that the IRS notices are not sufficient to commence the statute of limitations running relies exclusively on *Seippel v. Sidley Austin Brown & Wood LLP*, 399 F. Supp. 2d 283, 292 (S.D.N.Y. 2005). *See* Opp'n at 24-25. However, *Seippel* also noted that "press reports, complaints or other public documents" discussing IRS Notice 2000-44 may have been sufficient to trigger inquiry notice for purposes of commencing the statue of limitations on the plaintiffs' security fraud and common law fraud claims. *See Seippel*, 399 F. Supp. 2d at 292, 297. In fact, IRS Notice 2000-44 was described in news articles. *See, e.g.*, John D. McKinnon, *Treasury Moves to Squash Tax-Shelter Schemes*, Wall St. J., Aug. 11, 2000, at A2, Ex. 2; Mark Battersby, *The IRS Attacks More Tax Shelters*, Investment News, Sept. 25, 2000, at 16, Ex. 3. In addition, although *Seippel* did not consider the point, IRS Notice 2000-44 was published in the Internal Revenue Bulletin, which is the primary mechanism used by the IRS to communicate revenue rulings and procedures to the public and thus is sufficient to charge Plaintiffs with notice of its contents. *See* Opening Br. at 27 n.38. Accordingly, Plaintiffs' reliance on *Seippel* is misplaced.[39]

In addition, Plaintiffs fail to address *Hutton v. Deutsche Bank AG*, 541 F. Supp. 2d 1166 (D. Kan. 2008), which makes clear that IRS notices are precisely the sort of public documents that would permit a reasonable person to discover the injury with the use of reasonable diligence and, hence, trigger the running of the statute of limitations. In *Hutton*, the court held that all of the claims asserted against Deutsche Bank stemming from the plaintiffs' implementation of another tax strategy were time-barred. In rejecting the plaintiffs' argument that their claims were tolled by a previously-filed class action, the *Hutton* court held that "[t]he statute of limitations began to run on January 14, 2002, *when the IRS published its disclosure initiative*," and expired before the putative class action was filed. *Id*. at 1171 (emphasis added). Just as the IRS

---

[39] Although Plaintiffs also claim that, as in *Seippel*, they received assurances that Notice 2000-44 did not apply to the Tax Strategies, *see* Opp'n at 25, the allegation they cite in support of this contention does not refer to Notice 2000-44. Rather, the allegation cited refers to a conversation between Plaintiffs' advisors on August 21, 2002 – over two years after Notice 2000-44 was issued and after the statute of limitations on Plaintiffs' Digital Options claims expired – in which it was stated that the focus of the IRS scrutiny was on Jenkens & Gilchrist. *See* Compl. ¶ 160. Contrary to Plaintiffs' conclusory and self-serving assertions, such a conversation should not have provided any "assurances," particularly in light of the fact that elsewhere in the Complaint Plaintiffs make clear that they were aware from the outset that the Strategies could be challenged by the IRS. *See* Opening Br. at 27 n.39.

publication in *Hutton* made the plaintiffs' purported injuries reasonably ascertainable for purposes of commencing the statute of limitations running, so, too, are the IRS notices that Plaintiffs here claim "made clear" that the Tax Strategies they implemented were invalid sufficient to place a reasonable person exercising reasonable diligence on notice of potential injury.[40]  Accordingly, because Plaintiffs' failed to commence their action within two years of the issuance of the IRS notices, their claims for fraud, aiding and abetting fraud, conspiracy to defraud, negligent misrepresentation, breach of fiduciary duty, aiding and abetting breach of fiduciary duty and negligence are time-barred.  *See* Opening Br. at 25-29.

> **C.    Plaintiffs' Claims Were Time-Barred Before Any Possible Tolling**

Finally, Plaintiffs argue that the statute of limitations was tolled because Plaintiffs were members of two putative class actions and entered into a tolling agreement with Deutsche Bank. *See* Opp'n at 26-27.  However, because Plaintiffs' claims expired long before any of these potential tolling periods commenced, their argument once again lacks merit.

Plaintiffs claim that they were members of a "class of COBRA investors" in *Denney v. Jenkens & Gilchrist*, No. 03 Civ. 5460 (S.D.N.Y.).  Opp'n at 26.  As Plaintiffs acknowledge, however, *Denney* was filed on July 23, 2003 – nearly one year *after* the statute of limitations period expired on August 11, 2002 for Plaintiffs' Digital Options claims.  *See* Opening Br. at 28-29.  Similarly, although Plaintiffs argue that they were putative class members in *Abessinio v. Ernst & Young*, No. 06 Civ. 2777 (S.D.N.Y.), a putative class action asserting claims stemming from the PICO Strategy purportedly similar to those Plaintiffs now assert against Deutsche Bank, Plaintiffs state that the amended complaint in *Abessinio* was filed on April 10, 2006, *see* Opp'n at 26 – almost nineteen months *after* the statute of limitations period expired on September 25, 2004 for Plaintiffs' PICO claims, *see* Opening Br. at 28-29.  Because claims that are already time-barred upon the filing of a putative class action cannot be revived under the *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), doctrine,[41] Plaintiffs' tolling argument based on the *Denney* and *Abessinio* putative class actions fails.

---

[40] *See also Klamath Strategic Inv. Fund v. United States*, 440 F. Supp. 2d 608, 625 (E.D. Tex. 2006) (stating that "taxpayers who engaged in conduct similar to Plaintiffs after August 2000 [the date IRS Notice 2000-44 was issued] were on notice of the Service's issue with these transactions"); *Bishnu C. Borah, M.D., P.C. v. Monumental Life Ins. Co.*, No. 04-3617, 2007 WL 1030477, at *3, 7 (E.D. Pa. Apr. 2, 2007) (holding that the limitations period on plaintiffs' fraud-based claims began running as early as the date the IRS published a publicly available notice).

[41] *See, e.g., Hutton*, 541 F. Supp. 2d at 1171.

Similarly, as Plaintiffs acknowledge, the parties only entered into a tolling agreement on December 30, 2005 – over three years and one year *after* their Digital Options and PICO claims, respectively, were time-barred.  Because the tolling agreement expressly states that it shall not revive any claims that are barred as of the date of the agreement, *see* Opp'n Ex. F ¶ 3, Plaintiffs cannot escape dismissal of their time-barred claims by reference to the tolling agreement.

## IV.    PLAINTIFFS' FRAUD-BASED CLAIMS DO NOT SATISFY RULE 9(b)

Although Plaintiffs claim that they have pled their fraud-based claims with the requisite particularity, their attempt to demonstrate how the Complaint satisfies the heightened pleading requirements of Rule 9(b) merely underscores the Complaint's shortcomings.  For example, although Plaintiffs point to various paragraphs in their Complaint, *see* Opp'n at 35-37, these paragraphs fail, for various reasons, to provide the required "who, what, when, where, and how" of the circumstances constituting the alleged fraud.[42]  *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990).  Moreover, Plaintiffs' claim that they are not required to identify a particular Deutsche Bank speaker that made the purportedly fraudulent statement, *see* Opp'n at 37, simply ignores those cases that have made clear that such specificity is required by Rule 9(b).[43]  As such, Plaintiffs' allegations that attribute conduct to "Deutsche Bank" without identifying a particular Deutsche Bank speaker fail to meet the heighten pleading requirements for Plaintiffs' fraud-based claims.[44]

---

[42] *See, e.g.*, Compl. ¶¶ 90-91, 93-94, 105-06, 127, 214 (failing, *inter alia*, to identify person responsible for alleged misrepresentation, as well as time, date and place statement was purportedly made); *id.* ¶¶ 103, 107, 127-29 (failing, *inter alia*, to describe how alleged statement or omission was fraudulent or misleading); *id.* ¶¶ 38-86, 100-02 (failing to identify any statements made by any party to Plaintiffs); *id.* ¶¶ 71, 89, 103-04, 207, 214 (alleging misrepresentations or omissions by Deutsche Bank and/or third parties and failing to specify participant responsible).

[43] *See, e.g., Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 509 (7th Cir. 2007) (finding fraud-based conspiracy claim deficient where complaint failed, *inter alia*, to identify "which individuals at Goldman Sachs arranged the conspiracy"); *Do It Best Corp. v. Passport Software, Inc.*, No. 01 C 7674, 2004 WL 1660814, at *6 (N.D. Ill. July 23, 2004) ("Allegations that fail to identify the agents who speak for a corporate entity do not satisfy Rule 9(b)."); *Kriendler v. Chem. Waste Mgmt., Inc.*, 877 F. Supp. 1140, 1155 (N.D. Ill. 1995) ("Plaintiffs' allegations simply assert that the corporate entity spoke, misspoke or failed to speak on its own behalf.  An entity speaks through its agents.  Allegations that fail to identify the agents who speak for the entity do not satisfy Rule 9(b).").

[44] Although Plaintiffs seemingly argue that it is acceptable to lump Deutsche Bank together with other alleged participants here because they have chosen not to name other defendants, *see* Opp'n at 38 n.17, they fail to explain how such lumping would satisfy the underlying purposes of Rule 9(b) and allow Deutsche Bank to determine how Plaintiffs are claiming they were

Finally, although Plaintiffs claim that their allegation that Kevin Lynch provided "specific, tax-related representations" upon which Plaintiffs relied satisfies Rule 9(b), Plaintiffs simply cannot escape the fact that neither this allegation nor any other conclusory allegation in the Complaint actually identifies the "tax advice" that was purportedly provided by Mr. Lynch, when and how that advice was conveyed, what precisely about the unidentified advice was fraudulent and how Plaintiffs were deceived. *See* Opening Br. at 30. Accordingly, because Plaintiffs have not alleged the required "who, what, when, where, and how" of their fraud-based claims, these claims fail under Rule 9(b) and should be dismissed for this reason, as well.[45]

Dated:  June 24, 2008

DEWEY & LeBOEUF LLP

By:___/s Erin Ziaja_____

| | |
|---|---|
| Erin Ziaja | Seth C. Farber (admitted *pro hac vice*) |
| Two Prudential Plaza, Suite 3700 | DEWEY & LeBOEUF LLP |
| 180 North Stetson Avenue | 1301 Avenue of the Americas |
| Chicago, Illinois 60601 | New York, New York 10019-6092 |
| Telephone:  (312) 794-8000 | Telephone:  (212) 259-8000 |
| Facsimile:  (312) 794-8100 | Facsimile:  (212) 259-6333 |

*Attorneys for Defendants Deutsche Bank AG and Deutsche Bank Securities Inc.*

---

defrauded by *Deutsche Bank* as opposed to some other participant.

[45] Plaintiffs also seek to rely upon allegations regarding other alleged participants and materials outside the pleadings in arguing that their Complaint satisfies Rule 9(b). *See* Opp'n at 38-39. However, allegations concerning other parties' dealings with the government provide no explanation of how Plaintiffs claim they were defrauded by *Deutsche Bank* and the fact that Deutsche Bank may have been named as a defendant in other cases has nothing to do with whether Plaintiffs' claims *in this case* satisfy Rule 9(b).