# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LESLIE J. LEFF and RONNIE H. LEFF, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CASE NO.: 08-CV-733 |
| ) | |
| DEUTSCHE BANK AG, ET AL., ) | Judge Robert M. Dow, Jr. |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

On May 14, 2009, this Court issued a memorandum opinion and order [85] granting Defendants Deutsche Bank AG's and Deutsche Bank Securities Inc.'s motion [49] for a stay of this action pending arbitration of Plaintiffs' claims pursuant to Section 3 of the Federal Arbitration Act. Plaintiffs Leslie and Ronnie Leff have filed a motion [88] requesting certification of this Court's May 14, 2009 Order for immediate appeal pursuant to 28 U.S.C. § 1292(b). For the following reasons, the Court respectfully denies Plaintiffs' motion [88].

**I.     Background**

The facts as alleged by Plaintiffs in their complaint are set forth fully in the Court's May 14 Order, and are recounted only as necessary in this opinion. Plaintiffs engaged in two complex tax shelter strategies involving Deutsche Bank. The first, COBRA ("Currency Options Brings Reward Alternative"), was developed by Deutsche Bank along with the law firm of Jenkens & Gilchrist. According to Plaintiffs, those parties represented that COBRA involved legitimate transactions that had a substantial economic purpose as well as potential tax benefits and would withstand IRS scrutiny. None of the agreements involving COBRA contained an arbitration provision.

The following year, Deutsche Bank helped create a new tax shelter strategy entitled PICO ("Personal Investment Company") with other parties. Working with Defendants on PICO were Bricolage Capital LLC ("Bricolage"), and its affiliates, Counterpoint Capital, LLC ("Counterpoint") and Delta Currency Trading ("Delta"). Plaintiffs entered into certain agreements with Counterpoint and Delta that contained arbitration provisions. Subsequently, Plaintiffs were audited by the IRS regarding both COBRA and PICO, and the tax strategies were disallowed, which Plaintiffs allege caused them to incur substantial damages.

## II. Discussion

The Federal Arbitration Act ("FAA") provides that an appeal may not be taken from an interlocutory order staying litigation pending arbitration except as provided in 28 U.S.C. § 1292(b). 9 U.S.C. § 16(b); see also *Championsworld, LLC v. United States Soccer Federation, Inc.*, 2007 WL 2198366, at *4 (N.D. Ill. July 31, 2007) (noting that the parties did not cite, nor did the court's research reveal, any case "in which a court in this circuit certified the immediate appeal of an order granting a stay pending arbitration"). Section 1292(b) allows a district court to certify for immediate appeal interlocutory orders entered in civil cases that present a "controlling question of law" whose immediate resolution would "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); see also *Johnson v. Burken*, 930 F.2d 1202, 1205 (7th Cir. 1991). The Seventh Circuit has held that an "[i]nterlocutory appeal is appropriate when (1) the appeal presents a question of law; (2) it is controlling; (3) it is contestable; (4) its resolution will expedite the resolution of the litigation, and (5) the petition is filed in the district court within a reasonable time after entry of the order sought to be appealed." *Boim v. Quranic Literacy Inst.*, 291 F.3d 1000, 1007 (7th Cir. 2002). The fifth element is a non-statutory requirement created by the courts, since Section 1292(b) does not have a time

limitation. See *City of Joliet v. Mid-City Nat'l Bank*, 2008 WL 4889038, at *1 (N.D. Ill. June 13, 2008).

The Seventh Circuit has stressed "the importance of the careful application of the statutory test" to avoid wasting the time of the judges of the court of appeals and delaying the litigation in the district court. *Ahrenholz v. Board of Trustees of Univ. of Illinois*, 219 F.3d 674, 676 (7th Cir. 2000). "Unless *all* these criteria are satisfied, the district court may not and should not certify its order to us for an immediate appeal under section 1292(b)." *Id.* (emphasis in original); see also *id.* at 675 (noting that over an eighteen month period, the Seventh Circuit granted only six of thirty-one petitions for interlocutory appeal). What the court of appeals has in mind is a question of law that it "could decide quickly and cleanly without having to study the record." *Id.* at 677. In view of this guidance from the court of appeals, Section 1292(b) certification is to be awarded "sparingly" (*Asher v. Baxter Int'l, Inc.*, 505 F.3d 736, 741 (7th Cir. 2007)), and "should not be allowed merely to provide a review of difficult rulings in hard cases." *Boese v. Paramount Pictures Corp.*, 952 F. Supp. 550, 560 (N.D. Ill. 1996); see also *In re Brand Name Prescription Drugs Antitrust Litig.*, 878 F. Supp. 1078, 1081 (N.D. Ill. 1995) (noting that "[c]ertification is the exception and not the rule" and that "'permission to take an interlocutory appeal should be granted sparingly and with discrimination'") (citations omitted).

Plaintiffs request that the Court certify the following question: what is the proper standard to be applied in determining Defendants' estoppel claim? Defendants devote a large portion of their brief to arguing that the "question" Plaintiffs really seek to certify is the "arbitrability of this dispute." Defendants are, in a sense, correct, but that argument reflects a misunderstanding of the nature of Section 1292(b) certification.

3

Plaintiffs seek certification so that the Seventh Circuit can review and determine a purely legal question, namely, "the correct standard to be applied in determining Defendants' estoppel claims." Pl. Mem. at 7; Pl. Reply at 5. However, if the Court were to certify its May 14 Order, all of the issues relating to the arbitrability of the dispute would be ripe for adjudication in the court of appeals. In *Yamaha Motor Corporation, U.S.A. v. Calhoun*, the Supreme Court held that the order, not merely the certified controlling question of law, is appealable:

> In our order granting certiorari, we asked the parties to brief a preliminary question: "Under 28 U.S.C. § 1292(b), can the courts of appeals exercise jurisdiction over any question that is included within the order that contains the controlling question of law identified by the district court?" The answer to that question, we are satisfied, is yes * * * * As the text of § 1292(b) indicates, appellate jurisdiction applies to the *order* certified to the court of appeals, and is not tied to the particular question formulated by the district court. The court of appeals may not reach beyond the certified order to address other orders made in the case. But the appellate court may address any issue fairly included within the certified order because "it is the *order* that is appealable, and not the controlling question identified by the district court."

516 U.S. 199, 204-205 (1996) (emphasis in original; citations omitted). Likewise, the Seventh Circuit has recognized that "[t]he question is the reason for the interlocutory appeal, but the thing under review is the order." *Edwardsville Nat'l Bank and Trust Co. v. Marion Labs, Inc.*, 808 F.2d 648, 650 (7th Cir. 1987); see also *United Airlines, Inc. v. Mesa Airlines, Inc.*, 219 F.3d 605, 609 (7th Cir. 2000) (finding that "an appeal under § 1292(b) brings up the whole certified order * * * rather than just the legal issue that led to certification") (citations omitted). Thus, if this Court and the court of appeals conclude that Plaintiffs have presented a question of law that is immediately appealable, the Seventh Circuit could review the arbitrability of the dispute if it chose to do so. Alternatively, the Seventh Circuit could articulate a legal standard for applying equitable estoppel and remand the case for this Court to apply that standard to the facts and circumstances of this case.

In making the case for certification of a question for immediate appeal under Section 1292(b), Plaintiffs also must demonstrate "the existence of a 'difficult central question of law which is not settled by controlling authority.'" *In re Brand Name Prescription Drugs Antitrust Litigation*, 878 F. Supp. 1078, 1081 (N.D. Ill. 1995) (quoting *In re Heddendoft*, 263 F.2d 887, 889 (1st Cir. 1959)). A question of law is controlling "if its resolution is quite likely to affect the further course of the litigation, even if not certain to do so." *Sokaogon Gaming Enter. Corp. v. Tushie-Montgomery Assocs., Inc.*, 86 F.3d 656, 659 (7th Cir. 1996). If a controlling appellate court – here, the Seventh Circuit or the Supreme Court – has ruled on the question, then no substantial ground for difference of opinion exists, and there is no reason for immediate appeal. *In re Brand Name*, 878 F. Supp. at 1081. Even when a controlling court has not definitively decided an issue, the party requesting certification still must demonstrate a "substantial likelihood" that the district court ruling will be reversed on appeal. *Id.* at 1081-82; see also *Championsworld*, 2007 WL 2198366, at *4 (noting that, in the event of affirmance by the court of appeals following interlocutory appeal, a case would "ultimately proceed to arbitration with nothing having been accomplished but several more months of delay and resource expenditures").[1]

Defendants have argued that Plaintiffs' claims were referable to arbitration under the Federal Arbitration Act because the Counterpoint and Delta Agreements contain valid agreements to arbitrate, which bind Plaintiffs, and which Deutsche Bank, a non-signatory, is

---

[1] The Court agrees with Plaintiffs that district courts should not read too literally the requirement that the moving party show a "substantial *likelihood*" of reversal in the court of appeals and that a "substantial possibility" that the court of appeals may view the legal issue in a materially different light will suffice to conclude that an issue is "contestable" for purposes of immediate interlocutory appeal.

5

entitled to enforce under principles of equitable estoppel.[2] Non-signatories to an arbitration agreement may enforce the agreement's arbitration provisions in certain circumstances under the doctrine of equitable estoppel. Courts have formulated the standard for equitable estoppel in the arbitration context in different ways. In ruling on Defendants' motion to stay, this Court focused on a standard previously adopted in several cases in this district – namely, that arbitration can be compelled when the signatory's complaint alleges "substantially interdependent and concerted misconduct by both the non-signatory and one or more of the signatories to the contract." *Hoffman v. Deloitte & Touche LLP*, 143 F. Supp. 2d 995, 1004-05 (N.D. Ill. 2001) (citations omitted); see also *Affymax, Inc. v. Johnson & Johnson*, 420 F. Supp. 2d 876, 881-82 (N.D. Ill. 2006); *Johnston v. Arrow Fin. Servs., LLC*, 2006 WL 2710663, at *5 (N.D. Ill. Sept. 15, 2006); *Holden v. Deloitte & Touche LLP*, 390 F. Supp. 2d 752, 764-65 (N.D. Ill. 2005).

The standard applied in *Hoffman* and other cases in this district arises from the Eleventh Circuit's decision in *MS Dealer Service Corp v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999), which set forth the "substantially interdependent and concerted misconduct" test. See also *Becker v. Davis*, 491 F.3d 1292, 1303 (11th Cir. 2007) (relying on *MS Dealer* in accepting non-signatory defendants' argument that "since the complaint alleges a conspiracy between signatory defendants and nonsignatory defendants, equitable estoppel allows a nonsignatory to compel arbitration"); *Brantley v. Republic Mortgage Ins. Co.*, 424 F.3d 392, 396 (4th Cir. 2005) (following *MS Dealer's* "substantially interdependent and concerted misconduct" theory of estoppel); *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 177 (2d Cir. 2004) (finding that a signatory may be compelled to arbitrate when the non-signatory is seeking to resolve issues intertwined with an agreement requiring arbitration). Plaintiffs contend that case law in this area

---

[2] Defendants also have asserted an alternative argument for enforcing the arbitration provisions under agency principles. The Court did not address that argument in its May 14 Order because it resolved the motion on equitable estoppel grounds. [See 85, at 12 n.5.]

has developed significantly since *Hoffman*. In *In re Humana, Inc. Managed Care Litig.*, 285 F.3d 971 (11th Cir. 2002), the case that Plaintiffs urge the Court to follow, the Eleventh Circuit qualified its ruling in *MS Dealer*, but did not overturn it. The Eleventh Circuit stated that "a plaintiff's allegations of collusive behavior * * * do not automatically compel a court to order arbitration of all of the plaintiff's claims against the nonsignatory defendant." *Id*. at 975. Most notably, the court went on to say that determining whether a claim is sufficiently intertwined to justify estoppel is a *fact* sensitive inquiry. *Id*. at 976.

The Court recognizes that the question that Plaintiffs ask to be certified has not been specifically addressed by the Seventh Circuit. Although the case law in this district appears to be uniform, in their Section 1292(b) motion, Plaintiffs have called the Court's attention to a comprehensive and well reasoned decision from the Southern District of Indiana authored by Judge Tinder. In that case, *Twist v. Arbusto*, 2007 WL 30556, at *6-*7 (S.D. Ind. Jan. 3, 2007), the court noted the two types of equitable estoppel theories that typically arise in the context of arbitration agreements: (i) "benefit of the contract," as exemplified by *Hughes Masonry Co. v. Greater Clark County School Building Corp.*, 659 F.2d 836 (7th Cir. 1981), and (ii) "substantially interdependent and concerted misconduct," as exemplified by *MS Dealer Service Corp. v. Franklin*, 177 F.3d 942 (11th Cir. 1999). The court noted that "[t]he Seventh Circuit has not, to this court's knowledge, considered this critically intertwined claims theory of estoppel." *Id*. at *7. It further found "several reasons for believing that [the Seventh Circuit] would hesitate to broaden estoppel beyond its holding in *Hughes*," at least "based on the facts in this case." *Id*. at *8.

Although *Twist* did not arise in a typical scenario,[3] it does provide support for Plaintiffs' contention that the law in the Seventh Circuit is underdeveloped and that the specific question on which Plaintiffs seek certification is "contestable." *Boim*, 291 F.3d at 1007. Even so, the Court also must consider whether the question is one that the court of appeals "could decide quickly and cleanly without having to study the record." *Ahrenholz*, 219 F.3d at 677. As Defendants point out, even if the Seventh Circuit were to pronounce a standard for invoking equitable estoppel, either the Seventh Circuit or this Court would have to apply the new standard to the allegations of Plaintiffs' complaint and the language of the arbitration issue that Defendants seek to invoke. While that fact gives the Court some pause, the complaint and the contracts at issue are sufficiently straightforward not to derail the motion on that basis.

Finally, because the Seventh Circuit has stressed "the importance of the careful application of the statutory test" to avoid wasting the time of the appellate judges and delaying the litigation in the district court (*Ahrenholz*, 219 F.3d at 676), the Court also must carefully consider whether an immediate appeal is likely to materially advance the termination of this litigation. And it is this consideration that ultimately compels the Court to conclude that certification is not warranted in this instance.

The Court's May 14 opinion focused on whether Plaintiffs' complaint raised allegations of "substantially interdependent and concerted misconduct by both the non-signatory and one or more of the signatories to the contract." [85, at 8-12.] However, in that opinion the Court also

---

[3] In *Twist*, the arbitration issue was injected into the case by a proposed intervenor. One of the reasons to which the district court pointed in casting doubt on whether the Seventh Circuit would adopt a broad reading of equitable estoppel on the particular facts of the case was that the proposed intervenor's attempt to compel arbitration would have turned the Seventh Circuit's rationale in *Hughes* on its head. The court of appeals' "primary concern in *Hughes* was to prevent the plaintiff from relying on the contract when it suited its purposes and disavowing the contract when it did not." *Twist*, 2007 WL 30556, at *8. In *Twist*, by contrast, the court observed that "if any party is attempting to have it both ways, it is the [non-signatory proposed intervenors]," which claimed that they were not parties to the agreements, yet sought to enforce the agreements' arbitration provisions. *Id*.

observed that Plaintiffs seek to recover from Defendants, among other things, "the fees that they paid to [a signatory] and the benefit of the bargain of those contracts containing the arbitration provisions." [85 at 11.] Thus, while focusing on the "substantially interdependent and concerted misconduct" theory relied on by several courts in this jurisdiction, the Court plainly was aware of *Hughes*, opined that *Hoffman* appeared to be in line with *Hughes*, and at least suggested that Defendants may well be able to invoke the arbitration provisions at issue on a "benefit of the bargain" theory, as set forth in *Hughes*.[4]

Part and parcel of the district court's inquiry under Section 1292(b) is to ascertain the likelihood that an immediate appeal – and the concomitant additional briefing and argument in the court of appeals and delay in the overall progress of the case – would make a difference in the end. In undertaking that inquiry, the Court has reexamined the allegations of the complaint and the applicable arbitration provisions in light of the equitable estoppel principles articulated in *Hughes* that have been the law in the Seventh Circuit for nearly three decades.

In the complaint, Plaintiffs seek broad relief under a wide range of legal theories. Included in the requested relief are claims attempting to impose liability on Defendants for the services and tax benefits that allegedly were promised under the Bricolage, Counterpoint, and Delta contracts and to recover from Defendants the fees that Plaintiffs paid under those contracts. In paragraph 183, for example, Plaintiffs allege that they "contracted with Defendants for services generating a legitimate net, after-tax benefit. Said tax benefit was never delivered by

---

[4] As explained in the Court's May 14 opinion, in *Hughes*, the Seventh Circuit held that a signatory was equitably estopped from denying arbitration where the signatory sought to recover against the non-signatory amounts allegedly owed to the signatory by the other party to the arbitration agreement. The Seventh Circuit specifically found that estoppel applied to claims that were "intimately founded in and intertwined with" the underlying contract obligations. As noted above, the Seventh Circuit's primary concern in *Hughes* was to prevent the plaintiff from relying on the contract when it suited its purposes and disavowing the contract when it did not. 659 F.2d at 838-39.

Defendants. The exact value of the tax benefit has not been calculated, but is believed to be at least $11 million." Compl. ¶ 183. Plaintiffs further contend that they were supposed to receive a net "tax benefit" of $11 million from these tax shelters and, in each count of the complaint, seek to recover from Deutsche Bank that net "tax benefit," along with all of the fees that Plaintiffs paid to the arbitration agreement signatories. See *id.* at ¶¶ 190, 201, 209, 223, 231, 237. Notably, the Bricolage agreements contain specific provisions relating to tax advice, while Plaintiffs agreements with Deutsche Bank do not. See Counterpoint Consulting Agreement ¶ 1 ("Counterpoint shall provide the following services: (a) meet with Client regarding Client's investment management, estate planning, and tax planning needs; (b) prepare a proposed personal investment company structure for Client; and (c) upon approval by Client of the proposed structure, deliver a draft set of organizational documents for such personal investment company").

In view of these allegations, there is a substantial likelihood that either the Seventh Circuit, or this Court on remand, would find that arbitration is compelled under the long established "benefit of the contract" rubric (see *Hughes Masonry*, 659 F.2d at 838-41 & n.9), regardless of whether allegations of "substantially interdependent and concerted misconduct" are sufficient to trigger application of the equitable estoppel doctrine. In other words, even if (i) this Court were to certify the question proposed by Plaintiffs and (ii) the Seventh Circuit were to issue a decision reversing or at least casting doubt on this Court's May 14 ruling on the scope of the equitable estoppel doctrine, there is a substantial likelihood that the Seventh Circuit's decision would not "materially advance the termination of this litigation" by altering the bottom line of the Court's prior ruling – namely, that this case should be stayed pending arbitration.[5]

---

[5] The Court also notes that even if it was clear on the basis of an application of a new standard articulated by the Seventh Circuit that arbitration is not compelled in this case under either the "substantially

And because the Seventh Circuit has admonished that "[u]nless *all* [of the Section 1292(b)] criteria are satisfied, the district court may not and should not certify its order to us for an immediate appeal" (*Ahrenholz*, 219 F.3d at 676), Plaintiffs' motion therefore must be denied.[6]

### III.     Conclusion

For the reasons stated above, the Court respectfully denies Plaintiffs' motion [88] to certify the Court's May 14, 2009 Order for immediate appeal pursuant to § 28 U.S.C. 1292(b).

Dated:  November 20, 2009

Robert M. Dow, Jr.
United States District Judge

---

interdependent and concerted misconduct" or the "benefit of the contract" theories, either the Seventh Circuit or this Court on remand still would need to resolve the question of whether Deutsche Bank could compel arbitration under the agency theory advanced in Deutsche Bank's original motion.  The fact that Defendants have yet another potential alternative basis for compelling arbitration also cuts against a finding that an immediate appeal is likely to materially advance the termination of this litigation.

[6] The Court does not find Plaintiffs' application to have been untimely.  Plaintiffs delayed less than two months in seeking interlocutory review of the May 14 Order and have explained in their briefs the changed circumstances that altered their strategic calculus in preferring to proceed in court, rather than through arbitration.